ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com
         wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>    Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Conference Date: March 24, 2023<br>Time: 2:00 p.m.<br>Location: Courtroom A, 15th Fl.<br><br>The Honorable Magistrate Judge Alex G. Tse |

This Joint Case Management Conference Statement is submitted on behalf of Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS (hereinafter "CAT" or "Plaintiff") represented by the Law Offices of Andrew L. Packard and the Klamath Environmental Law Center, and Defendants REICHARDT DUCK FARM, INC. and JOHN REICHARDT

JOINT CASE MANAGEMENT
CONFERENCE STATEMENT              1              Case No: 3:22-CV-09065-AGT

("Defendants") represented by Abbott & Kindermann, Inc., pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 16-9, the Standing Order for All Judges of the Northern District of California-Contents of Joint Case Management Statement, and the Court's Order Setting Initial Case Management Conference and ADR Deadlines, dated December 22, 2022 (collectively "Rules and Orders").

As required by the Rules and Orders, the Parties briefly set forth their jointly held view on the following matters, unless otherwise specifically noted as a separate view.

1. **JURISDICTION AND SERVICE.** This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (action arising under the laws of the United States). Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the alleged violations is located within this judicial district. Pursuant to Local Rule 3-2(e), intra-district venue is proper in San Francisco, California because the sources of the alleged violations are located within Marin and Sonoma Counties.

The Parties filed a stipulation deeming service of the summons and complaint perfected on January 15, 2023. ECF No. 9. On February 15, 2023, Defendants filed an answer to the Complaint.

2. **FACTS.** This case is a Federal Water Pollution Control Act ("Clean Water Act" or "Act") citizen suit enforcement action filed by CAT under Section 505 of the Clean Water Act, 33 U.S.C. § 1365. The Complaint alleges that Defendants have violated and continue to violate Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) by discharging pollutants

from point sources at Defendants' facility located at 3770 Middle Two Rock Road, in Petaluma, California ("the Facility"). The Facility discharges into an unnamed creek, which drains to Laguna Lake, which discharges to Chileno Creek, a tributary to Walker Creek, which ultimately discharges to Tomales Bay and into the Pacific Ocean. These water bodies are "water of the United States" within the meaning of the Act.

Defendants are subject to the State of California's General Industrial Permit for storm water discharges, State Water Resources Control Board ("State Board") Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ, Water Quality Order No. 97-03-DWQ, Water Quality Order No. 2014-0057-DWQ, and Water Quality Order No. 2015-0122, National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 (hereinafter "General Permit").

More specifically, Plaintiff alleges, and Defendants deny, that Defendants discharge storm water with excessive pollutant concentrations from the Facility into waters of the United States without applying certain requisite pollution control technologies, and that such pollutant concentrations exceed certain water quality standards and benchmark levels established by the United States Environmental Protection Agency ("EPA") and the State Board. CAT also alleges that Defendants have failed to implement the required Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. CAT further alleges that Defendants continue to fail to develop and implement a legally adequate Storm Water Pollution Prevention Plan, and a legally adequate Monitoring Implementation Plan.

**A.  Plaintiff's Statement.**  Defendants' answer admits that "the Facility generally houses more than 100,000 ducks at any given time" (Paragraph 58); that "the ducks are raised and slaughtered at the Facility (Paragraph 60); that Defendants "measured discharges containing levels of total suspended solids and phospohorous [sic] in excess of EPA benchmark values" (Paragraph 67); that the Facility's 2015 SWPPP "contains significant amounts of information, but not all of the information that is required by General Permit Section X" (Paragraph 75); that the Facility's "shipping and receiving areas", "vehicle and equipment storage/maintenance areas" and "material handling and processing areas" are "not specifically identified as such" in the site maps (Paragraphs 90, 91 and 92); and that "[n]either SWPPP includes a complete list of industrial materials handled at the facility, and the locations where each material is stored, received, shipped, and handled, as well as the typical quantities and handling frequency" (Paragraph 96); that the Facility SWPPP has not been revised and uploaded to the State Board's SMARTS since June 13, 2018 (Paragraphs 105 and 106); that "the Facility does not analyze storm water samples for pathogens" (Paragraph 118); that Defendants' self-monitoring results indicate that on January 25, 2018, nitrate was measured at 30 mg/L, over 44 times the annual Numeric Action Level ("NAL") set forth in the General Permit – 0.68 mg/L." (Paragraph123); that "Defendants did not complete a Level 1 ERA Evaluation for nitrate plus nitrite nitrogen by October 1, 2019." (Paragraph 125); that "Defendants did not complete a Level 1 ERA Report for nitrate plus nitrite nitrogen by January 1, 2020." (Paragraph 126); that "Defendants did not complete a Level 2 ERA Action plan for nitrate plus nitrite nitrogen by January 1, 2021." (Paragraph 129); and that "Defendants did not complete a Level 2 ERA Technical Report for nitrate plus

nitrite nitrogen by January 1, 2022." (Paragraph 130).  ECF No. 13.

Based upon these allegations and the admitted facts, CAT seeks declaratory relief, civil penalties, injunctive relief, and costs (including reasonable attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d).

**B.     Defendants' Statement.**  Defendants specifically and generally deny each and every allegation and claim made by Plaintiff in the Complaint, and above.  Defendants deny that any admissions made in Defendants' answer entitle Plaintiffs to any relief.  Defendants allege that Plaintiff is not entitled to any relief of any kind.

**3.  LEGAL ISSUES.**

**A.     Plaintiff's Statement.**  The Clean Water Act is a strict liability statute, and the primary legal issues will focus on the compliance requirements of the General Permit, as applied to Defendants.  Also at issue is the scope of 40 C.F.R. § 122.23, which applies to Concentrated Animal Feeding Operations ("CAFOs") based on the size and nature of their operations (the parties disagree on the issue of whether the CAFO regulations apply to the Facility).  See Complaint, at ¶¶ 35-37, and 57-63 for the relevant pleading allegations.

**B.     Defendants' Statement**.  The Facility is in compliance with the terms and conditions of the General Permit, as it applies to Defendants.  Also, the Defendants' Facility is in compliance with any and all requirements for management of its process water.

**4.  MOTIONS.**

**A.     Plaintiff's Statement.**  The Parties are meeting and conferring over Defendants' anticipated Motion for a Protective Order.  There are no other pending motions.

CAT anticipates filing discovery motions as necessary[1], and an early motion for summary judgment or summary adjudication. If it is a prevailing party, CAT will seek its reasonable attorney fees and costs, unless those fees and costs are accounted for in a settlement.

    **B.**    **Defendants' Statement.** Defendants are not aware of any pending motions at this time. The discovery outlined by Plaintiff below (inappropriately purpounded on Defendants in both the amount and tight deadlines at the same time the parties are engaged in settlement discussions) raises many valid objections that will be asserted in Defendants' responses, which may lead to discovery motions. Following discovery, Defendants may file a motion for summary judgment or summary adjudication.

**5.**    <u>**ANTICIPATED AMENDMENTS TO PLEADINGS.**</u>

    **A.**    **Plaintiff's Statement.** After receiving Defendants' discovery responses, CAT may seek to amend the Complaint to reflect claims of additional permit violations by Defendants, additional discharges without Clean Water Act permit coverage, or to join additional defendants.

    **B.**    **Defendants' Statement.** Defendants are not aware of any pleading amendments at this time.

**6.**    <u>**EVIDENCE PRESERVATION.**</u>

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that the parties have met and conferred

---

[1] The Parties have already reached an impasse on certain discovery issues, including, but not limited to the scope of Plaintiff's alleged right to unlimited inspection access to the biosecure areas of the Facility, and the scope of financial information that Plaintiff is entitled to seek in connection with its discovery into the Clean Water Act's penalty factors.

pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. **<u>DISCLOSURES.</u>**

Plaintiff served its initial disclosures and documents on February 17, 2023. Defendants completed their initial disclosures and documents on February 24, 2023.

8. **<u>DISCOVERY.</u>**

A.      **Plaintiff's Statement.**  On January 27, 2023, CAT propounded its first sets of Requests for Admissions and Requests for Production of Documents, as well its First and Second Requests for Inspection of Property to access the property on a fixed date (the "dry inspection"), and on a date when the Facility is anticipated to be discharging storm water (the "wet inspection").

Defendants' responses to the Requests for Admissions and Requests for Production of Documents have been continued to allow the parties to focus their resources on ongoing settlement discussions.  Similarly, the Dry Inspection noticed for March 10, 2023 has been postponed until April 25, 2023.  However, the first Wet Inspection, which is weather-dependent and hence time-sensitive, occurred on March 15, 2023, as to the non-biosecurity areas of the Facility; the Parties have met and conferred and are working out the terms of a Protective Order or motion therefore, as to a wet weather inspection of the biosecure areas of the Facility, and as to the disclosure of Confidential Information.

On February 1, 2023, CAT propounded its first set of interrogatories, and on February 10, 2023, CAT propounded a notice of deposition of the corporation's person(s) most qualified to testify as to each of the following matters:

(1) Defendant's methods, practices and procedures regarding compliance with the requirements of the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit") from October 21, 2017 through the present;

(2) Defendant's methods, practices and procedures regarding compliance with any and all monitoring and reporting requirements of the General Permit;

(3) Defendant's communications with the California Regional Water Quality Control Board, from October 21, 2017 through the present;

(4) The design, implementation, and specific location at the Facility (as that term is defined in Paragraph 5 of the Complaint) of all storm water best management practices ("BMPs") employed by Defendant from October 21, 2017 through the present, and the pollutant(s) intended to be addressed by each such BMP;

(5) The layout and/or design of the Facility's storm drain system and all drainage systems that contribute storm water and non-storm water thereto from October 21, 2017 through the present;

(6) Defendant's federal and state tax filings from October 21, 2017 through the present; and,

(7) Defendant's general financial condition, including all assets and liabilities, revenues, and costs of doing business from October 21, 2017 through the present.

On March 6, 2023, the Parties met and conferred regarding the category designees for these depositions. As with the other non-wet weather discovery discussed above, the Parties are continuing to discuss how to defer as much discovery as long as possible to allow for

robust settlement discussions and receipt of a draft Consent Decree at this time.

Should these preliminary settlement discussions fail, CAT anticipates propounding additional interrogatories on the nature and extent of potential sources of pollution in Defendants' discharges from the Facility; Defendants' efforts to comply with the General Permit since 2015; and information relating to Defendants' interactions with the Regional Water Quality Control Board and the California State Water Resources Control Board since 2015.

CAT also anticipates propounding discovery of all information pertinent to the penalty factors to be considered under the Act. CAT also intends to depose Defendants' employees, managers and other agents, as well as agency personnel, who may have information relevant to the case.

**B.   Defendants' Statement.**

On December 14, 2022, prior to any Complaint being filed in this case, Defendants sent to Plaintiff the Defendants' thorough technical and factual responses to Plaintiff's October 21, 2022 60-Day Notice Letter, which is referenced in the Complaint ("Defendants' Response"). Defendants' Response included a 22-page letter from Defendants' counsel, as well as a technical letter with exhibits from Defendants' late expert, completed just days before his unexpected death on December 9, 2022. There was a combined 307 pages of material for Plaintiff to consider. Shortly thereafter, Defendants' counsel requested a call with the Parties' attorneys and experts to discuss the Response in furtherance of settlement, but Plaintiff's counsel refused to participate in any such call. To date, Plaintiffs never replied to Defendants' Response. Instead, Plaintiff commenced this lawsuit three days

before Christmas, 2022.

Between the filing of the Complaint and the Rule 26(f) conference held on January 27, 2023, and even during that conference, the Parties discussed an agreed-upon settlement protected site meeting at the Facility, to be followed by a draft consent decree that would be provided by Plaintiff.  There was no discussion or agreement at that January 27, 2023 phone conference about a "discovery plan" that is described in the Court's "Order Setting Initial Case Management Conference And ADR Deadlines," filed on December 22, 2022.

However, a few days after that conference, without any discovery plan in place, and while the Parties were in the process of active settlement negotiations, and even before the Parties participated in an previously agreed-upon settlement-protected site meeting at the Facility, Plaintiff launched a fusillade of discovery at Defendants.  Plaintiff formally demanded (a) an additional wet weather inspection under the FRCP; (b) an additional dry weather inspection under the FRCP; (c) responses to a staggering 96 different Requests For Admission; (d) responses to numerous Document Production Demands; (e) responses to Interrogatories; and (f) a response to a deposition of Defendants' Person Most Knowledgeable that, as outlined by Plaintiff above, is designed to cover an extraordinary breadth of issues including protected financial information of Defendants.  Such discovery is certainly not necessary to engaging in "meaningful settlement discussions," contrary to Plaintiff's erroneous arguments.  Rather, such discovery demands at this point in the settlement process are unreasonable, unnecessary, objectionable and even counterproductive in the amicable resolution of this lawsuit.  Nevertheless, Defendants will timely respond and object to that discovery pursuant to the FRCP.

9. **CLASS ACTION.**  Not applicable.

10. **RELATED CASES.**  The Parties are not aware of any related cases.

11. **RELIEF.**

    A.      **Plaintiff's Statement.**  CAT seeks civil penalties, declaratory and injunctive relief, and costs as authorized by the Clean Water Act, 33 U.S.C. § 1365(d).  The Clean Water Act authorizes civil penalties of up to $59,973 per day per violation for all Clean Water Act violations occurring after November 2, 2015, for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1 - 19.4.

    B.      **Defendant's Statement.**

     Defendants allege that Plaintiff is not entitled to any relief of any kind.

12. **SETTLEMENT AND ADR.**

    A.      **Plaintiff's Statement.**  The parties have only recently made progress in starting a meaningful settlement dialogue, and, as a result, may need time to develop that discussion before referral to a magistrate for a settlement conference.  CAT has proposed that the parties file a joint request for a settlement conference with a magistrate, and is amenable to working with either Magistrates Hixson or Beeler for these purposes.

    B.      **Defendants' Statement**.  As Defendants have discussed in section 8(B), above, Defendants have attempted to reasonably resolve this matter both before the lawsuit was filed, after the lawsuit was filed, and before more resources are spent on unreasonably burdensome and unnecessary discovery requests.

    On February 22, 2023, the Parties undertook a settlement-protected site inspection of

the Facility, for the purposes of informing ongoing settlement discussions.

Although the Parties conferred regard the selection of an ADR process at their January 27, 2023 Rule 26(f) conference, they have not yet been able to reach an agreement on the type and timing of the ADR process best suited to this case.

### 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES.

On January 4, 2023, Plaintiff accepted the Magistrate Judge's jurisdiction in accordance with the provisions of 28 U.S.C. § 636(c). On March 2, 2023, Defendants accepted the Magistrate Judge's jurisdiction in this matter.

### 14. OTHER REFERENCES.

This case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

### 15. NARROWING OF ISSUES.

**A.   Plaintiff's Statement.**  Plaintiff anticipates filing a motion for summary judgment in order to narrow the issues for trial in this matter. Plaintiff does not believe this case is suitable for any other mechanisms for narrowing or expediting trial presentation.

**B.   Defendant's Statement**. Following discovery, Defendants may file a motion for summary judgment or summary adjudication in order to narrow the issues for trial in this matter.

### 16. EXPEDITED TRIAL PROCEDURE.

This matter is not suitable for the Expedited Trial Procedure of General Order No. 64 Attachment A.

17. **SCHEDULING**

The Parties propose the Court set the following deadlines:

| | |
|---|---|
| May 29, 2024: | Completion of non-expert discovery (excluding site inspections); |
| June 19, 2024: | Last day for expert disclosure and exchange of expert reports; |
| July 10, 2024: | Last day to exchange expert rebuttal reports; |
| August 14, 2024: | Completion of expert discovery; |
| November 27, 2024: | Last day for hearing on dispositive motions; |
| January 18, 2025: | Final pretrial conference; and, |
| February 9, 2025: | Trial |

The critical period of evidence collection for a Clean Water Act storm water case is during the wet season (November through April) when the Facility at issue is actually discharging storm water. Therefore, the end of non-expert and expert discovery is necessarily contingent on the end of the wet season and has been incorporated in the above proposed deadlines.

18. **TRIAL.**

The Parties estimate the trial will require three (3) to five (5) court days.

19. **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSON.**

   A.   **Plaintiff's Statement.**  Plaintiff has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.

   B.   **Defendant's Statement.**  Defendants will file the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.

## 20. PROFESSIONAL CONDUCT.

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully submitted,

Dated: March 17, 2023        LAW OFFICES OF ANDREW L. PACKARD

                                   By:     /s/ Andrew L. Packard
                                          Andrew L. Packard
                                          Attorneys for Plaintiff
                                          CALIFORNIANS FOR ALTERNATIVES TO TOXICS

Dated: March 17, 2023        ABBOTT & KINDERMANN, INC.

                                   By:     /s/ Glen Hansen
                                          Glen Hansen
                                          Attorney for Defendants
                                          REICHARDT DUCK FARM, INC., and
                                          JOHN REICHARDT

### ATTESTATION FOR E-FILING

I hereby attest pursuant to Civil L.R. 5-1(i) (3) that I have obtained concurrence in the filing of this document from the above Signatory prior to filing.

DATED: March 17, 2023        By:  /s/ Andrew L. Packard