1  Diane Kindermann (SBN 144426)
   dkindermann@aklandlaw.com
2  Glen C. Hansen (SBN 166923)
   ghansen@aklandlaw.com
3  ABBOTT & KINDERMANN, INC.
   2100 21st Street
4  Sacramento, California 95818
   Telephone:    (916) 456-9595
5  Facsimile:    (916) 456-9599

6  Attorneys for Defendants
   REICHARDT DUCK FARM, INC., and
7  JOHN REICHARDT

8
                    **UNITED STATES DISTRICT COURT**
9
                    **NORTHERN DISTRICT OF CALIFORNIA**
10

| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation, | Case No: 3:22-CV-09065-AGT |
|---|---|
| Plaintiff, | **JOINT STATEMENT RE DISCOVERY DISAGREEMENT** |
| v. | |
| REICHARDT DUCK FARM, INC., and JOHN REICHARDT, | **Hon. Magistrate Judge Alex G. Tse** |
| Defendants. | |

17     As required by Local Rule 37-1 and the Civil Standing Order For Magistrate Judge Alex
18  G. Tse, the parties hereinafter briefly set forth their jointly held view on discovery issues raised
19  by Plaintiff, unless otherwise specifically noted as being a view held separately by one or more of
20  the respective parties.

21  **I.     ATTESTATION RE PARTIES' MEET AND CONFER EFFORTS**

22     The Parties met and conferred by Zoom on March 6, 2023 to address the disputed
23  discovery hererin.  They then continued to meet and confer my email, and exchanged draft
24  several draft protective orders before coming to the impasse presented herein.

25  **II.    PARTIES' POSITIONS CONCERNING THE DISPUTE**

26     **A. Plaintiff's Statement**

27     This is a citizen suit enforcement action for alleged violations of California's General
28  Industrial Storm Water Permit ("General Permit").  Consequently, Plaintiff seeks to inspect

1  Defendants' facility during periods of rainfall to collect evidence relevant to Plaintiff's claims.
2  Plaintiff propounded its Second Request for Inspection of Land and Property Pursuant to Federal
3  Rule of Civil Procedure 34 ("Request") on January 27, 2023.  A true and correct copy of which is
4  attached as Exhibit 3 to the Declaration of Glen Hansen, filed herewith.  Plaintiff seeks to inspect
5  Defendants' duck farm ("Facility") during three rain events in order to collect evidence related to
6  Plaintiff's allegations that Defendants are violating the Clean Water Act by failing to comply with
7  the terms and requirements of the Industrial General Permit.  The Request focuses on inspecting
8  areas of the Facility that are outside and where industrial activities occur that have an impact on
9  storm water, as well as inspecting areas of the Facility that are used to manage Defendants' storm
10 water, including drain inlets, roofing, gutters and other surface and subsurface conveyances.

11         Defendants objected to the Request.  The Amended Objections identify "biosecurity" as
12 the sole reason why the inspections cannot be permitted as requested.  While Plaintiff does not
13 dispute that there exist biosecurity concerns, Defendants have refused to specifically identify how
14 Plaintiff's requested inspection implicates those concerns, and why mitigation measures cannot
15 be implemented to reduce the identified risks.  During meet and confer efforts, Plaintiff has asked
16 Defendants to identify the specific biosecurity concerns, and the measures that Plaintiff's
17 representatives could take to mitigate any risks.  Exhibit A to the Declaration of William Carlon,
18 is an email from counsel for Plaintiff to counsel for Defendants asking what special precautions
19 need to be taken and offering to wear protective gear.  Defendants have not responded to
20 Plaintiff's offers to compromise, and instead have dictated seven conditions under which they
21 would allow the inspection.

22     The seven conditions are:
    1. All persons are to ride within the Facility's 10-person van during the inspection of the
23     biosecure areas; and no private vehicles will be allowed outside of the parking area
       next to Middle Two Rock Road;
24
    2. There will be no inspection of, or entry into, any of the buildings at the Facility, ecept
25     for the office building on the south side of the Middle Two Rock Road;

26  3. Plaintiff will be represented by its counsel and water quality experts only

27  4. No drones are allowed

28  5. Photographs and video cannot include any ducks or employees at the Facility

6. Any inspection of a biosecure area will be made from inside the van; and

7. If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP, Travis Peterson, who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to Plaintiff s representatives during the inspection.

The four conditions that Plaintiff cannot agree to are No. 2, the limitations on inspecting outsides of buildings (at this time, Plaintiff is not requesting to inspect the interior of buildings, but much of the Facility's storm water infrastructure is attached to the outside of the duck houses, e.g., gutters); No. 5, the limitation on no photographs of ducks – they are a major source of pollution at the Facility; No. 6, the limitations on staying in the van – it is impossible to see certain storm water conveyances/infrastructure from within the van; and No. 7, the refusal to allow Plaintiff to take its own samples – especially in light of No. 6, Plaintiff would be highly prejudiced if it were forced to trust that Defendants' representative correctly collected the samples.

Defendants offered the declaration of Dr. Mark Bland, a purported expert apparently responsible for developing the biosecurity program for Defendants.  While Dr. Bland identifies biological threats to the Facility, he does not explain how the requested inspection would cause any of these diseases to be transmitted to Defendants' ducks.  Instead, Dr. Bland's concerns are that (a) he doesn't know who CAT's representatives are; (b) he doesn't know what their background or training is with regard to poultry-related biosecurity protocols; (c) he lacks assurances that Plaintiff's representatives don't have poultry, pet birds, or reptile pets at their homes; and, (d) Plaintiff's representatives may be part of animal rights groups and/or are "agricultural terrorists."  Dr. Bland offers no reasonable measures that CAT, opining that "there should be no visitors allowed in the biosecurity areas of the Reichardt Duck Farm for any reason."

**B. Defendants' Statement**

1. On or about January 27, 2023, Plaintiff has sought a wet weather inspection of the RDF Facility pursuant to a Second Request For Inspection Of Land And Property Pursuant To

1  Federal Rule Of Civil Procedure 34 (a copy of which is attached as **Exhibit 3** to the Declaration
2  of Glen Hansen, filed herewith).  In its *Amended* Objections to Plaintiff's Second Request For
3  Inspection Of Land And Property Pursuant To Federal Rule Of Civil Procedure 34 served on
4  March 10, 2023 (a copy of which is attached as **Exhibit 4** to the Declaration of Glen Hansen),
5  RDF stated that it would allow the wet weather inspection to go forward but only on certain
6  conditions, due to the biosecurity risks and dangers to the RDF Facility that are created by such
7  inspection.   Those conditions are based on the requirements in the biosecurity plan that expert
8  avian veterinarian Dr. Mark Bland put in place for the Facility, as discussed in his declaration that
9  is filed herewith.  Those conditions are specifically designed to provide to Plaintiff all of the
10 testing, samples and inspection requests that Plaintiff has for the biosecure areas of the Facility.
11 The only disagreement here is that while Defendants offer to have their trained expert who has
12 met the biosecurity conditions perform the outside sampling for Plaintiff, Plaintiff on the other
13 hand refuses to allow that and seeks to have such sampling and wandering around the biosecure
14 areas by its own representatives that Dr. Bland opines should not be allowed in the biosecure
15 areas.

16 Plaintiff also propounded Requests For Production Of Documents (a copy of which is
17 attached as **Exhibit 6** to the Declaration of Glen Hansen).  Requests Nos. 29, 30 and 31 seek
18 confidential financial information of RDF.  RDF requests that the Court issue the Protective
19 Order (attached as Exhibit 5 to the Declaration of Glen Hansen), in order that RDF can produce
20 such financial information pursuant to the "Confidential Information" provisions of the Protective
21 Order.  RDF will also produce to Plaintiff the biosecurity plan for the Facility pursuant to the
22 "Confidential Information" provisions of the Protective Order once it is entered by the Court.

### III. PARTIES' FINAL PROPOSED COMPROMISE

#### A. Plaintiff's Statement

25 Defendants' proposed conditions are unreasonable and are far too restrictive.  Plaintiff has
26 suggested reasonable compromises, and has asked Defendants to provide reasonable protocols
27 with which Plaintiff's representatives could comply in order to minimize any risks.  Defendants
28 have thus far refused, and have adamantly insisted on their overly-restrictive terms.

Plaintiff is prepared to conform to any "biosecurity protoclols" extant at the Facility, and will also agree to: (a) inform Defendants of the persons Plaintiff intends to have present at the site inspection; (b) have Plaintiff's representatives sign statements averring whether they have poultry, birds, or reptile pets at home; and, (c) have Plaintiff's representative aver that they are not "agricultural terrorists" (though Dr. Bland will have to first define that term).

This is not a new issue. In *N.C. Envtl. Justice Network v. Taylor*, No. 4:12-CV-154-D, 2015 U.S. Dist. LEXIS 48236 (E.D.N.C. Jan. 13, 2015), plaintiffs prevailed on a motion to compel inspection of defendants' hog-processing farm. There, the parties were able to come to an agreement on "biosecurity and other conditions on plaintiffs' inspection activities." *Id.* at *19. One of the conditions was that:

> d. Plaintiffs and all people in plaintiffs' contingent will follow and adhere to appropriate farm biosecurity and exclusion measures and guidelines recommended by the North Carolina Department of Agriculture & Consumer Services, Veterinary Division when at the Taylor Facility.

*Id.* at *20-21. Similarly, in *In re NC Swine Farm Nuisance Litig.*, No. 5:15-CV-00013-BR, 2016 U.S. Dist. LEXIS 202762 (E.D.N.C. Oct. 19, 2016), plaintiffs were allowed to inspect a hog farm under certain conditions, including, "Plaintiffs will comply with reasonable biosecurity procedures. The biosecurity procedures shall be provided to Plaintiffs no later than seven days before any scheduled site visit." *Id.* at *24.

**B. Defendants' Statement**

The right to discovery " ' "is a qualified right that does not extend to making unnecessary and unwarranted excursions onto the property of another under the guise of supportable litigative needs." ' " *Voggenthaler v. Md. Square, LLC*, 2010 U.S. Dist. LEXIS 131262, *19, 2010 WL 4934036 (D.Nev. 2010) (quoting *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 n. 12 (4th Cir. 1978). As the U.S. District Court for the Central District of California explained: "Because requests for inspection under Rule 34 must be within the scope of Rule 26(b), 'the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection.' " *Manclark v. Oceans Marine Elecs., Inc.*,

1  2020 U.S. Dist. LEXIS 246793 at *5 (C.D.Cal. 2020) (quoting *Belcher*, supra, 588 F.2d at 908

2  (4th Cir. 1978)); *see Lopez v. United States*, 2017 U.S. Dist. LEXIS 40739, 2017 WL 1062581, at

3  *3 (S.D. Cal. Mar. 21, 2017) (district courts in the Ninth Circuit apply the balancing test

4  articulated in *Belcher* in deciding whether to allow a Rule 34 inspection).

5  Applying that balancing test, courts in the Ninth Circuit often restict, and even prohibit,

6  Rule 34 inspections due to the risks and dangers created by a Rule 34 inspection. *See e.g., United

7  States v. 400 Acres of Land,* 2017 U.S. Dist. LEXIS 34555 (D.Nev. 2017) at *7-*10; Estate *of*

8  *Mazon v. County of Riverside*, 2014 U.S. Dist. LEXIS 206712 at *7-*8, (C.D.Cal. 2014);

9  *Osborne v. Billings Clinic*, 2015 U.S. Dist. LEXIS 38716 at *11-*13 (D.Mont. 2015).

10  Here, that balancing test requires that conditions be placed on Plaintiff's inspection of the

11  biosecurity areas of the Facility for the reasons explained in the Declaration of John Reichardt

12  and the Declaration of Dr. Mark Bland, filed herewith. Defendants respectfully requests that the

13  Court issue a proposed Protective Order (Exhibit 6 to the Declaration of Glen Hansen) that

14  imposes those reasonable conditions because they completely accommodate the needs and

15  purposes of Plaintiff's Rule 34 inspection by providing Plaintiff with all of the testing and

16  sampling it seeks.  Such conditions also address and avoid the biosecurity risks and dangers that

17  Plaintiff's inspection creates.  Defendants have not described any alternative biosecurity measures

18  that Plaintiff's representatives can take because (1) Dr. Bland expertly opined against allowing

19  any visitors into the biosecurity areas fur to the unique circumstances facing the duck farm at this

20  time; and (2) any adherence with the biosecurity plan would require disclosure of the biosecurity

21  plan, which cannot be made until the Court enters the Protective Order as it pertains to

22  "Confidential Information."  Furthermore, the two cases involving hog farms cited by Plaintiff are

23  entirely different because (1) there is no evidence in those cases that the expert animal

24  veterinarian opined against inspections in the biosecure areas by representatives of an adverse

25  party; and (2) such hog farms have nowhere near the biosecurity risks that are at issue in the duck

26  farm here, as discussed at length in Dr. Bland's declaration.   The proposed Protective Order

27  (Exhibit 6 to the Declaration of Glen Hansen) also includes "Confidential Information"

28  provisions that will goven the parties' disclosure of such information in this case.

Dated: March 21, 2023         **LAW OFFICES OF ANDREW L. PACKARD**

By: /s/ Andrew L. Packard
ANDREW L. PACKARD
Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

Dated:  March 21, 2023         **ABBOTT & KINDERMANN, INC.**

By:    /s/ Glen C. Hansen
DIANE G. KINDERMANN
GLEN C. HANSEN
Attorneys for Defendants
REICHARDT DUCK FARM, INC., and JOHN REICHARDT

**ATTESTATION FOR E-FILING**

I hereby attest pursuant to Civil L.R. 5-1(i) (3) that I have obtained concurrence in the filing of this document from the above Signatory prior to filing.

DATED: March 21, 2023                    By:  /s/ Glen C. Hansen