1   Diane Kindermann (SBN 144426)
    dkindermann@aklandlaw.com
2   Glen C. Hansen (SBN 166923)
    ghansen@aklandlaw.com
3   ABBOTT & KINDERMANN, INC.
    2100 21st Street
4   Sacramento, California 95818
    Telephone:    (916) 456-9595
5   Facsimile:    (916) 456-9599

6   Attorneys for Defendants
    REICHARDT DUCK FARM, INC., and
7   JOHN REICHARDT

8

9                           **UNITED STATES DISTRICT COURT**

10                         **NORTHERN DISTRICT OF CALIFORNIA**

11  CALIFORNIANS FOR                          Case No: 3:22-CV-09065-AGT
    ALTERNATIVES TO TOXICS, a non-
12  profit corporation,                       **DECLARATION OF GLEN HANSEN IN**
                                              **SUPPORT OF DEFENDANTS' MOTION**
13              Plaintiff,                    **FOR A PROTECTIVE ORDER**

14  v.

15  REICHARDT DUCK FARM, INC., and
    JOHN REICHARDT,
16
                Defendants.
17

18

19  I, Glen Hansen, declare:

20      1.      I am an attorney with the law firm of Abbott & Kindermann, Inc., counsel of
21
    record for Defendants Reichardt Duck Farm, Inc., Inc. ("RDF") and John Reichardt.
22
        2.      On or about January 27, 2023, Plaintiff sought a wet weather inspection of the
23
    RDF Facility pursuant to a Second Request For Inspection Of Land And Property Pursuant To
24
    Federal Rule Of Civil Procedure 34 (a copy of which is attached hereto as **Exhibit 3**).  On
25
    February 27, 2023, Defendants served their objections to the Second Request For inspection.
26
    Counsel for the parties held a teleconference call on March 6, 2023, during which I informed
27
    Plaintiff's counsel that, for biosecurity reasons, Defendants objected to any representative of
28

-1-

1   Plaintiff getting out of the company van during the inspections, and Defendants required that

2   Plaintiff's sampling of the soil and water outside the company van be undertaken by Defendants'

3   consultant. During that teleconference call, Plaintiff's counsel responded that Plaintiff opposed

4   those restrictions on the grounds that such evidence collection needs to be undertaken by

5   Plaintiff's chosen and vetted consultants and investigators, not Defendants' agents.

6          3.      On March 10, 2023, this office then served an *Amended* Objections to Plaintiff's

7   Second Request For Inspection Of Land And Property Pursuant To Federal Rule Of Civil

8   Procedure 34 (a copy of which is attached hereto as **Exhibit 4**), which stated that RDF would

9   allow the wet weather inspection to go forward but only on certain conditions, due to the

10  biosecurity risks and dangers to the RDF Facility that are created by such inspection.

11         4.      This office tried to find out if there was a reasonable way we can reach a

12  compromise on the biosecurity issues. But after consulting with Dr. Mark Bland, the expert avian

13  veterinarian for the RDF facility (his declaration is attached), Defendants determined that the

14  conditions imposed in the proposed Protective Order must be followed and access to the

15  biosecurity areas cannot be allowed in the manner demanded by Plaintiff. Dr. Bland's

16  recommendations are pursuant to the biosecurity plan for the Faciltiy that he designed, which plan

17  will be produced to Plaintiff pursuant to the "Confidential Information" provisions of the

18  Protective Order once it is entered by the Court. (Earlier in March 2023, Plaintiff rejected the

19  "Confidential Information" provisions included in the proposed Protective Order.)

20         5.      Defendants' final position on the conditions of the inspection of the biosecurity

21  areas was presented to Plaintiffs in an email (with supporting attachments, including Dr. Bland's

22  declaration and the draft Joint Statement re Discovery Dispute), which email was sent to counsel

23  for Plaintiffs at 10:41 a.m. on Thursday, March 16, 2023.

24         6.      The next day, Friday, March 17, 2023, at 12:33 p.m., Plaintiffs provided a

25  response to the draft proposed Protective Order that made critical deletions to the biosecurity

26  measures imposed by Defendants pursuant to the biosecurity plan and Dr. Bland's expert

27  opinions:

28  / /

12. **SITE INSPECTIONS**

  Due to the inherent and significant biosecurity risks at the Facility, the Parties stipulate and agree that any and all site inspections of the Facility, either in dry or wet weather, will have the following limitations and restrictions:

1. ~~All persons are to ride within the Facility's 10-person van during the inspection of the biosecure areas; and n~~No private vehicles will be allowed outside of the parking area next to Middle Two Rock Road;

2. There will be no inspection of, or entry into, any of the buildings at the Facility, ecept for the office building on the south side of the Middle Two Rock Road;

3. Plaintiff will be represented by its counsel and water quality experts only;

4. No drones are allowed;

5. Photographs and video cannot include any ducks or employees at the Facility;

6. ~~Any inspection of a biosecure area will be made from inside the van; and~~

7. ~~If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to CAT representatives during the inspection.~~

**DECLARATION OF GLEN HANSEN IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

1    Then, at 1:14 p.m., on Friday, March 17, 2023, Plaintiffs notified this office of their planned wet

2    weather inspection for Wednesday, March 22, 2023.  The following Monday, March 20, 2023, at

3    4:54 p.m., Plaintiffs announced that they disagree with the conditions in the proposed Protective

4    Order, and that Plaintiffs will provide a response to the draft Joint Statement re Discovery

5    Dispute "shortly."  That response was provided to this office by Plaintiffs on Tuesday, March 21,

6    2023, at 12:32 p.m.  This motion will be filed thereafter on Tuesday afternoon.

7            7.      Defendants respectfully request that the Court issue the proposed Protective Order

8    (a redline copy of which is attached hereto as **Exhibit 5**, and a "clean" copy of which is attached

9    hereto as **Exhibit 6**) that imposes those conditions stated in Defendants' *Amended* Objections.

10   Specifically, section 12 of the proposed Protective Order that Defendants request the Court enter

11   provides as follows:

12           **12.    SITE INSPECTIONS**

13                           Due to the inherent and significant biosecurity risks at the Facility,

14                   the Parties stipulate and agree that any and all site inspections of the

15                   Facility, either in dry or wet weather, will have the following limitations

16                   and restrictions:

17                   1.      All persons are to ride within the Facility's 10-person van

18                           during the inspection of the biosecure areas; and no private

19                           vehicles will be allowed outside of the parking area next to

20                           Middle Two Rock Road;

21                   2.      There will be no inspection of, or entry into, any of the

22                           buildings at the Facility, ecept for the office building on the

23                           south side of the Middle Two Rock Road;

24                   3.      Plaintiff will be represented by its counsel and water quality

25                           experts only;

26                   4.      No drones are allowed;

27                   5.      Photographs and video cannot include any ducks or

28                           employees at the Facility;

-4-

**DECLARATION OF GLEN HANSEN IN SUPPORT OF DEFENDANTS' MOTION
FOR PROTECTIVE ORDER**

6.      Any inspection of a biosecure area will be made from inside the van; and

7.      If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to CAT representatives during the inspection.

8.      Those conditions are based on the requirements in the biosecurity plan that Dr. Mark Bland put in place for the Facility, as discussed in his declaration that is filed herewith. Defendants have not described any alternative biosecurity measures that Plaintiff's representatives can take because (1) Dr. Bland expertly opined against allowing any visitors into the biosecurity areas; and (2) any adherence with the biosecurity plan would require disclosure of the biosecurity plan, which cannot be made until the Court enters the Protective Order as it pertains to "Confidential Information."

9.      Pursuant to section VII. C. of the Civil Standing Order For Magistrate Judge Alex G. Tse, the proposed redline Protective Order that is attached as Exhibit 5 is based on the model stipulated protective orders, with redline language that compares the proposed protective order with the model order.  The redline changes indicate the following:  (a) Section 1   adds language that "The Parties further recognize that the Reichardt Duck Farm facility is a biosecured facility that requires severe access limitations"; (b) Section 2.3 adds specificity as to who the outside counsel are for the parties; (c) Section 2.5 adds that the disclosures in this action include that which is disclosed in settlement discussions; (d) Section 2.7 defines the term "Facility" as used in the proposed Protective Order; (e) Section 2.10 defines the ter "Party" as used in the proposed Protective Order; (f) Section 3 adds language that "The protections conferred by this Stipulation and Order also ensure the biosecurity needs and requirements of the Facility"; (g) Section 4.2 states that "The limitations on site inspections of the Facility shall remain in effect until Final

-5-

Disposition"; (h) Section 12 adds the site inspection language described above; and (i) the name of this case is stated in the body of the Acknowledgment and Agreement that is attached as Exhibit A.

10.     On or about January 27, 2023, Plaintiff also propounded Requests For Production Of Documents (a copy of which is attached hereto as **Exhibit 7**).  Requests Nos. 29, 30 and 31 seek confidential financial information of RDF.  On March 13, 2023, Defendants served their Responses To Requests For Production Of Documents (a copy of which is attachedhereto as **Exhibit 8**), in which Defendants stated in response to Requests Nos. 29, 30 and 31 that, while Defendants will not produce tax returns, "Defendants will produce all responsive documents in their possession, custody and control pursuant to the 'Confidential Information' provisions of a Protective Order to be entered in this action by the Court."  Accordingly, Defendants request that the Court issue the "clean" proposed Protective Order (attached hereto as Exhibit 6), in order that RDF can produce such financial information pursuant to the "Confidential Information" provisions of the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 21, 2023, at Sacramento, California.

Glen Hansen

**DECLARATION OF GLEN HANSEN IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# EXHIBIT 3

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 763-7227
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIANS FOR ALTERNATIVES
TO TOXICS, a non-profit corporation,

        Plaintiff,

v.

REICHARDT DUCK FARM, INC., and
JOHN REICHARDT,

        Defendants.

Case No: 3:22-CV-09065-AGT

**PLAINTIFF'S SECOND REQUEST
FOR INSPECTION OF LAND AND
PROPERTY PURSUANT TO
FEDERAL RULE OF CIVIL
PROCEDURE 34**

To: DEFENDANTS AND THEIR ATTORNEYS OF RECORD HEREIN:

        Defendants are hereby requested pursuant to Rule 34(a) of the Federal Rules of Civil

Procedure to permit Plaintiff Californians for Alternatives to Toxics ("CATs") to enter Defendants'

property located at 3770 Middle Two Rock Road, in Petaluma, California (the "FACILITY"), during

three rain events starting March 3, 2023 and continuing through the close of discovery in this action,

to inspect, photograph, test, record video, or sample the following areas of the FACILITY: (1) any

areas or equipment at the FACILITY from which any liquids or runoff may drain or be drained or

1   discharged, whether in the past, present or future, to storm drains or other conveyances located on or

2   adjacent to the FACILITY; and (2) the following objects located on such areas: (a) all storm drains,

3   (b) all paved and unpaved surfaces, (c) all loading or unloading areas, (d) all maintenance areas, (e)

4   all storage areas, (f) all fueling areas, (g) all bermed areas, (h) all entrances and exits, (i) all storm

5   water pollution management measures, and (j) all areas of potential spills of product, fuel or other

6   potential water pollution sources.  Samples may include samples of soil, materials, product, or runoff

7   that may contribute pollutants to storm drains on or adjacent to the FACILITY.

8        It is further requested that the dates for making such entry be determined through the

9   following procedure.  Based on available weather forecasts, counsel for CATs shall provide to

10   Defendants' counsel preliminary notice of CATs' intent to conduct a wet weather site inspection

11   with as much advanced notice as possible and at least 72 hours prior to the time the inspection will

12   begin.  CATs shall confirm or cancel the preliminarily-noticed inspection by not later than 9:00 p.m.

13   the evening prior to the inspection date, both by email and by leaving a message for counsel at their

14   designated email address and telephone number.  CATs will make every effort to provide notices

15   earlier than the above deadlines.

16        The parties, through mutual agreement may adjust the start time of any specific site

17   inspection.  This request for site inspections is in addition to any other site inspections requested by

18   CATs or agreed upon by the parties.  Pursuant to Rule 34(b)(2) of the Federal Rules of Civil

19   Procedure, service of a written response to this request is due from Defendants within 30 days of the

20   date of service of this request.  Your response must state that production and related activities will be

21   permitted as requested or that the requested production is objected to, in which event the reasons for

22   your objection must be stated.

23

24   Dated: January 27, 2023     LAW OFFICES OF ANDREW L. PACKARD

25

26

27                    Andrew L. Packard
                      Attorneys for Plaintiff

28                      CALIFORNIANS FOR ALTERNATIVES TO TOXICS

# EXHIBIT 4

1  Diane Kindermann (SBN 144426)
   dkindermann@aklandlaw.com
2  Glen C. Hansen (SBN 166923)
   ghansen@aklandlaw.com
3  ABBOTT & KINDERMANN, INC.
   2100 21st Street
4  Sacramento, California 95818
   Telephone:    (916) 456-9595
5  Facsimile:    (916) 456-9599

6  Attorneys for Defendants
   REICHARDT DUCK FARM, INC., and
7  JOHN REICHARDT

8

9                  **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11  CALIFORNIANS FOR                    Case No: 3:22-CV-09065-AGT
    ALTERNATIVES TO TOXICS, a non-
12  profit corporation,                 **DEFENDANTS' *AMENDED* OBJECTIONS
                                        TO PLAINTIFF'S SECOND REQUEST FOR
13              Plaintiff,              INSPECTION OF LAND AND PROPERTY
                                        PURSUANT TO FEDERAL RULE OF
14  v.                                  CIVIL PROCEDURE 34**

15  REICHARDT DUCK FARM, INC., and
    JOHN REICHARDT,
16
                Defendants.
17

18        Defendants REICHARDT DUCK FARM, INC., and JOHN REICHARDT (collectively,

19  "Defendants") object to Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS

20  ("Plaintiff") Second Request For Inspection Of Land And Property Pursuant To Federal Rule Of

21  Civil Procedure 34 ("wet" inspection) on the ground that Plaintiff wrongly seeks an inspection

22  without restrictions in a biosecure area.  The Facility has inherent and significant biosecurity

23  risks that are too great to allow outside parties to enter the biosecure areas of the Facility,

24  including Plaintiff and its agents/experts.

25        Preventing diseases in our poultry supply is a vital national interest.  For example, avian

26  influenza hs been described by the Animal and Plant Health Inspection Service, for the U.S.

27  Department of Agriculture, as follows:

28        Avian influenza (AI) is caused by an influenza type A virus which can

                                        -1-

infect poultry (such as chickens, turkeys, pheasants, quail, *domestic ducks*, geese, and guinea fowl) and wild birds (especially waterfowl).

AI viruses are classified by a combination of two groups of proteins: hemagglutinin or "H" proteins, of which there are 16 (H1–H16), and neuraminidase or "N" proteins, of which there are 9 (N1–N9). AI viruses are further classified by their pathogenicity—the ability of a particular virus strain to produce disease in domestic chickens.

Highly pathogenic avian influenza (HPAI) virus strains are extremely infectious, often fatal to chickens, and can spread rapidly from flock-to-flock.

Low pathogenicity avian influenza (LPAI) virus strains occur naturally in wild migratory waterfowl and shorebirds without causing illness.  LPAI can infect domestic poultry, creating little or no signs of illness.

The U.S. Department of Agriculture's (USDA) Animal and Plant Health Inspection Service (APHIS) works closely with States and the poultry industry to prevent AI from becoming established in the U.S. poultry population.  Keeping our nation's poultry free from avian influenza helps protect our farmers' livelihoods.  [https://www.aphis.usda.gov/aphis/ourfocus/animalhealth/animal-disease-information/avian/avian-influenza/ai (last accessed March 10, 2023).]

The Animal and Plant Health Inspection Service of the USDA therefore strongly emphasizes the need for "biosecurity" in the avian context, such as the Facility here.  The Service explains:

Biosecurity refers to everything people do to keep diseases – and the viruses, bacteria, funguses, parasites, and other microorganisms that cause disease – away from birds, property, and people. It includes:

•    Structural biosecurity: measures used in the physical construction and maintenance of coops, pens, poultry houses, family farms, commercial farms, and other facilities.

•    *Operational biosecurity: practices, procedures, policies that are consistently followed by people.*

Biosecurity is a team effort. Everyone involved in raising poultry must use structural and operational biosecurity to prepare for and prevent disease outbreaks throughout the United States. Put simply: we have to work together to protect our flocks.

What can you do? You can practice biosecurity each and every day. By practicing good biosecurity, you can reduce the risk of people, animals, equipment, or vehicles carrying infectious diseases onto your property – either accidentally or on purpose. You will also help protect other flocks by preventing the spread of disease. [https://www.aphis.usda.gov/aphis/ourfocus/animalhealth/animal-disease-information/avian/defend-the-flock-program/dtf-biosecurity/bird-biosecurity (last accessed March 10, 2023) (emphasis added).]

Measures to minimize biosecurity risk at the Facility have been formulated by a

-2-

1  professional veterinarian, which are strictly implemented and adhered to at the Facility.  Such

2  measures include, without limitation, (i) a complete prohibition of materials, equipment, people

3  or animals with potential exposure to other birds or animals; (ii) special care and cleaning of

4  boots, vehicles, and other equipment; (iii) dedicated or disposable equipment and clothing for

5  this Facility; (iv) staff, employee and contractor training and awareness of personal exposure

6  risk to self, family, and other close-contacts including activities involving feed stores, fairs,

7  zoos, vets, hunting; (v) staff, employee and contractor training and awareness of potential cross-

8  contamination from other off-site facilities; and (vi) staff, employee and contractor training and

9  awareness on the biosecurity expectations and risks that are critical to the business, the food

10  supply, the local economy, and their livelihoods.  The details of the Facility's Biosecurity Plan

11  will be disclosed to Plaintiff, but only as "CONFIDENTIAL" information under the terms and

12  conditions set forth in the Protective Order that this Court will enter in this action.  Plaintiff and

13  its agents/experts cannot satisfy such aforementioned conditions, are not so trained, cannot

14  satisfy the requirements of the Biosecurity Plan, and therefore cannot be allowed in any

15  biosecure areas of the Facility.

16      Accordingly, Defendants will allow the "wet" inspection to proceed, but only on the

17  following conditions:

18      1.  All persons are to ride within the Facility's 10-person van during the visit;

19          and no private vehicles will be allowed outside of the parking area next to

20          Middle Two Rock Road;

21      2.  There will be no inspection of, or entry into, any of the buildings at the

22          Facility, ecept for the office building on the south side of the Middle Two

23          Rock Road;

24      3.  Plaintiff will be represented by its counsel and water quality experts only;

25      4.  No drones are allowed;

26      5.  Photographs or video may be taken from the van, but such photographs

27          and video cannot include any ducks or employees at the Facility;

28      6.  Any inspection of a biosecure area will be made from inside the van; and

-3-

7.    If Plaintiff requests sampling, then during the site inspection the Facility's expert QISP who has satisfied the biosecurity measures and precautions will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to CAT during the inspection.

Dated:  March 16, 2023                     ABBOTT & KINDERMANN, INC.


                                          By:  ___/s/ Glen C. Hansen_____
                                              GLEN C. HANSEN
                                              DIANE G. KINDERMANN
                                              Attorneys for Defendants
                                              REICHARDT DUCK FARM, INC., and
                                              JOHN REICHARDT

**DEFENDANTS' *AMENDED* OBJECTIONS TO PLAINTIFF'S SECOND SITE INSPECTION**

1

**PROOF OF SERVICE**

2

    I, Glen C. Hansen, declare as follows:

3

    I am employed in the County of Sacramento, over the age of eighteen years and not a party to this action.  My business address is 2100 21st Street, Sacramento, California 95818.

4

On March 16, 2023, I served the foregoing document(s) described as:

5

6

**DEFENDANTS' *AMENDED* OBJECTIONS TO PLAINTIFF'S SECOND REQUEST FOR INSPECTION OF LAND AND PROPERTY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 34**

7

8

    On the parties stated below, by placing a true copy thereof in an envelope addressed as shown below by the following means of service:

9

Andrew L. Packard

10

William N. Carlon
LAW OFFICES OF ANDREW L. PACKARD

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

11

245 Kentucky Street, Suite B3
Petaluma, CA 94952

12

Tel: (707) 782-4060
Fax: (707) 782-4062

13

andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

14

15

WILLIAM VERICK
Klamath Environmental Law Center

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

16

1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061

17

Email: wverick@igc.org

18

    **BY MAIL:**  I placed a true copy in a sealed envelope addressed as indicated above on the above-mentioned date.  I am familiar with the firm's practice of collection and

19

processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party

20

served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

21

22

X   **BY ELECTRONIC SERVICE [EMAIL]:**  Sending a true copy of the above-described document(s) via electronic transmission from email address lhaddix@aklandlaw.com to the persons listed above on March 16, 2023.  The transmission was reported as complete

23

and without error. [CRC 2.256 (a)(4), 2.260].

24

    I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.  Executed on March 16, 2023, at Sacramento, California.

25

26

                         */s/ Glen C. Hansen*
                         Glen C. Hansen

27

28

DEFENDANTS' *AMENDED* OBJECTIONS TO PLAINTIFF'S SECOND SITE INSPECTION

# EXHIBIT 5

1  Diane Kindermann (SBN 144426)
dkindermann@aklandlaw.com
2  Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
3  ABBOTT & KINDERMANN, INC.
2100 21st Street
4  Sacramento, California 95818
Telephone:    (916) 456-9595
5  Facsimile:    (916) 456-9599

6  Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
7  JOHN REICHARDT

8

9                          **UNITED STATES DISTRICT COURT**

10                      **NORTHERN DISTRICT OF CALIFORNIA**

11  CALIFORNIANS FOR                          Case No: 3:22-CV-09065-AGT
ALTERNATIVES TO TOXICS, a non-
12  profit corporation,                        [Proposed] ~~STIPULATED~~ PROTECTIVE
ORDER FOR LITIGATION INVOLVING
13              Plaintiff,                     CONFIDENTIAL INFORMATION AND
INSPECTION OF BIOSECURE AREAS
14  v.

15  REICHARDT DUCK FARM, INC., and
JOHN REICHARDT,

16
Defendants.
17

18  1.   <u>**PURPOSES AND LIMITATIONS**</u>

19          Disclosure and discovery activity in this action are likely to involve production of

20  confidential, proprietary, or private information for which special protection from public

21  disclosure and from use for any purpose other than prosecuting this litigation may be warranted.

22  Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated

23  Protective Order. The parties acknowledge that this Order does not confer blanket protections on

24  all disclosures or responses to discovery and that the protection it affords from public disclosure

25  and use extends only to the limited information or items that are entitled to confidential treatment

26  under the applicable legal principles. The parties further acknowledge, as set forth in Section

27  12.3, below, that this Stipulated Protective Order does not entitle them to file confidential

28  information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and

the standards that will be applied when a party seeks permission from the court to file material under seal.

The Parties further recognize that the Reichardt Duck Farm facility is a biosecured facility that requires severe access limitations.

2.   **DEFINITIONS**

2.1     Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2     "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3     Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff). Outside counsel for Plaintiff Californians For Alternatives To Toxics are Andrew L. Packard and William N. Carlon of the Law Offices of Andrew L. Packard. Outside counsel for Defendants Reichardt Duck Farm, Inc. and John Reichardt are Diane G. Kindermann and Glen C. Hansen of Abbott & Kindermann, Inc.

2.4     Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.5     Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter, or that are disclosed in settlement discussions in this matter.

2.6     Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7     Facility: an approximately 373-acre facility operated by the Defendants located at 3770 Middle Twin Roads, in Petaluma, California.

2.8     Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9    Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.10    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.11    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

**3.    SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

-3-

1    The protections conferred by this Stipulation and Order also ensure the biosecurity needs

2    and requirements of the Facility.

3    **4.    DURATION**

4         4.1    Even after Final Disposition of this litigation, the confidentiality obligations

5    imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing

6    or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

7    dismissal of all claims and defenses in this action, with or without prejudice; and (2) final

8    judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or

9    reviews of this action, including the time limits for filing any motions or applications for

10   extension of time pursuant to applicable law.

11        4.2    The limitations on site inspections of the Facility shall remain in effect until Final

12   Disposition.

13   **5.    DESIGNATING PROTECTED MATERIAL**

14        5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party

15   or Non-Party that designates information or items for protection under this Order must take care

16   to limit any such designation to specific material that qualifies under the appropriate standards.

17   To the extent it is practical to do so, the Designating Party must designate for protection only

18   those parts of material, documents, items, or oral or written communications that qualify – so that

19   other portions of the material, documents, items, or communications for which protection is not

20   warranted are not swept unjustifiably within the ambit of this Order.

21        Mass, indiscriminate, or routinized designations are prohibited. Designations that are

22   shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

23   unnecessarily encumber or retard the case development process or to impose unnecessary

24   expenses and burdens on other parties) expose the Designating Party to sanctions.

25        If it comes to a Designating Party's attention that information or items that it designated

26   for protection do not qualify for protection, that Designating Party must promptly notify all other

27   Parties that it is withdrawing the mistaken designation.

28        5.2    Manner and Timing of Designations. Except as otherwise provided in this Order

-4-

(see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" legend to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s).

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under

-6-

Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

## 8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels

1   disclosure of any information or items designated in this action as "CONFIDENTIAL" that Party

2   must:

3        (a) promptly notify in writing the Designating Party. Such notification shall include a

4   copy of the subpoena or court order;

5        (b) promptly notify in writing the party who caused the subpoena or order to issue in the

6   other litigation that some or all of the material covered by the subpoena or order is subject to this

7   Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

8        (c) cooperate with respect to all reasonable procedures sought to be pursued by the

9   Designating Party whose Protected Material may be affected.

10       If the Designating Party timely seeks a protective order, the Party served with the

11  subpoena or court order shall not produce any information designated in this action as

12  "CONFIDENTIAL" before a determination by the court from which the subpoena or order

13  issued, unless the Party has obtained the Designating Party's permission. The Designating Party

14  shall bear the burden and expense of seeking protection in that court of its confidential material –

15  and nothing in these provisions should be construed as authorizing or encouraging a Receiving

16  Party in this action to disobey a lawful directive from another court.

17  **9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN**
18  **THIS LITIGATION**

19       (a)    The terms of this Order are applicable to information produced by a Non-Party in

20  this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in

21  connection with this litigation is protected by the remedies and relief provided by this Order.

22  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking

23  additional protections.

24       (b)    In the event that a Party is required, by a valid discovery request, to produce a

25  Non-Party's confidential information in its possession, and the Party is subject to an agreement

26  with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

27            (1)    promptly notify in writing the Requesting Party and the Non-Party that

28  some or all of the information requested is subject to a confidentiality agreement with a Non-

1   Party;

2            (2)     promptly provide the Non-Party with a copy of the Stipulated Protective

3   Order in this litigation, the relevant discovery request(s), and a reasonably specific description of

4   the information requested; and

5            (3)     make the information requested available for inspection by the Non-Party.

6       (c)     If the Non-Party fails to object or seek a protective order from this court within 14

7   days of receiving the notice and accompanying information, the Receiving Party may produce the

8   Non-Party's confidential information responsive to the discovery request. If the Non-Party timely

9   seeks a protective order, the Receiving Party shall not produce any information in its possession

10   or control that is subject to the confidentiality agreement with the Non-Party before a

11   determination by the court. Absent a court order to the contrary, the Non-Party shall bear the

12   burden and expense of seeking protection in this court of its Protected Material.

13   **10.**    **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

14       If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

15   Material to any person or in any circumstance not authorized under this Stipulated Protective

16   Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the

17   unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the

18   Protected Material, (c) inform the person or persons to whom unauthorized disclosures were

19   made of all the terms of this Order, and (d) request such person or persons to execute the

20   "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

21   **11.**    **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE**
22         **PROTECTED MATERIAL**

23       When a Producing Party gives notice to Receiving Parties that certain inadvertently

24   produced material is subject to a claim of privilege or other protection, the obligations of the

25   Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This

26   provision is not intended to modify whatever procedure may be established in an e-discovery

27   order that provides for production without prior privilege review. Pursuant to Federal Rule of

28   Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a

communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

**12.    SITE INSPECTIONS**

Due to the inherent and significant biosecurity risks at the Facility, the Parties stipulate and agree that any and all site inspections of the Facility, either in dry or wet weather, will have the following limitations and restrictions:

1.    All persons are to ride within the Facility's 10-person van during the inspection of the biosecure areas; and no private vehicles will be allowed outside of the parking area next to Middle Two Rock Road;

2.    There will be no inspection of, or entry into, any of the buildings at the Facility, ecept for the office building on the south side of the Middle Two Rock Road;

3.    Plaintiff will be represented by its counsel and water quality experts only;

4.    No drones are allowed;

5.    Photographs and video cannot include any ducks or employees at the Facility;

6.    Any inspection of a biosecure area will be made from inside the van; and

7.    If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to CAT representatives during the inspection.

**13.    MISCELLANEOUS**

13.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

13.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective

1   Order no Party waives any right it otherwise would have to object to disclosing or producing any

2   information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

3   Party waives any right to object on any ground to use in evidence of any of the material covered

4   by this Protective Order.

5          13.3    Filing Protected Material. Without written permission from the Designating Party

6   or a court order secured after appropriate notice to all interested persons, a Party may not file in

7   the public record in this action any Protected Material. A Party that seeks to file under seal any

8   Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

9   under seal pursuant to a court order authorizing the sealing of the specific Protected Material at

10  issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request

11  establishing that the Protected Material at issue is privileged, protectable as a trade secret, or

12  otherwise entitled to protection under the law. If a Receiving Party's request to file Protected

13  Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving

14  Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless

15  otherwise instructed by the court.

16  **14.    FINAL DISPOSITION**

17          Within 60 days after the final disposition of this action, as defined in Section 4, each

18  Receiving Party must return all Protected Material to the Producing Party or destroy such

19  material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

20  compilations, summaries, and any other format reproducing or capturing any of the Protected

21  Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

22  submit a written certification to the Producing Party (and, if not the same person or entity, to the

23  Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

24  the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

25  not retained any copies, abstracts, compilations, summaries or any other format reproducing or

26  capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

27  retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

28  legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

product, and consultant and expert work product, even if such materials contain Protected

Material. Any such archival copies that contain or constitute Protected Material remain subject to

this Protective Order as set forth in Section 4 (DURATION).

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  March _____, 2023                                **ABBOTT & KINDERMANN, INC.**

                                                          By: _____
                                                              DIANE G. KINDERMANN
                                                              GLEN C. HANSEN
                                                              Attorneys for Defendants
                                                              REICHARDT DUCK FARM, INC., and
                                                              JOHN REICHARDT

Dated:  March _____, 2023                                **LAW OFFICES OF ANDREW L. PACKARD**


                                                          By: _____
                                                              ANDREW L. PACKARD
                                                              WILLIAM N. CARLON
                                                              Attorney for Plaintiff CALIFORNIANS
                                                              FOR ALTERNATIVES TO TOXICS


PURSUANT TO STIPULATION, **IT IS SO ORDERED.**



Dated:  March _____, 2023


                                                          _____
                                                          UNITED STATES MAGISTRATE JUDGE

STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of *Californians For Alternatives To Toxics V. Reichardt Duck Farm, Inc., etal,* case No: 3:22-CV-09065-AGT. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
                    [printed name]

Signature: _____
                    [signature]

-14-

STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION

# EXHIBIT 6

1 | Diane Kindermann (SBN 144426)
dkindermann@aklandlaw.com
2 | Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
3 | ABBOTT & KINDERMANN, INC.
2100 21st Street
4 | Sacramento, California 95818
Telephone:     (916) 456-9595
5 | Facsimile:     (916) 456-9599

6 | Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
7 | JOHN REICHARDT

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

11 | CALIFORNIANS FOR
ALTERNATIVES TO TOXICS, a non-
12 | profit corporation,

Case No: 3:22-CV-09065-AGT

**PROTECTIVE ORDER FOR LITIGATION INVOLVING CONFIDENTIAL INFORMATION AND INSPECTION OF BIOSECURE AREAS**

13 | Plaintiff,

14 | v.

15 | REICHARDT DUCK FARM, INC., and
JOHN REICHARDT,

16 | Defendants.

17

18 | 1.    <u>**PURPOSES AND LIMITATIONS**</u>

19 | Disclosure and discovery activity in this action are likely to involve production of

20 | confidential, proprietary, or private information for which special protection from public

21 | disclosure and from use for any purpose other than prosecuting this litigation may be warranted.

22 | Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated

23 | Protective Order. The parties acknowledge that this Order does not confer blanket protections on

24 | all disclosures or responses to discovery and that the protection it affords from public disclosure

25 | and use extends only to the limited information or items that are entitled to confidential treatment

26 | under the applicable legal principles. The parties further acknowledge, as set forth in Section

27 | 12.3, below, that this Stipulated Protective Order does not entitle them to file confidential

28 | information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and

-1-

the standards that will be applied when a party seeks permission from the court to file material under seal.

The Parties further recognize that the Reichardt Duck Farm facility is a biosecured facility that requires severe access limitations.

**2.    DEFINITIONS**

2.1    Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff). Outside counsel for Plaintiff Californians For Alternatives To Toxics are Andrew L. Packard and William N. Carlon of the Law Offices of Andrew L. Packard. Outside counsel for Defendants Reichardt Duck Farm, Inc. and John Reichardt are Diane G. Kindermann and Glen C. Hansen of Abbott & Kindermann, Inc.

2.4    Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL."

2.5    Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter, or that are disclosed in settlement discussions in this matter.

2.6    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.7    Facility: an approximately 373-acre facility operated by the Defendants located at 3770 Middle Twin Roads, in Petaluma, California.

2.8    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.9     Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.10    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.11    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.12    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.13    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL."

2.14    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.      **SCOPE**

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

1   The protections conferred by this Stipulation and Order also ensure the biosecurity needs

2   and requirements of the Facility.

3   **4.    DURATION**

4   4.1    Even after Final Disposition of this litigation, the confidentiality obligations

5   imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing

6   or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

7   dismissal of all claims and defenses in this action, with or without prejudice; and (2) final

8   judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or

9   reviews of this action, including the time limits for filing any motions or applications for

10   extension of time pursuant to applicable law.

11   4.2    The limitations on site inspections of the Facility shall remain in effect until Final

12   Disposition.

13   **5.    DESIGNATING PROTECTED MATERIAL**

14   5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party

15   or Non-Party that designates information or items for protection under this Order must take care

16   to limit any such designation to specific material that qualifies under the appropriate standards.

17   To the extent it is practical to do so, the Designating Party must designate for protection only

18   those parts of material, documents, items, or oral or written communications that qualify – so that

19   other portions of the material, documents, items, or communications for which protection is not

20   warranted are not swept unjustifiably within the ambit of this Order.

21   Mass, indiscriminate, or routinized designations are prohibited. Designations that are

22   shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

23   unnecessarily encumber or retard the case development process or to impose unnecessary

24   expenses and burdens on other parties) expose the Designating Party to sanctions.

25   If it comes to a Designating Party's attention that information or items that it designated

26   for protection do not qualify for protection, that Designating Party must promptly notify all other

27   Parties that it is withdrawing the mistaken designation.

28   5.2    Manner and Timing of Designations. Except as otherwise provided in this Order

1    (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered,

2    Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

3    designated before the material is disclosed or produced.

4              Designation in conformity with this Order requires:

5              (a) for information in documentary form (e.g., paper or electronic documents, but

6    excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing

7    Party affix the legend "CONFIDENTIAL" to each page that contains protected material. If only a

8    portion or portions of the material on a page qualifies for protection, the Producing Party also

9    must clearly identify the protected portion(s) (e.g., by making appropriate markings in the

10   margins).

11   A Party or Non-Party that makes original documents or materials available for inspection need

12   not designate them for protection until after the inspecting Party has indicated which material it

13   would like copied and produced. During the inspection and before the designation, all of the

14   material made available for inspection shall be deemed "CONFIDENTIAL." After the inspecting

15   Party has identified the documents it wants copied and produced, the Producing Party must

16   determine which documents, or portions thereof, qualify for protection under this Order. Then,

17   before producing the specified documents, the Producing Party must affix the

18   "CONFIDENTIAL" legend to each page that contains Protected Material. If only a portion or

19   portions of the material on a page qualifies for protection, the Producing Party also must clearly

20   identify the protected portion(s) (e.g., by making appropriate markings in the margins).

21             (b) for testimony given in deposition or in other pretrial or trial proceedings, that the

22   Designating Party identify on the record, before the close of the deposition, hearing, or other

23   proceeding, all protected testimony.

24             (c) for information produced in some form other than documentary and for any other

25   tangible items, that the Producing Party affix in a prominent place on the exterior of the container

26   or containers in which the information or item is stored the legend "CONFIDENTIAL." If only a

27   portion or portions of the information or item warrant protection, the Producing Party, to the

28   extent practicable, shall identify the protected portion(s).

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

6.1     Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under

1    Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days

2    of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer

3    process will not resolve their dispute, whichever is earlier. Each such motion must be

4    accompanied by a competent declaration affirming that the movant has complied with the meet

5    and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to

6    make such a motion including the required declaration within 21 days (or 14 days, if applicable)

7    shall automatically waive the confidentiality designation for each challenged designation. In

8    addition, the Challenging Party may file a motion challenging a confidentiality designation at any

9    time if there is good cause for doing so, including a challenge to the designation of a deposition

10   transcript or any portions thereof. Any motion brought pursuant to this provision must be

11   accompanied by a competent declaration affirming that the movant has complied with the meet

12   and confer requirements imposed by the preceding paragraph.

13         The burden of persuasion in any such challenge proceeding shall be on the Designating

14   Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose

15   unnecessary expenses and burdens on other parties) may expose the Challenging Party to

16   sanctions. Unless the Designating Party has waived the confidentiality designation by failing to

17   file a motion to retain confidentiality as described above, all parties shall continue to afford the

18   material in question the level of protection to which it is entitled under the Producing Party's

19   designation until the court rules on the challenge.

20   **7.    ACCESS TO AND USE OF PROTECTED MATERIAL**

21         7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or

22   produced by another Party or by a Non-Party in connection with this case only for prosecuting,

23   defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to

24   the categories of persons and under the conditions described in this Order. When the litigation has

25   been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL

26   DISPOSITION).

27         Protected Material must be stored and maintained by a Receiving Party at a location and

28   in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

## 8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels

-8-

disclosure of any information or items designated in this action as "CONFIDENTIAL" that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

## 9.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)   The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)   In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

(1)   promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-

1    Party;

2              (2)    promptly provide the Non-Party with a copy of the Stipulated Protective

3    Order in this litigation, the relevant discovery request(s), and a reasonably specific description of

4    the information requested; and

5              (3)    make the information requested available for inspection by the Non-Party.

6         (c)    If the Non-Party fails to object or seek a protective order from this court within 14

7    days of receiving the notice and accompanying information, the Receiving Party may produce the

8    Non-Party's confidential information responsive to the discovery request. If the Non-Party timely

9    seeks a protective order, the Receiving Party shall not produce any information in its possession

10   or control that is subject to the confidentiality agreement with the Non-Party before a

11   determination by the court. Absent a court order to the contrary, the Non-Party shall bear the

12   burden and expense of seeking protection in this court of its Protected Material.

13   **10.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

14        If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

15   Material to any person or in any circumstance not authorized under this Stipulated Protective

16   Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the

17   unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the

18   Protected Material, (c) inform the person or persons to whom unauthorized disclosures were

19   made of all the terms of this Order, and (d) request such person or persons to execute the

20   "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

21   **11.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE
22         PROTECTED MATERIAL**

23        When a Producing Party gives notice to Receiving Parties that certain inadvertently

24   produced material is subject to a claim of privilege or other protection, the obligations of the

25   Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This

26   provision is not intended to modify whatever procedure may be established in an e-discovery

27   order that provides for production without prior privilege review. Pursuant to Federal Rule of

28   Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a

-10-

communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

**12.** **SITE INSPECTIONS**

Due to the inherent and significant biosecurity risks at the Facility, the Parties stipulate and agree that any and all site inspections of the Facility, either in dry or wet weather, will have the following limitations and restrictions:

1. All persons are to ride within the Facility's 10-person van during the inspection of the biosecure areas; and no private vehicles will be allowed outside of the parking area next to Middle Two Rock Road;

2. There will be no inspection of, or entry into, any of the buildings at the Facility, ecept for the office building on the south side of the Middle Two Rock Road;

3. Plaintiff will be represented by its counsel and water quality experts only;

4. No drones are allowed;

5. Photographs and video cannot include any ducks or employees at the Facility;

6. Any inspection of a biosecure area will be made from inside the van; and

7. If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to CAT representatives during the inspection.

**13.** **MISCELLANEOUS**

13.1   Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

13.2   Right to Assert Other Objections. By stipulating to the entry of this Protective

1   Order no Party waives any right it otherwise would have to object to disclosing or producing any

2   information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

3   Party waives any right to object on any ground to use in evidence of any of the material covered

4   by this Protective Order.

5            13.3    Filing Protected Material. Without written permission from the Designating Party

6   or a court order secured after appropriate notice to all interested persons, a Party may not file in

7   the public record in this action any Protected Material. A Party that seeks to file under seal any

8   Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

9   under seal pursuant to a court order authorizing the sealing of the specific Protected Material at

10  issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request

11  establishing that the Protected Material at issue is privileged, protectable as a trade secret, or

12  otherwise entitled to protection under the law. If a Receiving Party's request to file Protected

13  Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving

14  Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless

15  otherwise instructed by the court.

16  **14.   FINAL DISPOSITION**

17           Within 60 days after the final disposition of this action, as defined in Section 4, each

18  Receiving Party must return all Protected Material to the Producing Party or destroy such

19  material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

20  compilations, summaries, and any other format reproducing or capturing any of the Protected

21  Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

22  submit a written certification to the Producing Party (and, if not the same person or entity, to the

23  Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

24  the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

25  not retained any copies, abstracts, compilations, summaries or any other format reproducing or

26  capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

27  retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

28  legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

**PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION**

1   product, and consultant and expert work product, even if such materials contain Protected

2   Material. Any such archival copies that contain or constitute Protected Material remain subject to

3   this Protective Order as set forth in Section 4 (DURATION).

4

5   Dated:  March ____, 2023                                **ABBOTT & KINDERMANN, INC.**

6                                                           By: _____

7                                                              DIANE G. KINDERMANN
                                                                GLEN C. HANSEN
8                                                              Attorneys for Defendants
                                                                REICHARDT DUCK FARM, INC., and
9                                                              JOHN REICHARDT

10

11   **IT IS SO ORDERED.**

12

13

14   Dated:  March ____, 2023

15                                                           _____

16                                                           UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

-13-

1

## **EXHIBIT A**

2

## **ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

3      I, _____ [print or type full name], of _____

4   [print or type full address], declare under penalty of perjury that I have read in its entirety and

5   understand the Stipulated Protective Order that was issued by the United States District Court for

6   the Northern District of California on [date] in the case of *Californians For Alternatives To*

7   *Toxics V. Reichardt Duck Farm, Inc., etal*, case No: 3:22-CV-09065-AGT. I agree to comply with

8   and to be bound by all the terms of this Stipulated Protective Order and I understand and

9   acknowledge that failure to so comply could expose me to sanctions and punishment in the nature

10  of contempt. I solemnly promise that I will not disclose in any manner any information or item

11  that is subject to this Stipulated Protective Order to any person or entity except in strict

12  compliance with the provisions of this Order.

13      I further agree to submit to the jurisdiction of the United States District Court for the

14  Northern District of California for the purpose of enforcing the terms of this Stipulated Protective

15  Order, even if such enforcement proceedings occur after termination of this action.

16      I hereby appoint _____ [print or type full name] of

17  _____ [print or type full address and telephone

18  number] as my California agent for service of process in connection with this action or any

19  proceedings related to enforcement of this Stipulated Protective Order.

20

21  Date: _____

22  City and State where sworn and signed: _____

23  Printed name: _____
24                     [printed name]

25  Signature: _____
26                     [signature]

27

28

**PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROTECTIVE ORDER FOR LITIGATION INVOLVING HIGHLY SENSITIVE CONFIDENTIAL INFORMATION

# EXHIBIT 7

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 763-7227
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,

Plaintiff,

v.

REICHARDT DUCK FARM, INC., and JOHN REICHARDT,

Defendants.

Case No: 3:22-CV-09065-AGT

**PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

PROPOUNDING PARTY:   Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS

RESPONDING PARTIES:   Defendants REICHARDT DUCK FARM and JOHN REICHARDT

SET NUMBER:           ONE

     Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CATs") hereby requests that Defendants REICHARDT DUCK

1

FARM and JOHN REICHARDT ("DEFENDANTS") respond to the following document requests within 30 days from the date of service.

### INSTRUCTIONS

A.     DEFENDANTS shall serve a written response within 30 days after the service of this First Set of Requests for Production of Documents.

B.     All documents produced shall be sent to the Law Offices of Andrew L. Packard at the address appearing above within 30 days after service of this First Set of Requests for Production of Documents.

C.     All responses shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.

D.     If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

E.     DEFENDANTS shall produce documents for inspection as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request. Each request shall be answered separately and fully in writing under oath, unless it is objected to, in which case DEFENDANTS shall state its reasons for objection and shall answer to the extent the request is not objectionable.

F.     YOU are directed to comply fully with the requirements of the Federal Rules of Civil Procedure, including, without limitation, the requirements of Rules 26 and 34 in responding to these Requests.

G.     All DOCUMENTS are to be divulged which are in the possession, custody, or control of YOU, including those DOCUMENTS in the possession, custody, or control of YOUR attorneys, investigators, agents, experts, consultants, contractors, officers, directors, employees, or other representatives acting for or on behalf of YOU.

H.     If responsive DOCUMENTS, records, and files in YOUR possession, or in the

CATs RFPDs, Set One                                             Case No: 3:22-CV-09065-AGT

custody or control of YOUR attorneys, consultants, agents, or representatives have previously been produced to Plaintiff and are not confidential pursuant to Federal Rules of Evidence § 408, you shall identify each such document by stating the Bates number. If YOU have previously disclosed a DOCUMENT without a Bates number, please produce the document again with a Bates number.

      I.      In producing the DOCUMENTS requested, YOU shall segregate those documents by each Request set forth herein.

      J.      If a DOCUMENT that is responsive to more than one of the Requests propounded herein, it need not be provided more than once if the same document that has already been provided is identified by stating the Bates number of the document and the number of the Request(s) to which it responds.

      K.      For any claim that a document that YOU are required to produce in response to any of these Requests is privileged, please:

          1.    Identify its title and general subject matter;

          2.    State its date;

          3.    Identify its author(s);

          4.    Identify the PERSONS for whom it was prepared or to whom it was sent;

          5.    State the nature of the privilege claimed; and

          6.    State in detail each and every fact upon which Defendant bases a claim of privilege.

      L.      If any DOCUMENT cannot be produced in full, produce it to the extent possible, indicating what information is being withheld and the reason such information is being withheld.

      M.      If a DOCUMENT once existed but has been lost, destroyed, no longer exists, or is no longer in YOUR possession or control, identify each such document and separately state the details concerning the loss or destruction of the DOCUMENT, or the name and address of the current or last known custodian of any such DOCUMENT, if known to YOU.

      N.      These are standing Requests and must be supplemented promptly pursuant to Federal

CATs RFPDs, Set One                        Case No: 3:22-CV-09065-AGT

Rule of Civil Procedure 26 with supplemental, additional, or different responsive DOCUMENTS.

O.      For the purposes of these Requests, words used in the plural shall be interpreted to include the singular, and words used in the singular shall be interpreted to include the plural.

P.      For the purposes of these Requests, the terms "and" as well as "or" shall be construed either disjunctively or conjunctively in order to bring within the scope of the specifications stated in a Request all responses that might otherwise be deemed outside the scope.

Q.      Any word or term not defined in the Definitions above or as part of an individual Request shall have the meaning given the term by Merriam-Webster's online dictionary available at www.merriam-webster.com.

R.      Unless otherwise indicated, the time period for these requests is October 14, 2015 to the present.

S.      If in responding to a Request, YOU claim any ambiguity in either the Request or a definition or instruction applicable thereto, YOU are directed to identify in the response the language you consider vague and ambiguous and to state the definition you are using in responding to the Request.

## DEFINITIONS

1.      "ANNUAL REPORT" refers to the Annual Report described in GENERAL PERMIT to be submitted to the REGIONAL BOARD.

2.      "BAT" or "BEST AVAILABLE CONTROL TECHNOLOGY ECONOMICALLY ACHIEVABLE" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

3.      "BCT" or "BEST CONVENTIONAL POLLUTANT CONTROL TECHNOLOGY" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

4.      "BMPs" or "BEST MANAGEMENT PRACTICES" are used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

4

5.      "CLEAN WATER ACT" or "CWA" means the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*.

6.      "DISCHARGE" or "DISCHARGED" or "DISCHARGES" as used herein shall mean any spilling, leaking, pumping, pouring, emitting, emptying or dumping from the FACILITY.

7.      "DOCUMENT" means any kind of writing or document, including but not limited to the original or a copy of handwritten or typewritten letters, memoranda or forms, any printed items, photographs, videotapes, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations of them, and as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

8.      "EPA PARAMETER BENCHMARK VALUES" refers to the list of benchmark values prepared and published by EPA on Monday, October 30, 2000 at Volume 65, Page 64767 of the Federal Register.

9.      "EPA" as used herein refers to the United States Environmental Protection Agency.

10.     "FACILITY" as used herein refers to the FACILITY located at 3770 Middle Two Rock Road, in Petaluma, California.

11.     "FLOWING" as used herein shall mean "moving from."

12.     "GENERAL PERMIT" refers to National Pollutant Discharge Elimination System Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ, Water Quality Order 97-03-DWQ and Water Quality Order 14-57-DWQ.

13.     "HAZARDOUS MATERIALS" or "HAZARDOUS SUBSTANCES" as used herein shall mean all substances designated under Section 101(14) of Comprehensive Environmental Response, Compensation and Liability Act.

14.     "INDUSTRIAL MATERIALS" means the same as in the GENERAL PERMIT.

15.     "MONITORING PROGRAM" or "MONITORING IMPLEMENTATION PLAN" refers to the written Monitoring Program/Plan required by the GENERAL PERMIT.

CATs RFPDs, Set One                                                    Case No: 3:22-CV-09065-AGT

16.    "NAVIGABLE WATERS" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

17.    "NITRATE + NITRITE NITROGEN" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

18.    "NUTRIENT MANAGEMENT PLAN" shall mean the same thing as it does in 40 CFR § 122.42(e)(1).

19.    "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

20.    "pH" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

21.    "POLLUTANT" or "POLLUTANTS" shall mean the same as it does under Section 502 of the Clean Water Act ("dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water").

22.    "REGIONAL BOARD" as used herein refers to the California Regional Water Quality Control Board, North Coast Region, and its agents, employees, staff, Board members and anyone else acting on its behalf.

23.    "REPORTING YEAR" shall mean the time between July 1 and June 30 of each year.

24.    "STORM DRAIN" or "STORM DRAINS" refers to any drop inlets that collect or convey STORM WATER at the FACILITY.

25.    "STORM WATER" means storm water runoff, snow melt runoff, and storm water surface runoff and drainage, as defined in the GENERAL PERMIT.

26.    "STORM WATER CONVEYANCE" or "STORM WATER CONVEYANCES" refers to any conveyance within the FACILITY which is used for collecting and conveying STORM WATER.

27.    "STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL

6

ACTIVITY" is used herein as that term is defined in the GENERAL PERMIT.

28.    "STORM WATER SAMPLING LOCATION" or "STORM WATER SAMPLING LOCATIONS" is used herein as defined in the GENERAL PERMIT.

29.    "SWPPP" refers to the "Storm Water Pollution Prevention Plan" described in the GENERAL PERMIT.

30.    "TOTAL PHOSPHOROUS" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

31.    "TOTAL SUSPENDED SOLIDS" or "TSS" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

32.    "WATER QUALITY CRITERIA" or "WATER QUALITY CRITERION" is used herein as including both "criteria" and "Section 304(a) Criteria" as those terms are defined by EPA in Title 40, Section 131.3 of the Code of Federal Regulations (40 C.F.R. § 131.3).

33.    "YOU" and "YOUR" as used herein refers to DEFENDANTS, their agents, employees, consultants, insurance companies, attorneys, accountants, investigators, and anyone else acting on DEFENDANTS' behalf.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Any and all DOCUMENTS comprising YOUR SWPPP for the FACILITY, for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all DOCUMENTS comprising YOUR STORM WATER MONITORING PROGRAM for the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all DOCUMENTS in which the term SWPPP is used or referenced.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all DOCUMENTS evidencing any visual observations of STORM WATER at

7

the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all DOCUMENTS evidencing any sampling or analysis of STORM WATER at the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all DOCUMENTS relating to any site inspections concerning STORM WATER management at the FACILITY conducted between October 21, 2017 and the present.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all DOCUMENTS comprising YOUR ANNUAL REPORTS for the FACILITY, for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all DOCUMENTS, including correspondence, provided to or received from the STATE WATER BOARD or the REGIONAL BOARD, related to the FACILITY, for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all DOCUMENTS evidencing any conversation related to STORM WATER at THE FACILITY with a representative of the STATE WATER BOARD or REGIONAL BOARD, for all years from October 21, 2017 the present.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all DOCUMENTS, including correspondence to or from a representative of any local regulatory agency other than the REGIONAL BOARD or the STATE BOARD concerning STORM WATER at the FACILITY, for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all DOCUMENTS evidencing a conversation with a representative of any local regulatory agency other than the REGIONAL BOARD or the STATE BOARD concerning STORM WATER at the FACILITY, for all years from 1997 to the present.

CATs RFPDs, Set One                                          Case No: 3:22-CV-09065-AGT

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS concerning Best Management Practices ("BMPs"), Best Available Technology Economically Achievable ("BAT"), and Best Conventional Pollutant Control Technology ("BCT"), as those terms are defined under the CLEAN WATER ACT to control discharges of POLLUTANTS from the FACILITY.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all DOCUMENTS concerning YOUR NUTRIENT MANAGEMENT PLAN for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all DOCUMENTS pertaining to HAZARDOUS MATERIAL stored on or around the FACILITY, including but not limited to, correspondence to or from, and disclosures to, state or local agencies, notices of violation, and clean-up orders or plans.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all DOCUMENTS pertaining to spills or discharges of HAZARDOUS MATERIALS on or around the FACILITY, including but not limited to, correspondence to or from, and disclosures to representatives of DEFENDANTS, state or local agencies, notices of violation, and clean-up orders or plans.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all DOCUMENTS pertaining to groundwater contamination and/or testing on or around the FACILITY, including but not limited to, correspondence to or from, and disclosures to, state or local agencies, notices of violation, and clean-up orders or plans.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all DOCUMENTS pertaining to YOUR HAZARDOUS MATERIALS storage or handling permits.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all DOCUMENTS that evidence any insurance contracts YOU have which may

9

provide coverage for any claims relating to this litigation.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all DOCUMENTS pertaining to any physical alteration or addition to the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all DOCUMENTS pertaining to any HAZARDOUS MATERIAL storage, or transport of HAZARDOUS MATERIAL to or from the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all DOCUMENTS pertaining to any construction, upgrades, maintenance or repairs to any structure, including berms, designed to control the flow of storm water, at the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all DOCUMENTS, including any reports, estimates, or service orders, regarding the construction of any retaining walls in any location at the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all DOCUMENTS, including any reports, estimates, or service orders, regarding the construction of any infiltration or catchment basins, evaporation ponds, percolation ponds, or combined sanitary/storm sewer system at the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all DOCUMENTS concerning any land surveys, soil studies, hydrology studies or percolation studies, conducted at the FACILITY for all years from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all DOCUMENTS pertaining to any exemption from the GENERAL PERMIT or any GENERAL PERMIT requirements which YOU may be claiming in this litigation.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all DOCUMENTS, including but not limited to plans, work orders, and invoices, evidencing any effort by YOU to capture and retain STORM WATER at the FACILITY.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all DOCUMENTS which demonstrate any ownership interest of any kind, held by any person or entity, in the FACILITY.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all DOCUMENTS evidencing, referring to, or related to leases between YOU and the owner of the FACILITY.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all NOTICES OF INTENT related to GENERAL PERMIT coverage for the FACILITY.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all DOCUMENTS setting forth DEFENDANTS' assets, liabilities and net worth at all times since October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all of DEFENDANTS' annual financial statements since October 21, 2017.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all DOCUMENTS that REFER, RELATE OR PERTAIN to DEFENDANTS' income from October 21, 2017 to the present, including but not limited to all statements of annual gross income and annual net income.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS comprising DEFENDANTS' federal income tax returns for all years

11

from October 21, 2017 to the present.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that comprise DEFENDANTS' IRS form 1099s submitted to the IRS for all years from October 21, 2017 to the present.

Dated: January 27, 2023     LAW OFFICES OF ANDREW L. PACKARD

_____

Andrew L. Packard
Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

# EXHIBIT 8

1    Diane Kindermann (SBN 144426)
    dkindermann@aklandlaw.com
2    Glen C. Hansen (SBN 166923)
    ghansen@aklandlaw.com
3    ABBOTT & KINDERMANN, INC.
    2100 21st Street
4    Sacramento, California 95818
    Telephone:    (916) 456-9595
5    Facsimile:     (916) 456-9599

6    Attorneys for Defendants
    REICHARDT DUCK FARM, INC., and
7    JOHN REICHARDT

8

9                 **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11    CALIFORNIANS FOR ALTERNATIVES     Case No: 3:22-CV-09065-AGT
    TO TOXICS, a non-profit corporation,
12                              **DEFENDANTS' RESPONSES TO**
          Plaintiff,                **REQUESTS FOR PRODUCTION OF**
13                              **DOCUMENTS**
    v.
14                              **SET ONE**
    REICHARDT DUCK FARM, INC., and
15    JOHN REICHARDT,

16       Defendants.

17

18    **PROPOUNDING PARTY:**    **Plaintiff CALIFORNIANS FOR ALTERNATIVES TO**
                                     **TOXICS**
19
    **RESPONDING PARTY:**     **Defendants REICHARDT DUCK FARM, INC., and JOHN**
20                                      **REICHARDT**

21    **SET NUMBER:**             **One**

22

23         Defendants REICHARDT DUCK FARM, INC., and JOHN REICHARDT

24    (collectively, "Defendants") respond to Plaintiff CALIFORNIANS FOR ALTERNATIVES

25    TO TOXICS ("Plaintiff")'s Requests for Production of Documents, Set One, as follows:

26

27

28

                                          -1-

**GENERAL OBJECTIONS**

1.      To the extent any of these requests may be construed as calling for information which is subject to a claim of privilege, including, without limitation, the attorney/client privilege, the attorney work product doctrine, the right to privacy under common law, the California Constitution or the United States Constitution or any other lawfully recognized privilege or immunity which may attach to the information or documents requested, Defendants hereby assert such doctrine and privileges and objects to such document request on that basis.

2.      Defendants have not yet completed their review and investigation of the facts relating to this case.  The following responses are necessarily based on information presently known to, in the possession of, or identified by Defendants, and the information provided pursuant to these requests are provided without prejudice to Defendants' right to utilize subsequently discovered facts or documents and to amplify the meaning of existing facts or documents, all of which may lead to substantial additions to and changes in the responses herein provided.  Discovery is in its preliminary stages and is continuing.

3.      In responding to the requests for production herein, Defendants do not concede the relevancy of materiality of any request for documents.  Defendants' responses are made expressly subject to, and without in any way waiving or intending to waive, any objections as to competency, relevancy, materiality or privilege, as evidence or for any other purpose, of any of the information referred to or of the responses given herein, or of the subject matter thereof, in any proceeding, including trial of this action.

4.      Defendants object to these requests for production on the grounds, and to the extent, that they require information from persons or entities outside of Defendants' control.

5.      Defendants will make reasonable efforts to respond to any request, to the extent it has not been objected to, as Defendants understand and interpret the requests.  If Plaintiff subsequently asserts an interpretation of the request which differs from that of Defendants, they reserve the right to object to and supplement their response(s).

6.      Defendants object to these requests on the grounds, and to the extent, that they attempt or purport to impose obligations on Defendants beyond those imposed or authorized by

-2-

1    the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or other federal law or rule

2    of court.

3          7.      Defendants object to these requests on the grounds, and to the extent, that they

4    seek documents, information and data peculiarly within the possession, custody or control of

5    Plaintiff and not Defendants, or that they seek documents, information or data equally within

6    Plaintiff's possession, custody, or control.

7

8    **RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

9    **REQUEST FOR PRODUCTION NO. 1:**

10         Any and all DOCUMENTS comprising YOUR SWPPP for the FACILITY, for all

11   years from October 21, 2017 to the present.

12   **RESPONSE TO REQUEST NO. 1.**

13         Defendants will produce, or has already produced, all responsive documents in their

14   possession, custody and control.

15

16   **REQUEST FOR PRODUCTION NO. 2:**

17         Any and all DOCUMENTS comprising YOUR STORM WATER MONITORING

18   PROGRAM for the FACILITY for all years from October 21, 2017 to the present.

19   **RESPONSE TO REQUEST NO. 2.**

20         Defendants will produce, or has already produced, all responsive documents in their

21   possession, custody and control.

22

23   **REQUEST FOR PRODUCTION NO. 3:**

24         Any and all DOCUMENTS in which the term SWPPP is used or referenced.

25   **RESPONSE TO REQUEST NO. 3.**

26         Defendants object to this Request on the ground that it seeks documents sthat are not

27   relevant and will not lead to relevant evidence.  Defendants further object to this Request on

28

-3-

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1    the ground that it is overbroad and subjects Defendants to annoyance, undue burden, and

2    expense.

3

4    **REQUEST FOR PRODUCTION NO. 4:**

5         Any and all DOCUMENTS evidencing any visual observations of STORM WATER

6    at the FACILITY for all years from October 21, 2017 to the present.

7    **RESPONSE TO REQUEST NO. 4.**

8         Defendants will produce, or has already produced, all responsive documents in their

9    possession, custody and control.

10

11   **REQUEST FOR PRODUCTION NO. 5:**

12        Any and all DOCUMENTS evidencing any sampling or analysis of STORM WATER

13   at the FACILITY for all years from October 21, 2017 to the present.

14   **RESPONSE TO REQUEST NO. 5.**

15        Defendants will produce, or has already produced, all responsive documents in their

16   possession, custody and control.

17

18   **REQUEST FOR PRODUCTION NO. 6:**

19        Any and all DOCUMENTS relating to any site inspections concerning STORM

20   WATER management at the FACILITY conducted between October 21, 2017 and the

21   present.

22   **RESPONSE TO REQUEST NO. 6.**

23        Defendants will produce, or has already produced, all responsive documents in their

24   possession, custody and control.

25

26   **REQUEST FOR PRODUCTION NO. 7:**

27        Any and all DOCUMENTS comprising YOUR ANNUAL REPORTS for the

28   FACILITY, for all years from October 21, 2017 to the present.

-4-

1 | **RESPONSE TO REQUEST NO. 7.**

2 |   Defendants object to this Request on the ground that it seeks documents sthat are not

3 | relevant and will not lead to relevant evidence.  Defendants further object to this Request on

4 | the ground that it is overbroad and subjects Defendants to annoyance, undue burden, and

5 | expense.

6 |

7 | **REQUEST FOR PRODUCTION NO. 8:**

8 |   Any and all DOCUMENTS, including correspondence, provided to or received from

9 | the STATE WATER BOARD or the REGIONAL BOARD, related to the FACILITY, for all

10 | years from October 21, 2017 to the present.

11 | **RESPONSE TO REQUEST NO. 8.**

12 |   Defendants will produce, or has already produced, all responsive documents in their

13 | possession, custody and control.

14 |

15 | **REQUEST FOR PRODUCTION NO. 9:**

16 |   Any and all DOCUMENTS evidencing any conversation related to STORM WATER

17 | at THE FACILITY with a representative of the STATE WATER BOARD or REGIONAL

18 | BOARD, for all years from October 21, 2017 the present.

19 | **RESPONSE TO REQUEST NO. 9.**

20 |   Defendants will produce, or has already produced, all responsive documents in their

21 | possession, custody and control.

22 |

23 | **REQUEST FOR PRODUCTION NO. 10:**

24 |   Any and all DOCUMENTS, including correspondence to or from a representative of

25 | any local regulatory agency other than the REGIONAL BOARD or the STATE BOARD

26 | concerning STORM WATER at the FACILITY, for all years from October 21, 2017 to the

27 | present.

28 |

-5-

1  **RESPONSE TO REQUEST NO. 10.**

2      Defendants will produce, or has already produced, all responsive documents in their

3  possession, custody and control.

4

5  **REQUEST FOR PRODUCTION NO. 11:**

6      Any and all DOCUMENTS evidencing a conversation with a representative of any

7  local regulatory agency other than the REGIONAL BOARD or the STATE BOARD

8  concerning STORM WATER at the FACILITY, for all years from 1997 to the present.

9  **RESPONSE TO REQUEST NO. 11.**

10      Defendants will produce, or has already produced, all responsive documents in their

11  possession, custody and control.

12

13  **REQUEST FOR PRODUCTION NO. 12:**

14      Any and all DOCUMENTS concerning Best Management Practices ("BMPs"), Best

15  Available Technology Economically Achievable ("BAT"), and Best Conventional Pollutant

16  Control Technology ("BCT"), as those terms are defined under the CLEAN WATER ACT to

17  control discharges of POLLUTANTS from the FACILITY.

18  **RESPONSE TO REQUEST NO. 12.**

19      Defendants will produce, or has already produced, all responsive documents in their

20  possession, custody and control.

21

22  **REQUEST FOR PRODUCTION NO. 12:**

23      Any and all DOCUMENTS concerning YOUR NUTRIENT MANAGEMENT PLAN

24  for all years from October 21, 2017 to the present.

25  **RESPONSE TO REQUEST NO. 12.**

26      Defendants object to this Request on the ground that it is vague and ambiguous.  The

27  term "Nutrient Management Plan" is defined in reference to 40 CFR §122.42(e)(1), which

28  applies to regulated CAFOs, and the Facility here is not a regulated CAFO.

1    **REQUEST FOR PRODUCTION NO. 13:**

2    Any and all DOCUMENTS pertaining to HAZARDOUS MATERIAL stored on or

3    around the FACILITY, including but not limited to, correspondence to or from, and

4    disclosures to, state or local agencies, notices of violation, and clean-up orders or plans.

5    **RESPONSE TO REQUEST NO. 13.**

6    Defendants will produce, or has already produced, all responsive documents in their

7    possession, custody and control.

8

9    **REQUEST FOR PRODUCTION NO. 14:**

10    Any and all DOCUMENTS pertaining to spills or discharges of HAZARDOUS

11    MATERIALS on or around the FACILITY, including but not limited to, correspondence to

12    or from, and disclosures to representatives of DEFENDANTS, state or local agencies, notices

13    of violation, and clean-up orders or plans.

14    **RESPONSE TO REQUEST NO. 14.**

15    Defendants will produce, or has already produced, all responsive documents in their

16    possession, custody and control.

17

18    **REQUEST FOR PRODUCTION NO. 15:**

19    Any and all DOCUMENTS pertaining to groundwater contamination and/or testing

20    on or around the FACILITY, including but not limited to, correspondence to or from, and

21    disclosures to, state or local agencies, notices of violation, and clean-up orders or plans.

22    **RESPONSE TO REQUEST NO. 15.**

23    Defendants will produce, or has already produced, all responsive documents in their

24    possession, custody and control.

25

26    **REQUEST FOR PRODUCTION NO. 16:**

27    Any and all DOCUMENTS pertaining to YOUR HAZARDOUS MATERIALS

28    storage or handling permits.

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1    **RESPONSE TO REQUEST NO. 16.**

2         Defendants will produce, or has already produced, all responsive documents in their

3    possession, custody and control.

4

5    **REQUEST FOR PRODUCTION NO. 17:**

6         Any and all DOCUMENTS that evidence any insurance contracts YOU have which

7    may provide coverage for any claims relating to this litigation.

8    **RESPONSE TO REQUEST NO. 17.**

9         Defendants are not aware of any such documents at this time.

10

11   **REQUEST FOR PRODUCTION NO. 18:**

12        Any and all DOCUMENTS pertaining to any physical alteration or addition to the

13   FACILITY for all years from October 21, 2017 to the present.

14   **RESPONSE TO REQUEST NO. 18.**

15        Defendants object to this Request on the ground that it is overbroad and seeks

16   documents that are neither relevant nor could reasonably lead to the discovery of relevant

17   evidence. Defendants will produce, or has already produced, all responsive documents in

18   their possession, custody and control.

19

20   **REQUEST FOR PRODUCTION NO. 19:**

21        Any and all DOCUMENTS pertaining to any HAZARDOUS MATERIAL storage, or

22   transport of HAZARDOUS MATERIAL to or from the FACILITY for all years from

23   October 21, 2017 to the present.

24   **RESPONSE TO REQUEST NO. 19.**

25        Defendants will produce, or has already produced, all responsive documents in their

26   possession, custody and control.

27

28

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1  **REQUEST FOR PRODUCTION NO. 20:**

2  Any and all DOCUMENTS pertaining to any construction, upgrades, maintenance or

3  repairs to any structure, including berms, designed to control the flow of storm water, at the

4  FACILITY for all years from October 21, 2017 to the present.

5  **RESPONSE TO REQUEST NO. 20.**

6  Defendants will produce, or has already produced, all responsive documents in their

7  possession, custody and control.

8

9  **REQUEST FOR PRODUCTION NO. 21:**

10  Any and all DOCUMENTS, including any reports, estimates, or service orders,

11  regarding the construction of any retaining walls in any location at the FACILITY for all

12  years from October 21, 2017 to the present.

13  **RESPONSE TO REQUEST NO. 21.**

14  Defendants will produce, or has already produced, all responsive documents in their

15  possession, custody and control.

16

17  **REQUEST FOR PRODUCTION NO. 22:**

18  Any and all DOCUMENTS, including any reports, estimates, or service orders,

19  regarding the construction of any infiltration or catchment basins, evaporation ponds,

20  percolation ponds, or combined sanitary/storm sewer system at the FACILITY for all years

21  from October 21, 2017 to the present.

22  **RESPONSE TO REQUEST NO. 22.**

23  Defendants will produce, or has already produced, all responsive documents in their

24  possession, custody and control.

25  ///

26  ///

27  ///

28

-9-

**REQUEST FOR PRODUCTION NO. 23:**

Any and all DOCUMENTS concerning any land surveys, soil studies, hydrology studies or percolation studies, conducted at the FACILITY for all years from October 21, 2017 to the present.

**RESPONSE TO REQUEST NO. 23.**

Defendants will produce, or has already produced, all responsive documents in their possession, custody and control.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all DOCUMENTS pertaining to any exemption from the GENERAL PERMIT or any GENERAL PERMIT requirements which YOU may be claiming in this litigation.

**RESPONSE TO REQUEST NO. 24.**

Defendants will produce, or has already produced, all responsive documents in their possession, custody and control.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all DOCUMENTS, including but not limited to plans, work orders, and invoices, evidencing any effort by YOU to capture and retain STORM WATER at the FACILITY.

**RESPONSE TO REQUEST NO. 25.**

Defendants will produce, or has already produced, all responsive documents in their possession, custody and control.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all DOCUMENTS which demonstrate any ownership interest of any kind, held by any person or entity, in the FACILITY.

1   **RESPONSE TO REQUEST NO. 26.**

2       Defendants will produce, or has already produced, all responsive documents in their

3   possession, custody and control.

4

5   **REQUEST FOR PRODUCTION NO. 27:**

6       Any and all DOCUMENTS evidencing, referring to, or related to leases between

7   YOU and the owner of the FACILITY.

8   **RESPONSE TO REQUEST NO. 27.**

9       Defendants are not aware of any such documents at this time

10

11  **REQUEST FOR PRODUCTION NO. 28:**

12      Any and all NOTICES OF INTENT related to GENERAL PERMIT coverage for the

13  FACILITY.

14  **RESPONSE TO REQUEST NO. 28.**

15      Defendants will produce, or has already produced, all responsive documents in their

16  possession, custody and control.

17

18  **REQUEST FOR PRODUCTION NO. 29:**

19      Any and all DOCUMENTS setting forth DEFENDANTS' assets, liabilities and net

20  worth at all times since October 21, 2017 to the present.

21  **RESPONSE TO REQUEST NO. 29.**

22      Defendants object to this Request on the ground that it seeks confidential information.

23      Defendants further object to this Request on the ground that it seeks tax returns.

24  Defendants will not produce any tax returns. (*Premium Service Corp. v. Sperry &*

25  *Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *In re Yosemite National Park Hantavirus*

26  *Litigation*, 2016 U.S. Dist. LEXIS 130706 (N.D.Cal.2016), at *21-*23.) Notwithstanding

27  such objections, Defendants will produce all responsive documents in their possession,

28

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1   custody and control pursuant to the "Confidential Information" provisions of a Protective

2   Order to be entered in this action by the Court.

3   **REQUEST FOR PRODUCTION NO. 30:**

4        Any and all of DEFENDANTS' annual financial statements since October 21, 2017.

5   **RESPONSE TO REQUEST NO. 30.**

6        Defendants object to this Request on the ground that it seeks confidential information.

7        Defendants further object to this Request on the ground that it seeks tax returns.

8   Defendants will not produce any tax returns. (*Premium Service Corp. v. Sperry &*

9   *Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *In re Yosemite National Park Hantavirus*

10  *Litigation*, 2016 U.S. Dist. LEXIS 130706 (N.D.Cal.2016), at *21-*23.)  Notwithstanding

11  such objections, Defendants will produce all responsive documents in their possession,

12  custody and control pursuant to the "Confidential Information" provisions of a Protective

13  Order to be entered in this action by the Court.

14

15  **REQUEST FOR PRODUCTION NO. 31:**

16        Any and all DOCUMENTS that REFER, RELATE OR PERTAIN to

17  DEFENDANTS' income from October 21, 2017 to the present, including but not limited to

18  all statements of annual gross income and annual net income.

19  **RESPONSE TO REQUEST NO. 31.**

20        Defendants object to this Request on the ground that it seeks confidential information.

21        Defendants further object to this Request on the ground that it seeks tax returns.

22  Defendants will not produce any tax returns. (*Premium Service Corp. v. Sperry &*

23  *Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *In re Yosemite National Park Hantavirus*

24  *Litigation*, 2016 U.S. Dist. LEXIS 130706 (N.D.Cal.2016), at *21-*23.)  Notwithstanding

25  such objections, Defendants will produce all responsive documents in their possession,

26  custody and control pursuant to the "Confidential Information" provisions of a Protective

27  Order to be entered in this action by the Court.

28

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1    **REQUEST FOR PRODUCTION NO. 32:**

2        All DOCUMENTS comprising DEFENDANTS' federal income tax returns for all

3 years from October 21, 2017 to the present.

4    **RESPONSE TO REQUEST NO. 32.**

5        Defendants object to this Request on the ground that it seeks confidential information.

6        Defendants further object to this Request on the ground that it seeks tax returns.

7 Defendants will not produce any tax returns. (*Premium Service Corp. v. Sperry &*

8 *Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *In re Yosemite National Park Hantavirus*

9 *Litigation*, 2016 U.S. Dist. LEXIS 130706 (N.D.Cal.2016), at *21-*23.)

10

11    **REQUEST FOR PRODUCTION NO. 33:**

12        All DOCUMENTS that comprise DEFENDANTS' IRS form 1099s submitted to the

13 IRS for all years from October 21, 2017 to the present.

14    **RESPONSE TO REQUEST NO. 33.**

15        Defendants object to this Request on the ground that it seeks confidential information.

16        Defendants further object to this Request on the ground that it seeks tax returns.

17 Defendants will not produce any tax returns. (*Premium Service Corp. v. Sperry &*

18 *Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *In re Yosemite National Park Hantavirus*

19 *Litigation*, 2016 U.S. Dist. LEXIS 130706 (N.D.Cal.2016), at *21-*23.)

20

21 Dated: March 13, 2023           ABBOTT & KINDERMANN, INC.

22

23                      By:    */s/ Glen C. Hansen*

24                           GLEN C. HANSEN

25                           DIANE G. KINDERMANN
                            Attorneys for Defendants

26                           REICHARDT DUCK FARM, INC., and
                          JOHN REICHARDT

27

28

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

1

**PROOF OF SERVICE**

2

    I, Lisa Haddix, declare as follows:

3

    I am employed in the County of Sacramento, over the age of eighteen years and not a party to

4

this action.  My business address is 2100 21st Street, Sacramento, California 95818.   On March 13,

5

2023, I served the foregoing document(s) described as:

6

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

7

**SET ONE**

8

    On the parties stated below, by placing a true copy thereof in an envelope addressed as shown below by the following means of service:

9

Andrew L. Packard                  Attorneys for Plaintiff

10

William N. Carlon                 CALIFORNIANS FOR
LAW OFFICES OF ANDREW L. PACKARD   ALTERNATIVES TO TOXICS

11

245 Kentucky Street, Suite B3
Petaluma, CA 94952

12

Tel: (707) 782-4060
Fax: (707) 782-4062

13

andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

14

15

    **BY MAIL:**  I placed a true copy in a sealed envelope addressed as indicated above on the above-mentioned date.  I am familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

16

17

18

  X    **BY ELECTRONIC SERVICE [EMAIL]:**  Sending a true copy of the above-described document(s) via electronic transmission from email address lhaddix@aklandlaw.com to the persons listed above on March 13, 2023.  The transmission was reported as complete and without error. [CRC 2.256 (a)(4), 2.260].

19

20

21

    **BY OVERNIGHT DELIVERY:**  On the above-mentioned date, I enclosed the documents in a sealed envelope and addressed to the persons listed on the attached service list.  I placed the envelope or package for collection with the USPS with overnight delivery instructions following our ordinary business practices.

22

23

    I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.  Executed on March 13, 2023, at Sacramento, California.

24

25

                               */s/ Lisa Haddix*

26

                                 Lisa Haddix

27

28

**DEFENDANTS' RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**