# EXHIBIT 1

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 763-7227
E-mail: andrew@packardlawoffices.com
         wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>    Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**PLAINTIFF'S INTERROGATORIES, SET ONE** |

PROPOUNDING PARTY:     Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS

RESPONDING PARTIES:    Defendants REICHARDT DUCK FARM and JOHN REICHARDT

SET NUMBER:            ONE

1

CATs Roggs, Set One                                            Case No: 3:22-CV-09065-AGT

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CATs") hereby requests that Defendants REICHARDT DUCK FARM and JOHN REICHARDT ("DEFENDANTS") respond to the following interrogatories under oath within 30 days from the date of service.

## INSTRUCTIONS

A.   Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state its reasons for objection and shall answer to the extent the interrogatory is not objectionable.

B.   The answers are to be signed by the person making them, and the objections signed by the attorney making them.

C.   The party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, upon the propounding party within 30 days after the service of the interrogatories.

D.   All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.

E.   Each answer must be as complete and as straightforward as the information reasonably available to the responding party permits. If an interrogatory cannot be answered completely, the responding party must answer it to the extent possible.

F.   If the responding party does not have enough personal knowledge to fully answer an interrogatory, it must so state and make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

G.   Whenever an interrogatory may be answered by referring to a document, the

document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

H. Whenever an address and telephone number for the same person are requested in more than one interrogatory, YOU are required to furnish them in answering only the first interrogatory asking for that information.

**DEFINITIONS**

1. "ANNUAL REPORT" refers to the Annual Report described in GENERAL PERMIT to be submitted to the REGIONAL BOARD.

2. "BAT" or "BEST AVAILABLE CONTROL TECHNOLOGY ECONOMICALLY ACHIEVABLE" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

3. "BCT" or "BEST CONVENTIONAL POLLUTANT CONTROL TECHNOLOGY" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

4. "BMPs" or "BEST MANAGEMENT PRACTICES" are used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

5. "CLEAN WATER ACT" or "CWA" means the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*.

6. "DISCHARGE" or "DISCHARGED" or "DISCHARGES" as used herein shall mean any spilling, leaking, pumping, pouring, emitting, emptying or dumping from the FACILITY.

7. "DOCUMENT" means any kind of writing or document, including but not limited to the original or a copy of handwritten or typewritten letters, memoranda or forms, any printed items, photographs, videotapes, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or

combinations of them, and as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

8. "EPA PARAMETER BENCHMARK VALUES" refers to the list of benchmark values prepared and published by EPA on Monday, October 30, 2000 at Volume 65, Page 64767 of the Federal Register.

9. "EPA" as used herein refers to the United States Environmental Protection Agency.

10. "FACILITY" as used herein refers to the FACILITY located at 3770 Middle Two Rock Road, in Petaluma, California.

11. "FLOWING" as used herein shall mean "moving from."

12. "GENERAL PERMIT" refers to National Pollutant Discharge Elimination System Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ, Water Quality Order 97-03-DWQ and Water Quality Order 14-57-DWQ.

13. "HAZARDOUS MATERIALS" or "HAZARDOUS SUBSTANCES" as used herein shall mean all substances designated under Section 101(14) of Comprehensive Environmental Response, Compensation and Liability Act.

14. "INDUSTRIAL MATERIALS" means the same as in the GENERAL PERMIT.

15. "MONITORING PROGRAM" or "MONITORING IMPLEMENTATION PLAN" refers to the written Monitoring Program/Plan required by the GENERAL PERMIT.

16. "NAVIGABLE WATERS" is used herein as defined in the Federal Water Pollution Control Act and its implementing regulations.

17. "NITRATE + NITRITE NITROGEN" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

18. "NUTRIENT MANAGEMENT PLAN" shall mean the same thing as it does in 40 CFR § 122.42(e)(1).

19. "PERSON" includes a natural person, firm, association, organization, partnership, business, trust, corporation, or public entity.

20. "pH" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

21. "POLLUTANT" or "POLLUTANTS" shall mean the same as it does under Section 502 of the Clean Water Act ("dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water").

22. "REGIONAL BOARD" as used herein refers to the California Regional Water Quality Control Board, North Coast Region, and its agents, employees, staff, Board members and anyone else acting on its behalf.

23. "REPORTING YEAR" shall mean the time between July 1 and June 30 of each year.

24. "STORM DRAIN" or "STORM DRAINS" refers to any drop inlets that collect or convey STORM WATER at the FACILITY.

25. "STORM WATER" means storm water runoff, snow melt runoff, and storm water surface runoff and drainage, as defined in the GENERAL PERMIT.

26. "STORM WATER CONVEYANCE" or "STORM WATER CONVEYANCES" refers to any conveyance within the FACILITY which is used for collecting and conveying STORM WATER.

27. "STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL ACTIVITY" is used herein as that term is defined in the GENERAL PERMIT.

28. "STORM WATER SAMPLING LOCATION" or "STORM WATER SAMPLING LOCATIONS" is used herein as defined in the GENERAL PERMIT.

29. "SWPPP" refers to the "Storm Water Pollution Prevention Plan" described in the GENERAL PERMIT.

30. "TOTAL PHOSPHOROUS" shall mean the same thing as it does in Section XI of the GENERAL PERMIT.

31. "TOTAL SUSPENDED SOLIDS" or "TSS" shall mean the same thing as it does in

Section XI of the GENERAL PERMIT.

32. "WATER QUALITY CRITERIA" or "WATER QUALITY CRITERION" is used herein as including both "criteria" and "Section 304(a) Criteria" as those terms are defined by EPA in Title 40, Section 131.3 of the Code of Federal Regulations (40 C.F.R. § 131.3).

33. "YOU" and "YOUR" as used herein refers to DEFENDANTS, their agents, employees, consultants, insurance companies, accountants, investigators, and anyone else acting on DEFENDANTS' behalf.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please DESCRIBE any action undertaken at the FACILITY by YOU since October 21, 2017 to the present to prevent or reduce STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL ACTIVITY contaminated with POLLUTANTS from the FACILITY, including but not limited to the dates and duration of all such activities, the type of activities, the portions of the FACILITY where the activity is or was conducted, PERSONS conducting the activity, and the specific purpose of the activity.

**INTERROGATORY NO. 2:**

Please DESCRIBE any actions undertaken at the FACILITY by YOU in response to receiving STORM WATER monitoring results indicating levels of a POLLUTANT or POLLUTANTS in excess of WATER QUALITY CRITERION or WATER QUALITY CRITERIA for such POLLUTANT or POLLUTANTS.

**INTERROGATORY NO. 3:**

Please IDENTIFY any and all PERSONS who have provided YOU with any services relating to compliance with the Clean Water Act at the FACILITY.

**INTERROGATORY NO. 4:**

Please IDENTIFY any and all samples of STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL ACTIVITY taken at the FACILITY, including the date, time, PERSON who collected the sample, the lab which performed the analysis, and the results of that analysis since October 21, 2017.

**INTERROGATORY NO. 5:**

Please IDENTIFY any and all PERSONS who took or will take samples of STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL ACTIVITY at the FACILITY, the analytical results of which were or will be submitted to the REGIONAL BOARD since October 21, 2017 including the date(s) of any samples taken by each such PERSON.

**INTERROGATORY NO. 6:**

Please DESCRIBE any STORM WATER pollution management practices or treatment technologies that have been considered by YOU but not implemented at the FACILITY, including but not limited to the reason for not implementing any such measures or technologies, the POLLUTANT intended to be addressed by such practices or technologies, the location within the FACILITY considered for the application of such practices or technologies, and the cost of such practices or technologies.

**INTERROGATORY NO. 7:**

Please IDENTIFY the POLLUTANTS in STORM WATER DISCHARGE ASSOCIATED WITH INDUSTRIAL ACTIVITY at the FACILITY.

**INTERROGATORY NO. 8:**

Please DESCRIBE the process by which YOU have evaluated whether the BMPs and other GENERAL PERMIT compliance measures at the FACILITY constitute BAT or BCT since October

21, 2017.

**INTERROGATORY NO. 9:**

Please DESCRIBE in as much detail as possible any and all industrial activities conducted at the FACILITY at all times since commencing YOUR operations at the FACILITY.

**INTERROGATORY NO. 10:**

Please DESCRIBE all uses of non-storm water at the FACILITY, including where such non-storm water discharges from the FACILITY.

Dated: February 1, 2023                    LAW OFFICES OF ANDREW L. PACKARD

_____
Andrew L. Packard
Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS

## PROOF OF SERVICE

I, Andrew L. Packard, declare as follows:

I am a resident of the State of California, and employed in Petaluma, California. I am over the age of 18 years and am not a party to the above-entitled action. My business address is 245 Kentucky Street, Suite B3, Petaluma, California, 94952.

On February 1, 2023, I served the following document(s):

**PLAINTIFF'S INTERROGATORIES, SET ONE**

by placing a true and correct copy thereof in a sealed envelope, first class postage prepaid, addressed to the party listed below, and depositing it in a United States Postal Service mail box:

Diane G. Kindermann Henderson
ABBOT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818

I certify and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 1, 2023 at Petaluma, California.

_____
Andrew L. Packard