ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
E-mail: andrew@packardlawoffices.com
    wncarlon@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 Sixteenth Street, Suite 204
Arcata, CA 95521
Tel. (707) 630-5061
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>    Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>    Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**DECLARATION OF WILLIAM N. CARLON IN SUPPORT OF SECOND JOINT STATEMENT RE DISCOVERY DISAGREEMENT NO 1 (INTERROGATORIES)** |

I, William N. Carlon, declare:

    1.    I am an attorney with the Law Offices of Andrew L. Packard, counsel of record for Plaintiff Californians for Alternatives to Toxics.

    2.    On April 13, 2023, I met via telephone call with Glen Hansen, counsel for Defendants Reichardt Duck Farm, Inc. and John Reichardt, to discuss the discovery dispute arising out of Plaintiff's Request for Inspection of Land and Property Pursuant to Federal Rule of Civil Procedure 34 ("Request").

3. On Friday, March 31, 2023, counsel for Defendants provided the biosecurity plan, a true and correct copy of which is attached hereto as **Exhibit 1**.

4. On Monday, April 3, 2023, Andrew Packard emailed counsel for Defendants explaining Plaintiff's position that there was not anything in the biosecurity plan that would prohibit Plaintiff's agents from exiting the van to inspect the biosecure areas of the Facility, so long as the Parties could put together an attestation regarding the restrictions imposed by the biosecurity plan. The email also asked for defense counsel's availability for the Court-ordered meeting to confer about whether Plaintiff could comply with the biosecurity plan.

5. On April 6, 2023, having received no response to the April 3rd email, Mr. Packard followed up the April 3rd email with another request to meet and confer, stressing that time is of the essence given that we were in the last few weeks of the wet season.

6. On April 6, 2023, we received a response from Mr. Hansen, stating that they "must review [Plaintiff's] responses with [Defendants'] biosecurity expert," but not agreeing to meet and confer.

7. On April 7, 2023, Mr. Packard responded to Mr. Hansen, pointing out that the Court had ordered the Parties to meet and confer, and that Dr. Bland's input was not necessary to discuss the contents of the biosecurity plan that Defendants had produced. Plaintiff also highlighted that, because it rained on April 7th, there had been at least three discharge events from the Facility during the pendency of Defendants' motion for a protective order, and that further delay will prejudice Plaintiff's ability to gather evidence in the case.

8. Mr. Hansen responded the same day, ignoring Mr. Packard's request to schedule a meeting, and informed us that he had spoken with Dr. Bland, and that Defendants could get us a response by Monday, April 10th.

9. On April 12th, Mr. Hansen provided his declaration – apparently Defendants had concluded at this point that meeting and conferring further was futile – that attached, among other things, a letter from Dr. Bland. Notably, Defendants did not respond to

Plaintiff's repeated requests for a meeting to confer about whether Plaintiff could comply with the biosecurity plan.

10. By April 13th, Plaintiff was able to get Defendants to agree to have a telephone call to discuss the matter. On April 13th, the Parties had a telephone call, but were unable to resolve the dispute.

11. In the course of the April 13th meeting, Defendants took the position that Plaintiff's agents could not comply with the biosecurity plan, and could therefore not exit Defendants' van during an inspection. Defendants counsel stated that Defendants rely on Dr. Bland's interpretation of the Biosecurity Plan, not any specific section of the plan itself. When asked for a list of the protocols and procedures that Plaintiff would have to comply with in order for its agents to be allowed to exit the van to inspect biosecure areas, Defendants' counsel referred Plaintiff to the entirety of Dr. Bland's letter. When asked for specific references to the Biosecurity Plan that would prohibit Plaintiff's access as requested, Defendants' counsel referred Plaintiff to the entirety of Dr. Bland's letter. When asked for a specific reference to the Biosecurity Plan that sets forth the protocols and procedures for guests and visitors to the duck farm, counsel for Defendants stated that there isn't "a page that says that," and that such protocols are derived from Dr. Bland's interpretation of the Plan.

12. On April 17th, Defendants transmitted a follow-up letter from Dr. Bland, dated April 14, 2023, which was apparently drafted to respond to Plaintiff's April 3rd email. Dr. Bland cites to pages two, three and eight of the biosecurity plan (which include sections on "███████████████," "███████████████████," and an ████████████████████ on "████████████████," respectively).

13. The ████████████████████ section does not appear to be relevant to this discussion. That section addresses ███████, "███████████," and ████████████████████████.

14. The ████████████████ section describes the biosecurity protocols for

- 3 -

███████████████████████. Of the eight protocols identified, at least five are ones Plaintiff could reasonably comply with, such as (1) ██████████████████████████████, (3) ██████████████████████████████████████████████████████████████, (4) ██████████████████████████████, (5) ██████████████████████████████████████████████████, and (6) ██████████████████████████. The remaining protocols, 2, 7, and 8 relate to directions for ██████████████, ████████████████████████████████, and a protocol involving ████████████████████████████████ (which Plaintiff's agent will not enter).

15. The ████████████ section consists of a ██████████████████████████████████. The statement includes additional restrictions not identified in the Employee Biosecurity section, including (1) "████████████████████████████████████████████████████████████████"; (2) "████████████████████████████████████████████████████████████."; (3) "████████████████████████████████████████████████████████"; (4) "████████████████████████████████████████"; (5) "████████████████████████████████████████"; (6) "████████████████████████████████████████████████"; and, (7)

- 4 -

"███████████████████████████████████████████
████████."

16.     On April 19, 2023, Mr. Hansen belated produced additional pages of the biosecurity plan that had not been produced on March 31, 2023.  The production consisted of two pages.  The first page contained the section of the biosecurity plan entitled "████████████████████████████████" and includes three protocols: "(1) ██████████████████████████████████████████████████████████; (2) ████████████████████████████████████████████████████████████████████████████████████████████████████████████; and, (3) ████████████████████████████████████."  The second page consisted of the "████████████████" identified above.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 25, 2023, at Napa, California.

_____
William N. Carlon

- 5 -

# EXHIBIT 1

**EXHIBIT FILED UNDER SEAL**