Diane Kindermann (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:     (916) 456-9595
Facsimile:     (916) 456-9599

Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
JOHN REICHARDT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**SUPPLEMENTAL DECLARATION OF GLEN HANSEN REGARDING PLAINTIFF'S INSPECTION OF BIOSECURITY AREAS** |

I, Glen Hansen, declare:

1.     I am an attorney with the law firm of Abbott & Kindermann, Inc., counsel of record for Defendants Reichardt Duck Farm, Inc., Inc. ("RDF") and John Reichardt.

2.     On March 31, 2023, this Court heard a Discovery Disagreement regarding Plaintiff Californians For Alternatives To Toxics ("Plaintiff") inspection of the biosecurity areas of the RDF Facility.  In support of its position, RDF filed a Declaration of Dr. Mark Bland (attached hereto as **Exhibit 1**), in which Dr. Bland testified:

> In light of these present and real threats, the majority of poultry producers at this time are not allowing *any* visitors onto the poultry farm unless it absolutely essential, and even then visitors are not allowed to go near the production barns for any reason or under any circumstances.

1    I am informed that the biosecurity areas of the Defedants' Facility are those that are shown on the

2    map of the Facility that is attached hereto as **Exhibit 2**.

3         3.      Following that hearing on March 31, 2023, this Court issued a Minute Order,

4    which included the following relevant order:

> Minute entry for discovery hearing and case management conference held
> on 3/31/2023 before Magistrate Judge Alex G. Tse. Discussion held
> regarding [20] the parties' Joint Statement Re Discovery Disagreement.
> Pursuant to agreement by the parties, the Court shall adopt the proposed
> protective order after removing section 12. After defendant produces the
> biosecurity plan, the parties shall meet and confer to discuss whether
> plaintiff can comply with the plan in order to facilitate an inspection of
> defendant's biosecure areas. If a dispute remains after the meet and confer,
> the parties may file another joint statement with the Court.

10        4.      Later on March 31, 2023, I sent an email to Andrew Packard, counsel for Plaintiff,

11   with an attached copy of Defendant Reichardt Duck Farm, Inc.'s Biosecurity Plan, which

12   includes both "Confidential Information" and non-confidential California Department of Food

13   and Agriculture materials.  I provided that Biosecurity Plan pursuant to the Court's Minute Order

14   and the terms and conditions of the Protective Order that was also entered by the Court on March

15   31, 2023.

16        5.      On April 3, 2023, this Court issued an Order resolving Discovery Letter Brief, a

17   true and correct copy of which Order is attached hereto as **Exhibit 3**.  In that Order, this Court

18   addressed the conditions that Defendant sought to have imposed on any inspection of the

19   Biosecurity Areas of Defendants' Facility by Plaintiff.  Conditions "6" and "7" sought by

20   Defendants are as follows:

> 6.      Any inspection of a biosecure area will be made from inside the
> van.
>
> 7.      If Plaintiff requests sampling within the biosecure areas, then
> during the site inspection of the biosecure areas the Facility's
> expert QISP, Travis Peterson, who has satisfied the biosecurity
> measures and precautions for the Facility will take such samples
> for Plaintiff in the biosecure areas of the Facility and immediately
> provide such samples to Plaintiff's representatives during the
> inspection.

27   In regards to Conditions "6" and "7", the Court ruled as follows in the Order:

-2-

As to conditions 6 and 7, the Court won't impose or reject these conditions at this time. Defendants must first produce their biosecurity plan. After plaintiff has reviewed the biosecurity plan, the parties must meet and confer to discuss whether plaintiff can comply with the plan such that one or more of plaintiff's agents can exit defendants' van to inspect biosecure areas at the duck farm. If the parties are unable to reach an agreement as to these conditions after meeting and conferring, they may file another joint statement with the Court.

6.      On April 3, 2023, at 3:00 p.m., Mr. Packard sent an email to me in which he stated the following:

I don't see anything in the Biosecurity Plan the would prohibit Plaintiff's counsel and expert from exiting the van to inspect the biosecure areas of the Facility, so long as we can put together an attestation regarding exposure to other sources of the flu (*e.g.*, pet stores, fairs, zoos etc.) Please let me know your availability to meet and confer this week, per the Court's order of today's date.

7.      On April 6, 2023, at 3:58 p.m., I sent an email to Mr. Packard that stated the following:

Thank you for providing your responses to the Biosecurity Plan as it pertains to your inspection of the biosecurity areas. As you know from our discussion with the Court last Friday, we must review your responses with our biosecurity expert, Dr. Mark Bland. Unfortunately, he has been out of state all week on another matter, and so our discussions have been very limited. We continue to pursue such discussions with him, although that is also difficult because of the upcoming Easter Holiday. I am seeking to provide you with a response as quickly as we can, but that largely depends on Dr. Bland's schedule. We are pursuing this on a daily basis.

I provided Mr. Packard's response to Dr. Bland to review, since Dr. Blank is the expert veterinarian for the Facility and the creator and consultant for the Facility's Biosecurity Plan. As I stated to the Court at the hearing on March 31, 2023, Defendants follow the advice of Dr. Bland as to biosecurity matters. I was informed that Dr. Bland was out of state the week of April 3 and the early part of the week of April 10, and so our ability to communicate with Dr. Blank during that time was quite limited.

8.      On Tuesday, April 11, 2023, I received a letter from Dr. Bland, a true and correct copy of which is attached hereto as **Exhibit 4**. That letter from Dr. Bland replies to Mr. Packard's suggestions as to Plaintiff's purported compliance with the Biosecurity Plan. That

-3-

**SUPPLEMENTAL DECLARATION OF GLEN HANSEN RE PLAINTIFF'S INSPECTION**

letter includes as an attachment correspondence that Dr. Bland received on April 10, 2023, from Dr. Annette Jones, Director and State Veterinarian for the Animal Health and Food Safety and Agriculture, of the California Department of Food and Agriculture, regarding precautions for entering poultry facilities.  That letter from Dr. Bland also included as an attachment the Biosecurity Plan for RDF that was previously provided to Plaintiff, a portion of which is "Confidential Information" under the Protective Order issued by the Court.  I am not including that Biosecurity Plan attachment with the attached letter from Dr. Bland because it contains such "Confidential Information."  Because I was out of the office on April 11, 2023, I am sending that letter from Dr. Bland with this declaration to Mr. Packard on April 12, 2023.

9.      In light of Dr. Bland's letter and the attachments to that letter (Exhibit 4), and in light of Dr. Bland's earlier declaration (Exhibit 1), *Defendants continue to take the most reasonable position that Conditions "6" and "7" should be imposed by this Court*.  Plaintiff's counsel and expert have not, and cannot, satisfy the requirements under the Biosecurity Plan.  As Dr. Bland stated in his earlier declaration (Exhibit 1):

> It is my professional and expert opinion that visitors, including representatives and agents of Plaintiff  Californians For Alternatives To Toxics, should not be allowed on to or in the biosecurity areas of the Reichardt Duck Farm in order to prevent any compromises of those biosecurity protocols.

10.      On April 19, 2023, after reviewing a draft of the Joint Statement and supporting declaration from Plaintiff, I was alerted to the fact that the two pages of "Guest Biosecurity" was inadvertently omitted from the Biosecurity Plan that this office provided to Plaintiff on March 31, 2023.  I apologized for that unintentional oversight, and provided those two pages to Plaintiff's counsel on April 19, 2023.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 24, 2023, at Sacramento, California.

Glen Hansen

**SUPPLEMENTAL DECLARATION OF GLEN HANSEN RE PLAINTIFF'S INSPECTION**

# EXHIBIT 1

1  Diane Kindermann (SBN 144426)
   dkindermann@aklandlaw.com
2  Glen C. Hansen (SBN 166923)
   ghansen@aklandlaw.com
3  ABBOTT & KINDERMANN, INC.
   2100 21st Street
4  Sacramento, California 95818
   Telephone:    (916) 456-9595
5  Facsimile:    (916) 456-9599

6  Attorneys for Defendants
   REICHARDT DUCK FARM, INC., and
7  JOHN REICHARDT

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIANS FOR                    Case No: 3:22-CV-09065-AGT
    ALTERNATIVES TO TOXICS, a non-
12  profit corporation,                 DECLARATION OF
                                        DR. MARK BLAND IN SUPPORT OF
13              Plaintiff,              DEFENDANTS' MOTION FOR A
                                        PROTECTIVE ORDER
14  v.

15  REICHARDT DUCK FARM, INC., and
    JOHN REICHARDT,
16
                Defendants.
17

18  I, Mark Bland (DVM, MS and DACPV), declare:

19       1.      I have been working with Defendants John Reichardt and Reichardt Duck Farm,

20  Inc. (collectively "Reichardt Duck Farm"), for the past 10 years.  I am responsible for developing

21  the biosecurity and animal welfare programs for Reichardt Duck Farm, and for the overall flock

22  health programs at Reichardt Duck Farm.  If called as a witness, I could and would competently

23  testify to the following facts of which I have personal knowledge, except those matters alleged

24  upon information and belief, and as to those, I believe them to be true.

25       2.      I have been a Poultry Veterinarian Consultant for the past 25 years.  I grew up on a

26  small farm with 500 layers, 20 plus milking goats, 40 head of beef cattle and a few market pigs

27  now and then.  I have a Bachelor of Science degree in Poultry Science (conferred in 1981) and a

28  Master of Science degree in Poultry Science (conferred in 1983) from Oregon State University. I

-1-

1   graduated with a Doctor in Veterinary Medicine from the School of Veterinary Medicine at

2   Oregon State University in 1987 and received my Residency degree in Poultry Medicine from

3   University of California, Davis in 1989.  I worked as the corporate veterinarian for Nicholas

4   Turkey Breeding Farms for 10 years in Sonoma, California.  For the past 25 plus years I have

5   been consulting with a number of commercial layer, broiler, turkey, duck, breeders of all four

6   species, game birds, guinea fowl and squab production companies on the West Coast.  I am an

7   accredited veterinarian licensed to practice in British Columbia (Canada), Washington, Oregon,

8   California and Utah.  I am board certified as a Poultry Veterinarian with the American Veterinary

9   Medical Association through the American Association of Poultry Veterinarians since 1992. I am

10  also trained as an Animal Welfare Auditor through the Professional Animal Auditor Certified /

11  Poultry Welfare since 2009.

12        3.     I designed the biosecurity protocols for Reichardt Duck Farm.  It is my

13  professional and expert opinion that visitors, including representatives and agents of Plaintiff

14  Californians For Alternatives To Toxics, should not be allowed on to or in the biosecurity areas of

15  the Reichardt Duck Farm in order to prevent any compromises of those biosecurity protocols.

16        4.     My opinion is based on the continuous outbreaks of High Path Avian Influenza

17  HPAI that continues to plague the Poultry Industry across this country as well as California for

18  the past 14 months.  The risk of Avian Influenza (AI), in this case HPAI H5, is real.  Pekin Ducks

19  are domestic waterfowl and are highly susceptible to AI infection.  The end result of an infection

20  will be total depopulation of the farm, hatchery, breeders and grow out operations at Reichardt

21  Duck Farm.

22        5.     The HPAI disease situation has been ongoing for more than 14 months.  Just in the

23  U.S. alone, approximately 58,000,000 million birds (domestic poultry) in 47 states have been

24  infected and either died or were euthanized in 2022.  This included 9,563,000 ducks.  Currently in

25  2023, we are at 704,820 birds in 9 states with 82,200 ducks being euthanized or died from High

26  Path AI.  The 2022 – 2023 H5 N1 HPAI outbreak has cost the USDA approximately 1.7 billion

27  dollars. This does not include the direct cost to the producers for loss of birds or production.

28  Below is a summary from U.S. Department of Agriculture, Animal and Plant Health Inspection

-2-

1  Service, 2022-2023 Confirmation of Highly Pathogenic Avian Influenza (HPAI) in Commercial

2  and Backyard Flocks last updated March 07, 2023.  I have only included the commercial and

3  smaller production poultry farms that have tested positive for High Path AI in California.  Please

4  note, currently at this time in California, there have been three (3) commercial duck breeder farms

5  that have tested positive for HPAI and been depopulated per USDA (highlighted in red).

6

7

| Date | CA county | Production | # of birds |
|------|-----------|------------|------------|
| 02. 17. 2023 | San Joaquin Country | WOAH Non Poultry | 160 |
| 02. 06. 2023 | Merced Country | Commercial Duck Breeder | 29,100 |
| 02. 06. 2023 | Placer Country | WOAH Non Poultry | 30 |
| 02. 06. 2023 | San Joaquin Country | WOAH Non Poultry | 8 |
| 01. 19. 2023 | El Dorado Country | WOAH Non Poultry | 20 |
| 01. 12. 2023 | Tehama Country | WOAH Non Poultry | 23,700 |
| 01. 09. 2023 | San Joaquin Country | WOAH Non Poultry | 10 |
| 01. 09. 2023 | Sonoma Country | WOAH Non Poultry | 20 |
| 01. 09. 2023 | Sonoma Country | WOAH Non Poultry | 6 |
| 12. 22. 2022 | Glenn Country | Commercial upland Gamebird | 32,000 |
| 12.19. 2022 | Mendocino County | WOAH Non Poultry | 20 |
| 12.16. 2022 | Butte County | WOAH Non Poultry | 20 |
| 11.16. 2023 | Fresno Country | Commercial Duck Breeder | 34,700 |
| 11.03. 2022 | San Diego County | WOAH Non Poultry | 150 |
| 10.13.2022 | Stanislaus, County | Commercial Turkeys | 54,900 |
| 10.04.2022 | Del Norte, County | WOAH Non Poultry | 43,000 |
| 10.04. 2022 | Monterey Country | Commercial Duck Breeder | 15,100 |
| 10.03.2022 | Stanislaus, County | Commercial Turkeys | 51,000 |
| 10.03.2022 | Calaveras, County | WOAH Non Poultry | 20 |
| 09.20.2022 | Fresno, County | WOAH Non Poultry | 15,900 |
| 09.15.2022 | Fresno, County | Commercial Broiler breeders | 100 |

-3-

| | | | | |
|---|---|---|---|---|
| 1 | 09.09.2022 | El Dorado Country | WOAH Non Poultry | 150 |
| 2 | 09.09.2022 | Fresno, County | Commercial Broiler breeders | 23,900 |
| 3 | 09.01.2022 | Fresno, County | Commercial Broiler breeders | 22,900 |
| 4 | 09.01.2022 | Sacramento, County | WOAH Non Poultry | 20 |
| 5 | 09.01.2022 | Tuolumne, County | Commercial turkeys | 30,800 |
| 6 | 08.30.2023 | Sacramento, County | Commercial turkeys | 97,000 |
| 7 | 08.30.2023 | Tuolumne, County | Commercial turkeys | 7,400 |
| 8 | 08.30.2023 | Tuolumne, County | Commercial turkeys | 91,000 |
| 9 | 08.26.2023 | Tuolumne, County | Commercial turkeys | 161,700 |
| 10 | 08.26.2023 | Fresno, County | Commercial broiler breeders | 34,800 |
| 11 | 08.23.2023 | Contra Costa, County | WOAH Non Poultry | 60 |
| 12 | 08.22.2023 | Fresno, County | Commercial broiler breeders | 33,900 |
| 13 | 08.16.2023 | Contra Butte, County | WOAH Non Poultry | 1,100 |
| 14 | 08.20.2023 | Sacramento, County | WOAH Non Poultry | 40 |

15

16    6.    HPAI is just one of several poultry diseases that can be introduced onto Reichardt

17   Duck Farm that could have devastating end results.  AI is not the only threat that people (i.e.,

18   visitors) will bring to a poultry farm.  Additional risks include Exotic Newcastle Disease (END),

19   and Salmonella introduction, which may result in poultry related food safety issues to the public.

20   Another risk is Fowl Cholera (*Pasteurella multocida*); and I have no desire to battle Fowl Cholera

21   again at Reichardt Duck Farm, a disease that took nearly three years to control and eliminate from

22   Reichardt Duck Farm through strenuous biosecurity measures, barn re-construction, rodent

23   control and vaccination program.

24    7.    In light of these present and real threats, the majority of poultry producers at this

25   time are not allowing *any* visitors onto the poultry farm unless it absolutely essential, and even

26   then visitors are not allowed to go near the production barns for any reason or under any

27   circumstances.

28

**DECLARATION OF DR. MARK BLAND IN SUPPORT OF
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

8.      I do not know who the representatives and agents of Plaintiff Californians For Alternatives To Toxics are.  I do not know what their background or training is, or their knowledge or experience with poultry related biosecurity protocols.  I also have no assurance the the representatives and agents of Plaintiff Californians For Alternatives To Toxics have or do not have poultry, pet birds or reptile pets at their homes, which is highly relevant to the biosecurity risks of these individuals.  Without true assurance of those issues, and without making a house call to check the homes of these individuals, those individuals remain a risk and threat to Reichardt Duck Farm's overall biosecurity.  Furthermore, I also do not know if any of these individuals are part of or have any affiliations with Animal Rights Groups (such as DXE/PETA) or, frankly, agricultural terrorists. Such groups have overtly engaged in efforts to shut down Reichardt Duck Farm in the past, and so concerns about threats from such individuals and groups are legitimate.

9.      Accordingly, in my opinion there should be no visitors allowed in the biosecurity areas of the Reichardt Duck Farm for any reason, including representatives and agents of Plaintiff Californians For Alternatives To Toxics.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 15, 2023, at Sacramento, California.

Dr. Mark Bland

-5-

**DECLARATION OF DR. MARK BLAND IN SUPPORT OF**
**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

# EXHIBIT 2

# Reichardt Duck Farm Inc.



**Industrial Areas and Drainages**
- Drainage Area 001
- Drainage Area 002
- Drainage Area 003
- Drainage Area 004
- Drainage Area 005
- Drainage Area 006
- Drainage Area 007
- Drainage Area 008
- WW System

**Waterbody**
- Creek
- Former Sample Location
- New Sample Point 2021
- Potential Sample Point
- Dam/Spillway from off-site sources

Order 2014-0057-DWQ
General Permit for Storm Water
Discharges Associated with
Industrial Activities

Level I ERA Report
WDID: 2491014770

3770 Middle Two Rock Road
Petaluma CA 94952

# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, | Case No.  22-cv-09065-AGT |
| Plaintiff, | **DISCOVERY ORDER** |
| v. | Re: Dkt. No. 20 |
| REICHARDT DUCK FARM, INC, et al., | |
| Defendants. | |

Plaintiff alleges that defendants have discharged pollutants from their duck farm in violation of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1389. To substantiate their claims, plaintiffs seek to inspect areas of defendants' duck farm "where industrial activities occur that have an impact on storm water." Dkt. 20 at 2. Some of these areas are heavily protected by defendants. Defendants worry that visitors to these areas could expose defendants' ducks to Avian Influenza, or that visitors, if associated with certain animal rights groups, could seek to sabotage defendants' operations. *See* Dkt. 20-2, Reichardt Decl. ¶¶ 3–7; Dkt. 20-4, Bland Decl. ¶¶ 4–8. Because of these concerns, defendants have proposed the following seven conditions on any inspection of these heavily protected "biosecure" areas.

1. All persons are to ride within the Facility's 10-person van during the inspection of the biosecure areas; and no private vehicles will be allowed outside of the parking area next to Middle Two Rock Road.

2. There will be no inspection of, or entry into, any of the buildings at the Facility, except for the office building on the south side of Middle Two Rock Road.

3.  Plaintiff will be represented by its counsel and water quality experts only.

4.  No drones are allowed.

5.  Photographs and video cannot include any ducks or employees at the Facility.

6.  Any inspection of a biosecure area will be made from inside the van.

7.  If Plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP, Travis Peterson, who has satisfied the biosecurity measures and precautions for the Facility will take such samples for Plaintiff in the biosecure areas of the Facility and immediately provide such samples to Plaintiff's representatives during the inspection.

Dkt. 20 at 2–3.

Plaintiff hasn't objected to conditions 1, 3, or 4, but has objected to conditions 2, 5, 6, and 7. *See* Dkt. 20 at 2–3. The Court heard argument on the dispute and now rules as follows.

As to condition 2, plaintiff has agreed not to enter any building at the duck farm except for the office building on the south side of Middle Two Rock Road. Plaintiff, however, wants to be able to take photos of the interior of certain buildings, and the Court will allow plaintiff to do so. By standing outside the buildings and taking photos of the buildings' interiors from there, plaintiff will reduce the risk of contaminating indoor areas where ducks are located. And although defendant worries that photos could be misused to smear the duck farm, the stipulated protective order (dkt. 24) will prevent plaintiff from using the photos outside this litigation.

As to condition 5, the stipulated protective order makes this condition unnecessary. If plaintiff takes photos or records video of any ducks or employees at the duck farm, those photos or video can be marked as confidential, preventing plaintiff from using the photos or video outside this case. Condition 5 will not be imposed.

As to conditions 6 and 7, the Court won't impose or reject these conditions at this time. Defendants must first produce their biosecurity plan. After plaintiff has reviewed the biosecurity plan, the parties must meet and confer to discuss whether plaintiff can comply with the plan such that one or more of plaintiff's agents can exit defendants' van to inspect biosecure areas at the duck farm. If the parties are unable to reach an agreement as to these conditions after meeting and conferring, they may file another joint statement with the Court.

This order resolves Dkt. 20, the parties' March 21, 2023, joint statement.

**IT IS SO ORDERED.**

Dated: April 3, 2023

Alex G. Tse
United States Magistrate Judge

# EXHIBIT 4

# MARK C. BLAND, DVM, MS & DACPV

3562 Jomar Drive, Napa, CA  94558
(209) 604 – 0381
Email: markbland@comcast.net

April 11, 2023

Glen C. Hansen
Senior Counsel
Abbott & Kindermann, Inc.
A Professional Corporation
2100 21st Street | Sacramento, CA 95818

**SUBJECT: Plaintiff's counsel response to their compliance with the Biosecurity plan for the for the Reichardt Duck Farm.**

Glen,

I have reviewed the email from the Plaintiff's attorney (April 3, 2023) and this letter is my response to said email.

In regards to Plaintiff's counsel's specific inquiry, I would point them to pages two, three, and eight of the Reichardt Duck Farm Biosecurity Plan (attached).

Employees at Reichardt Duck Farm, who are generally aligned with maintaining strict biosecurity practices on the farm, are required to (i) use foot pans to disinfect their footwear with Bio-phene solution, (ii) wear company-provided coveralls, (iii) use hand sanitizer and scrub their hands and fingernails, (iv) not drive their own cars on the ranch, (v) wear black rubber boots provided by the company, (vi) cannot keep poultry or bird at their home nor be involved with raising poultry of any kind outside of their duties on the ranch, and (vii) cannot enter the facility without a clear understanding of the applicable biosecurity procedures.

Guests on the ranch, who are also generally aligned with maintaining strict biosecurity practices on the farm (as most guests are generally not antagonistic to the ranch), are required to (i) wear clean coveralls provided by the ranch, (ii) wear different footwear for each site, (iii) clean and disinfect their hands and boots, and (iv) no visitor vehicles are permitted to enter any farm facility.

So, I would not characterize the Biosecurity Plan in any way as allowing Plaintiff's counsel and expert to exit a van to inspect biosecure areas of the facility if they only "*attest to their exposure to other sources of the flu.*" As these individuals would in no way have personal knowledge of their previous risk of exposure to poultry diseases and attesting to such a fact without that knowledge may expose them to additional liability.  Similarly, I did not

1

detect any willingness on the part of Plaintiff's counsel and expert to participate in any training on biosecurity, which is a prerequisite for all employees of the Facility.

As I've stated in my declaration, I would not characterize these individuals as aligned with the overall success of the farm and, therefore, additional biosecurity practices are warranted to prevent poultry diseases from intentionally or unintentionally entering the ranch due to these individuals being present on the site.

Should High Path Avian influenza (HPAI) be introduced onto the Reichardt Farm, the disease will most likely cause extensive mortality in commercial broiler ducklings (0 – 5 weeks of age). Hatching egg production would decline rapidly from breeders ducks along with elevated mortality in adult breeder ducks. USDA would step in and rapidly euthanize all duck breeders, commercial broiler ducks as well as destroy hatching eggs in the hatchery. This "*stamping out policy*" would go into effect to preserve the health and integrity of the nearby commercial poultry industry which includes two commercial layer companies and a commercial broiler company, in the greater Petaluma area.

If any of the Plaintiffs are allowed to enter the RDF biosecurity arears, there must be a strict indemnity provisions with an insurance policy that would pay for the indemnity in the amount of the entire facility that would be lost in the event of a disease outbreak.

It should be noted, that last Friday, April 7, 2023, Dr. Ryan Scholz, DVM, MPH, State Veterinarian, Oregon Department of Agriculture-Animal Health Program attended my Poultry Medicine Class held at the Oregon State School of Veterinary Medicine for third year veterinary students. At approximately 5:10 PM (end of class lecture) Dr. Scholz approached me for my opinion on a matter concerning Wild California Condors and High Path Avian Influenza. In the ensuing conversation, Dr. Scholz informed me that he contacted FDA and informed the FDA auditing officials they would not be allowed to enter onto any commercial poultry farms in Oregon at this time due to the heighten risk of Avian Influenza on the west coast this past week. The issue of unnecessary visitors entering a poultry farm during this time period needs to be taken seriously.

I also called Dr. Annette Jones, Director and State Veterinarian for the Animal Health and Food Safety and Agriculture, of the California Department of Food and Agriculture, who I personally know, to ask her opinion about precautions for entering poultry facilities. At 10:54 (Mountain Standard Time – since I am in Colorado with family), on April 10, 2023, I received an email from Dr. Jones, which is attached to this letter. In that email, Dr. Jones discussed such precautions.

Please let me know if you have any additional questions or concerns.

Respectfully,

Mark C. Bland, DVM, MS and DACPV
Electronic Signature: Mark C. Bland DVM, MS and DACPV

CC: Diane Kindermann Henderson, Abbott & Kindermann, Inc.

Attachment: Reichardt Duck Farm Biosecurity Plan

3

Begin forwarded message:

**From:** "Jones, Annette@CDFA" <annette.jones@cdfa.ca.gov>
**Subject: Highly Pathogenic Avian Influenza Precautions**
**Date:** April 10, 2023 at 10:54:55 AM MDT
**To:** Mark Bland <markbland@comcast.net>

4/10/23, 1:39 PM
Case 3:22-cv-09065-AGT   Document 35-2   Filed 04/25/23   Page 22 of 25
Untitled attachment 00018.htm

Dr Bland:

Thank you for calling me with your question about the appropriate precautions to be taking right now relative to entering poultry facilities. Highly Pathogenic Avian Influenza continues to be a disease that *must* be taken seriously. It has not only killed millions of domestic chickens, turkeys and ducks, impacting the food supply and cost of eggs, but it is also taking a toll on wild animals. Recently, it resulted in the death of Mt Lions and a Bob Cat in California, and California Condors in Arizona. Keeping populations of birds separate form each other to the extent possible is critical to stopping transmission. Humans tracking the virus around continues to pose a threat, which thanks to strict biosecurity, has come to fruition less often than the outbreak of 2015. Because of strictly following biosecurity, only 15% of the cases in 2022/23 came from people tracking virus onto a farm. The vigilance of poultry farmers in California can be commended as cases of disease in domestic poultry have significantly dropped off. But with continuing cases in wildlife, now is NOT the time to become slack while protecting flocks. I have attached two letters that you can find on our website that have recommendations. One is for government agencies that must inspect farms and one is for farmers.

Again, thank you for continuing to educate all that are associated with domestic poultry. Only by working together can we can protect against this disease.

Annette Jones, DVM
Director and State Veterinarian
Animal Health and Food Safety Services
California Department of Food and Agriculture
1220 N Street
Sacramento CA 95814
(916) 900-5000 (Office)
(916) 716-1893 (Mobile)



**CALIFORNIA DEPARTMENT OF FOOD & AGRICULTURE**
Karen Ross, Secretary

December 29, 2022

**Highly Pathogenic Avian Influenza (HPAI) Update and Biosecurity Advisory**

To: California Poultry Producers

Detections of HPAI continue to be found in both domestic and wild birds. In California, as of December 29, 2022, there have been 26 detections of HPAI in domestic flocks of birds in 13 counties and over 207 detections in wild birds in 42 counties. Wild birds in or passing through California are facing the additional stressor of drought which is forcing unusual congregation and movement. Based on current disease surveillance and epidemiology, wild waterfowl and raptors remain the largest threat of Eurasian H5N1 introduction to domestic poultry in California. The risk of disease entering domestic poultry flocks is always present but can be mitigated though actions that interrupt disease transmission (biosecurity). Enhanced biosecurity is critical in the face of ongoing disease outbreaks and wild bird carrier exposure.

*To protect your flocks, we continue to request that you separate poultry from wild birds if you can. This action is particularly important if there is ANY water in the vicinity that may attract and congregate wild waterfowl. We recommend housing poultry inside and discouraging any interaction with wild birds, particularly migrating or resident waterfowl and raptors.*

Because of the recent cases in California poultry production and epidemiologic evidence that this strain, given the California drought, will concentrate in resident and migrating waterfowl and raptors looking for food and water sources, **we ask that California producers move their birds indoors through June 2023.**

The risk to each farm may be different, so it is important to consider your situation when complying with this request. If you are certified organic and want to make changes to housing, you must contact your certifier *before* altering confinement and meet their requirements to remain certified. Over the next several months we will continue to assess the threat and rescind this recommendation if the situation changes. Thank you for your cooperation.

For more information about Avian Influenza, please visit:
www.cdfa.ca.gov/go/avianinfluenza

Sincerely,

Dr. Annette Jones
State Veterinarian
California Department of Food and Agriculture

---

Animal Health and Food Safety Services   •   1220 N Street   •   Sacramento, California 95814
Telephone:  916.900.5000   •   Fax:  916.900.5332   •   www.cdfa.ca.gov/ahfss

**State of California**
Gavin Newsom, Governor





**CALIFORNIA DEPARTMENT OF FOOD & AGRICULTURE**

Karen Ross, Secretary

December 29, 2022

**Field Biosecurity Recommendations for State/County/City Personnel Entering Shell Egg Packing Facilities, Poultry Harvest Facilities, and Poultry Farms**

To: All California State/County/City Personnel

Detections of Highly Pathogenic Avian Influenza (HPAI) continue to be found in both domestic and wild birds. In California, as of December 29, 2022, there have been 26 detections of HPAI in domestic flocks of birds in 13 counties and over 207 detections in wild birds in 42 counties. Wild birds in or passing through California are facing the additional stressor of drought which is forcing unusual congregation and movement. Based on current disease surveillance and epidemiology, wild waterfowl and raptors remain the largest threat of Eurasian H5N1 introduction to domestic poultry in California. The risk of disease entering domestic poultry flocks is always present but can be mitigated though actions that interrupt disease transmission (biosecurity). Enhanced biosecurity is critical in the face of ongoing disease outbreaks and wild bird carrier exposure.

While Avian Influenza is endemic in wild waterfowl, there are factors that increase the risk for HPAI transmission in poultry. The California Department of Food and Agriculture (CDFA) asks for your assistance and cooperation in preventing the introduction and spread of poultry disease by following some simple biosecurity precautions. With your help we can continue to provide a safe and healthy food supply for Californians. State, County, City, and private inspectors and auditors are recommended to adhere to the following:

1) When possible, conduct remote or virtual audits.

2) If in-person inspections or visits to poultry farms must occur:

   a. Do not enter farms where eggs are hatched or poultry are raised if you have birds or live poultry at home.

   b. Never visit any poultry farm within 72 hours of visiting another commercial poultry farm, egg or meat processor; after duck hunting or having had other exposure to wild migratory waterfowl; or visiting any backyard, school, feed store, swap meet, live bird market, pet store, fair, veterinary clinic, zoo, bird hunt club, or other facility which has live poultry or birds.

   c. Always wash your vehicle including undercarriage and wheel wells before entering a farm/egg processing facility. A commercial car wash can be used for this purpose.

---

Animal Health and Food Safety Services   •   1220 N Street   •   Sacramento, California 95814
Telephone: 916.900.5000   •   Fax: 916.900.5332   •   www.cdfa.ca.gov/ahfss

**State of California**
Gavin Newsom, Governor



December 29, 2022
Page 2

      i.    Park your vehicle in a designated area per the company's biosecurity plan or if there is none, try to park on cement or a paved area away from the production houses.

      ii.    Keep the inside of the vehicle clean and free of any organic material.

d.   Use good personal hygiene measures including freshly laundered clothes and showering before visiting a poultry farm or processing facility. Clothing that has been worn to premises with birds or live poultry should *never* be worn to another farm or processing facility without being laundered between visits.

e.   Never enter a poultry farm unless trained to apply and remove (don and doff) biosecurity clothing without spreading disease. If entering live bird areas, use clean, dedicated rubber boots or disposable plastic shoe covers, disposable coveralls, a mask, disposable gloves and a hair net.

f.   **ALWAYS follow all the biosecurity instructions of the commercial poultry farm/egg processing facility which may include: registering in a logbook, answering queries about bird and poultry premises visited previously, using company supplied protective clothing and footwear, footbaths, hand cleaning stations, tire/truck wash stations and other biosecurity measures.**

CDFA appreciates your efforts to protect poultry health in California on a daily basis. Remember, people, equipment, and vehicles can easily spread dangerous diseases from one location to another.

*For more information about biosecurity, please visit:* [cdfa.ca.gov/go/poultrybiosecurity](http://cdfa.ca.gov/go/poultrybiosecurity)

Sincerely,

Dr. Annette Jones, D.V.M.
Director and State Veterinarian