# EXHIBIT 1

LAW OFFICES OF
ANDREW L. PACKARD
245 KENTUCKY STREET, SUITE B3, PETALUMA, CA 94952
PHONE (707) 782-4060 FAX (707) 782-4062
INFO@PACKARDLAWOFFICES.COM

October 21, 2022

**VIA CERTIFIED MAIL**

John Reichardt
Reichardt Duck Farm
3770 Middle Two Rock Road
Petaluma, CA 94952

John Reichardt
185 Mystic Mountain Drive
Sparks, NV 89441

**Re: NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT") (33 U.S.C. §§ 1251 *et seq*.)**

Dear John Reichardt:

This firm represents Californians for Alternatives to Toxics ("CATs") in regard to violations of the Clean Water Act ("the Act") occurring at Reichardt Duck Farm Inc.'s ("RDF") duck farm located at 3770 Middle Two Rock Road, in Petaluma, California ("Facility"). This letter is being sent to you as the responsible owner and operator of the enterprise, and as the registered agent for this entity. Unless otherwise noted, John Reichardt and Reichardt Duck Farm Inc. shall hereinafter be collectively referred to as "RDF." The purpose of this letter is to provide RDF with notice of the violations of the Industrial General Permit occurring at the Petaluma Facility, including, but not limited to, noncompliant discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

RDF is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq*., and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1]

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects RDF to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter. These provisions of law authorize civil penalties of up to $59,973

[1] RDF submitted a Notice of Intent ("NOI") to comply with the General Permit for the Petaluma Facility on or about January 26, 2015. The Facility was assigned the Waste Discharge Identification ("WDID") Number 249I014770.

per day per violation for all Clean Water Act violations occurring after November 2, 2015.

In addition to civil penalties, CATs will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur. *See* 40 C.F.R. § 135.2. As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility. 40 C.F.R. § 135.3(a). At the expiration of sixty (60) days from the date of this letter, CATs intends to file suit under Section 505(a) of the Act in federal court against RDF for violations of the Clean Water Act and the Permit.

## I. Background.

### A. Californians for Alternatives to Toxics

CATs is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which RDF discharges polluted storm water. Members of CATs enjoy the waters that the Facility discharges into, including Laguna Lake, Chileno Creek, Walker Creek, Tomales Bay and the Pacific Ocean ("Impacted Waters"). Members of CATs use and enjoy the Impacted Waters for fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses. The discharge of pollutants from the Facility into the Impacted Waters impairs each of these uses. Further, discharges of polluted storm water from the Facility are ongoing and continuous. Thus, the interests of CATs' members have been, are being, and will continue to be adversely affected by RDF's failure to comply with the Clean Water Act and the General Permit.

### B. The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. The Act prohibits the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco Bay Keeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a

NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342.

**C. California's General Permit for Storm Water Discharges Associated with Industrial Activities**

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). General Permit, Standard Condition XXI.A. These facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities covered by the General Permit include concentrated animal feeding operations ("CAFO"). *Id.* at Attachment A. To be considered a CAFO, a facility must first be defined as an animal feeding operation ("AFO") and meet the criteria established in the CAFO regulation. An AFO is an agricultural operation where animals are kept and raised in confined situations where the following conditions are met: (1) animals have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period; and, (2) crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal growing season over any portion of the lot or facility. 40 C.F.R. § 122.23(b)(1). A CAFO is an AFO that is defined as a Large CAFO or as a Medium CAFO by the terms of 40 C.F.R. § 122.23. An operation that confines ducks is considered a Large CAFO is the above conditions are met, and there are at least 30,000 ducks (if the AFO uses other than a liquid manure handling system) or 5,000 ducks (if the AFO uses a liquid manure handling system). 40 C.F.R. § 122.23(b)(4)(xii) and (xiii).

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

**D. RDF's Petaluma Facility**

Information available to CATs indicates that RDF's industrial activities at the approximately 373-acre Facility include, but are not limited to: operations associated with a

concentrated animal feeding operation related to the raising and slaughtering of ducks. Based on public reporting in the press about the Facility, CATs is informed, and on that basis, believes that the Facility contains approximately 200,000 to 300,000 ducks at any time, and therefore meets the definition of a Large CAFO. Consequently, the Facility is required to maintain coverage under the General Permit.

The Facility includes rows of houses in which ducks are confined, wastewater processing, storage, and disposal facilities, dry litter and manure processing, storage, and disposal facilities, a fueling station, a shop and a network of roads that provide connectivity between the various industrial areas. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Code 2015 ("Poultry Slaughtering and Processing").

RDF collects and discharges storm water associated with industrial activities at the Facility through at least eight (8) discharge points into an unnamed creek, which drains to Laguna Lake. Laguna Lake discharges to Chileno Creek, which is a tributary to Walker Creek, which ultimately discharges to Tomales Bay and the Pacific Ocean. The Impacted Waters are waters of the United States within the meaning of the Clean Water Act.

The Tomales Bay watershed in western Marin County is one of the major estuaries on the west coast of the United States. It has a diverse ecosystem and several notable tributaries, including Lagunitas Creek, which has one of the few remaining viable coho salmon runs in central California. *Water Quality Control Plan for the San Francisco Bay Basin* ("Basin Plan") Section 4.1.3.3. The Water Board identified Tomales Bay as an area where commercial shellfishery is threatened and authorized the formation of a technical advisory committee to investigate and develop a remediation strategy. California Regional Water Quality Control Board San Francisco Bay Region Resolution 94-018. On February 8, 2007, the U.S. EPA approved the Total Maximum Daily Load ("TMDL") for pathogens in the Tomales Bay and the Basin Plan has been amended to incorporate the TMDL along with an implementation plan to achieve the TMDL. Basin Plan Section 7.3.1. "The overall goal of the Tomales Bay Watershed Pathogens Total Maximum Daily Load (TMDL) is to ensure protection of water contact recreational uses and Bay shellfish harvesting, thereby minimizing human exposure to disease-causing pathogens." *Id.*

According to the 2018 303(d) List of Impaired Water Bodies, Tomales Bay and its tributaries, including Walker Creek, downstream of the Facility are impaired for: Mercury, Nutrients, Sedimentation/Siltation, and Pathogens.[2] Polluted discharges from industrial sites, such as the Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

---

[2] 2018 Integrated Report – All Assessed Waters, *available at* https://gispublic.waterboards.ca.gov/portal/apps/webappviewer/index.html?id=e2def63ccef54eedbee4ad726ab1552c (last accessed September 20, 2022).

The areas of industrial activity at the Facility are sources of pollutants. The General Permit requires RDF to analyze storm water samples for TSS, pH, and Oil and Grease. General Permit, Section XI.B.6. The General Permit also requires facilities to analyze storm water samples for pollutants that are likely to be present in a particular facility's discharge, and any additional applicable industrial parameters related to receiving waters with 303(d) listed impairments. *Id.* Given that the Facility generates a significant amount of manure from ducks, nutrients and pathogens are pollutants that are likely to be present in the Facility's storm water discharges, and because they are related to the receiving waters 303(d) listed impairment, RDF is required to analyze their storm water samples for those pollutants.

## II. RDF's Violations of the Act and Permit.

Based on its review of available public documents, CATs is informed and believes that RDF, through its operation of the Facility, is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, RDF is subject to penalties for violations of the Act since October 21, 2017.

### A. RDF Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

RDF's storm water sampling results provide conclusive evidence of RDF's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations at its Facility. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

#### 1. Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies. General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management

practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id*.

The Basin Plan sets forth water quality standards and prohibitions applicable to RDF's storm water discharges from its Facility. The Basin Plan identifies present and potential beneficial uses for the Impacted Waters, which include shellfish harvesting (SHELL), warm freshwater habitat (WARM), wildlife habitat (WILD), water contact recreation (REC-1), noncontact water recreation (REC-2), cold freshwater habitat (COLD), fish migration (MIGR), preservation of rare and endangered species (RARE), commercial, and sport fishing (COMM), navigation (NAV), marine habitat (MAR), and fish spawning (SPWN).

**2. Applicable Effluent Limitations.**

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. General Permit, Effluent Limitation V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals*, 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by RDF: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; pH – 6.0-9.0 s.u., Nitrate plus Nitrite Nitrogen – 0.68 mg/L, and Phosphorus – 2.0 mg/L.

**3. RDF's Storm Water Sample Results**

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

**a. Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 11/29/2018 | Unnamed Creek | TSS | 400 | 100 |

**b. Discharge of Storm Water Containing Nitrite and Nitrate at Concentrations in Excess of Applicable EPA Benchmark Values**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 12/13/2021 | C Pond Creek | N+N | 0.77 (Nitrite); 13 (Nitrate) | 0.68 |
| 12/27/2021 | C Pond Creek | N+N | 11 (Nitrate) | 0.68 |
| 1/4/2022 | C Pond Creek | N+N | 10 (Nitrate) | 0.68 |
| 3/10/2021 | C Pond Creek | N+N | 120 (Nitrate) | 0.68 |
| 1/27/2021 | C Pond Creek | N+N | 20 (Nitrate) | 0.68 |
| 12/23/2019 | Unnamed Creek | N+N | 18 (Nitrate) | 0.68 |
| 12/2/2019 | Unnamed Creek | N+N | 0.79 (Nitrite); 11 (Nitrate) | 0.68 |
| 1/25/2018 | Unnamed Creek | N+N | 30 (Nitrate) | 0.68 |
| 11/29/2018 | Unnamed Creek | N+N | 13 (Nitrate) | 0.68 |
| 1/7/2019 | Unnamed Creek | N+N | 13 (Nitrate) | 0.68 |
| 2/4/2019 | Unnamed Creek | N+N | 3.5 (Nitrate) | 0.68 |

**c. Discharge of Storm Water Containing Phosphorus (P) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 12/13/2021 | C Pond Creek | P | 3.7 | 2.00 |
| 12/27/2021 | C Pond Creek | P | 3.1 | 2.00 |
| 1/4/2022 | C Pond Creek | P | 2.7 | 2.00 |
| 1/27/2021 | C Pond Creek | P | 3.7 | 2.00 |
| 12/23/2019 | Unnamed Creek | P | 2.8 | 2.00 |
| 11/29/2018 | Unnamed Creek | P | 2.9 | 2.00 |

**d. Discharge of Storm Water Containing pH at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (s.u.) | EPA Benchmark Value (s.u.) |
|---|---|---|---|---|
| 3/10/2021 | C Pond Creek | pH | 2.71 | Greater than 6.0, less than 9.0 |

**e. RDF 's Sample Results Are Evidence of Violations of the General Permit**

RDF's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. CATs is informed and believes that RDF has known that its storm water contains pollutants at levels exceeding General Permit standards since at least October 21, 2017.

CATs alleges that such violations occur each time storm water discharges from the Facility. Attachment A hereto, sets forth the specific rain dates on which CATs alleges that RDF has discharged storm water containing impermissible levels of TSS, N+N, P, and pH in violation of the General Permit. General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B. CATs further alleges that RDF violates the Basin Plan's water quality objectives each time it discharges storm water with *E. coli* and fecal coliforms in excess of the water quality standards set therein.

**4. RDF Has Failed to Implement BAT and BCT**

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* General Permit, Sections V, X.H.1-2.

RDF has failed to implement and maintain the minimum BMPs required by the General Permit as evidenced by the exceedances identified above. Specifically, RDF has failed to comply with the following: good housekeeping requirements, preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g).

RDF has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. General Permit, Sections X.H.2.

Each day that RDF have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). RDF has been in violation of the BAT and BCT requirements at its Facility every day since at least October 21, 2017.

**5. RDF Has Failed to Comply with the Monitoring Requirements of the General Permit.**

The General Permit requires dischargers to implement a Monitoring Implementation Plan. General Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. Permit, Section X.I.2. Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events during the second half of each reporting year (January 1 to June 3). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. General Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. General Permit, Section XI.B.11.

RDF has failed to develop and implement an adequate Monitoring Implementation Plan for its Facility, and has thus violated the monitoring requirements of the General Permit. For example, RDF has failed to monitor for every potential pollutant that is likely to be present at its Facility, including nutrients and pathogens. In addition, RDF has failed to collect the required number of samples for each reporting period. RDF has also failed to monitor every discharge location of storm water associated with industrial activities at its Facility. Each day that RDF has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. RDF has been in violation of the Monitoring requirements every day since at least October 21, 2017.

**6. RDF Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.**

The General Permit requires dischargers to develop and implement a site-specific SWPPP. General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3)

months in the reporting year. General Permit, Section X.B.

CATs' investigation indicates that RDF has been operating with an inadequately developed and implemented SWPPP in violation of General Permit requirements. RDF has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous continuing effluent limitation violations.

Each day RDF failed to develop and implement an adequate SWPPP at its Facility is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section X of the General Permit. RDF has been in violation of these requirements at its Facility every day since at least October 21, 2017.

### 7. RDF Has Failed to Submit Timely, True and Correct Reports.

Section XVI of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. General Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. General Permit, Section XVI.B.

CATs' investigations indicate that RDF has submitted incomplete Annual Reports and purported to comply with the Permit despite significant noncompliance at its Facility. Each day RDF failed to submit timely, true and correct reports is a separate violation of the Clean Water Act. RDF has been in violation of these requirements at its Facility every day since at least October 21, 2017.

## III. Persons Responsible for the Violations.

CATs puts RDF on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CATs puts RDF on formal notice that it intends to include those persons in this action.

## IV. Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Patricia Clary, Executive Director
Californians for Alternatives to Toxics
600 F Street, Suite 3 #911
Eureka, CA 95521
(707) 834-4833

**V. Counsel.**

CATs has retained legal counsel to represent it in this matter. Please direct all communications to:

Andrew L. Packard
William N. Carlon
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com
wncarlon@packardlawoffices.com

**VI. Conclusion**

CATs believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against RDF and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

William N. Carlon
Law Offices of Andrew L. Packard
Counsel for CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

**SERVICE LIST**

**VIA CERTIFIED MAIL**

Michael Regan, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Martha Guzman, Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Merrick B. Garland, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, Reichardt Duck Farm**
**Significant Rain Events,* October 20, 2017 – October 21, 2022**

| | | | |
|---|---|---|---|
| October 20, 2017 | November 29, 2018 | March 23, 2019 | April 5, 2020 |
| November 4, 2017 | November 30, 2018 | March 25, 2019 | April 6, 2020 |
| November 9, 2017 | December 1, 2018 | March 26, 2019 | April 7, 2020 |
| November 10, 2017 | December 5, 2018 | March 27, 2019 | May 12, 2020 |
| November 11, 2017 | December 15, 2018 | March 28, 2019 | May 14, 2020 |
| November 14, 2017 | December 17, 2018 | March 29, 2019 | May 17, 2020 |
| November 15, 2017 | December 19, 2018 | April 5, 2019 | May 18, 2020 |
| November 16, 2017 | December 21, 2018 | April 6, 2019 | November 14, 2020 |
| November 17, 2017 | December 24, 2018 | April 16, 2019 | November 18, 2020 |
| November 26, 2017 | December 25, 2018 | May 16, 2019 | December 12, 2020 |
| November 27, 2017 | January 5, 2019 | May 17, 2019 | December 13, 2020 |
| January 5, 2018 | January 6, 2019 | May 19, 2019 | December 14, 2020 |
| January 6, 2018 | January 7, 2019 | May 20, 2019 | December 17, 2020 |
| January 8, 2018 | January 9, 2019 | November 27, 2019 | December 26, 2020 |
| January 9, 2018 | January 10, 2019 | December 1, 2019 | December 31, 2020 |
| January 19, 2018 | January 12, 2019 | December 2, 2019 | January 2, 2021 |
| January 22, 2018 | January 15, 2019 | December 4, 2019 | January 5, 2021 |
| January 25, 2018 | January 16, 2019 | December 5, 2019 | January 7, 2021 |
| January 26, 2018 | January 17, 2019 | December 7, 2019 | January 8, 2021 |
| February 26, 2018 | January 18, 2019 | December 8, 2019 | January 23, 2021 |
| March 1, 2018 | January 20, 2019 | December 11, 2019 | January 25, 2021 |
| March 2, 2018 | January 21, 2019 | December 12, 2019 | January 27, 2021 |
| March 3, 2018 | January 31, 2019 | December 18, 2019 | January 28, 2021 |
| March 8, 2018 | February 2, 2019 | December 19, 2019 | January 29, 2021 |
| March 13, 2018 | February 3, 2019 | December 22, 2019 | February 2, 2021 |
| March 14, 2018 | February 4, 2019 | December 25, 2019 | February 12, 2021 |
| March 15, 2018 | February 5, 2019 | December 30, 2019 | February 15, 2021 |
| March 16, 2018 | February 9, 2019 | January 8, 2020 | February 19, 2021 |
| March 21, 2018 | February 10, 2019 | January 9, 2020 | March 6, 2021 |
| March 22, 2018 | February 13, 2019 | January 14, 2020 | March 9, 2021 |
| April 6, 2018 | February 14, 2019 | January 16, 2020 | March 10, 2021 |
| April 7, 2018 | February 15, 2019 | January 17, 2020 | March 15, 2021 |
| April 12, 2018 | February 16, 2019 | January 22, 2020 | March 19, 2021 |
| April 16, 2018 | February 26, 2019 | January 26, 2020 | April 26, 2021 |
| April 17, 2018 | February 27, 2019 | January 29, 2020 | September 19, 2021 |
| October 2, 2018 | March 2, 2019 | March 7, 2020 | October 18, 2021 |
| October 3, 2018 | March 6, 2019 | March 14, 2020 | October 20, 2021 |
| November 22, 2018 | March 7, 2019 | March 15, 2020 | October 21, 2021 |
| November 23, 2018 | March 10, 2019 | March 25, 2020 | October 22, 2021 |
| November 24, 2018 | March 20, 2019 | March 29, 2020 | October 24, 2021 |
| November 28, 2018 | March 21, 2019 | March 30, 2020 | October 25, 2021 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT A**
**Notice of Intent to File Suit, Reichardt Duck Farm**
**Significant Rain Events,* October 20, 2017 – October 21, 2022**

November 2, 2021
November 4, 2021
November 9, 2021
December 12, 2021
December 13, 2021
December 14, 2021
December 16, 2021
December 22, 2021
December 23, 2021
December 24, 2021
December 25, 2021
December 26, 2021
December 27, 2021
December 29, 2021
January 4, 2022
January 7, 2022
March 4, 2022
March 15, 2022
March 28, 2022
April 11, 2022
April 15, 2022
April 16, 2022
April 19, 2022
April 21, 2022
April 22, 2022
June 5, 2022
June 6, 2022
September 18, 2022
September 19, 2022

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.