Diane G. Kindermann Henderson (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:   (916) 456-9595
Facsimile:    (916) 456-9599

Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
JOHN REICHARDT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:       February 16, 2024<br>Time:      10:00 a.m.<br>Location: Courtroom A – 15th Fl.<br>Judge:     Alex G. Tse |

I, Diane G. Kindermann, declare,

1. I am a Shareholder with the law firm of Abbott & Kindermann, Inc., counsel of record for Defendants Reichardt Duck Farm, Inc. ("RDF"), and John Reichardt (collectively, "Defendants" or "Reichardt") in this action. If called as a witness, I could and would competently testify to the following facts of which I have personal knowledge, except those matters alleged upon information and belief, and as to those, I believe them to be true.

2. I have been an environmental attorney for nearly 30 years and have participated in citizen enforcement actions since 2001. Additionally, I have represented clients in Clean Water Act violations and lawsuits since 2010.

-1-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

3. In 2017, environmental groups challenged the United States Environmental Protection Agency ("EPA") over its Concentrated Animal Feeding Operations ("CAFO") regulations, including CAFO regulations to assume several things, including an evidentiary presumption that large CAFOs using wet manure management systems discharge pollutants. CAT's present lawsuit mirrors the language in that petition against the EPA. https://www.epa.gov/system/files/documents/2023-7/Earth%20Justice%20et%20al._10.2022.pdf. The Complaint by Plaintiff Californians For Alternatives To Toxics ("CAT") in this case appears to be modelled after that litigation against the EPA.

4. CAT was aware when it sent its 60-day Notice of Violation letter to Reichardt that CAT intended to demand full compliance with CAFO regulations at the Reichardt Duck Farm. CAT did not inform RDF of those purposes, despite Reichardt's request as early as November 2022 for CAT's settlement desires. CAT waited 7 months before it informed Reichardt of its intentions in this case.

5. Our research confirmed that RDF was not subject to either federal CAFO regulations or the State Combined Animal Facilities ("CAF") Regulations. RDF's participation in the Industrial General Permit National Pollutant Discharge Elimination System ("NPDES") program was correct. In fact, between November 2022 and July 2023, I called or sent e-mail correspondence to the EPA, the California State Water Resources Control Board ("SWRCB"), the California Regional Water Quality Control Boards ("RWQCB") for 2 separate regions, the Sonoma County Farm Bureau, University of California Agriculture and Natural Resources (UC Cooperative Extension) Poultry, among other resources, to determine whether RDF was subject to either Federal CAFO Regulations or State CAF Regulations. I was repeatedly informed by both legal and non-legal staff of these entities, that there is no Federal CAFO program under which RDF is regulated, and RDF is also not subject to the State CAF Program. For example, on July 25, 2023, Margaret Monahan, Laurie Taul, and Morgan Williams with the San Francisco Bay Regional Water Quality Control Board confirmed that: (a) the RDF facility lies within the San Francisco Bay Region; (b)the applicable permit that implements the CAFO regulations in the

San Francisco Bay Region is California Regional Water Quality Control Board, San Francisco Bay Region Order No. R2-2016-0031 General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region; and (c) none of the conditions in Scope of Coverage items 4 (a – e) apply to RDF and there were no additional requirements necessary at this time.  Therefore, RDF is not subject to either Federal CAFO or the State CAF programs.  CAT's contrary allegations in the Complaint are simply wrong.

6. I have defended Clean Water Act Citizen Enforcement suits since 2010 and I have never before experienced two situations inappropriately caused by CAT and its counsel in this particular case.  First, within a few weeks of receiving the 60 day Notice letter and retaining counsel, Reichardt asked in a straightforward manner exactly what CAT wanted Reichardt to do at its facility to settle the matter.  CAT refused to tell Reichardt until 7 months and abundant attorney billable hours later, that CAT was going to seek exact CAFO compliance documents, testing and monitoring in order to settle the case.  That delay was unreasonable.  As explained above, CAT modeled it's lawsuit after petitions and lawsuits against the EPA.  Also, CAT knew that it wanted what neither the State nor the Federal government thought applied to RDF - CAFO obligations - and yet CAT refused to tell RDF that basic fact until 7 months later.  Second, on February 10, 2023, I had a very troubling phone call with Andrew Packard, CAT's counsel.  On February 14, 2023, I sent a letter to Mr. Packard, Andrew Packard, a true and correct copy of which is attached as **Exhibit C**, that responded to comments made by Mr. Packard to me in that phone call of February 10, 2023.  In that letter I wrote:

> In your comments to me over the phone on February 10, 2023, you engaged in a lengthy diatribe of what you perceived to be the processes and outcomes on recently failed settlement discussions in an entirely separate matter in which you are representing another client, and we are counsel on the other side of that matter for a separate client.  Indeed, you similarly cited "[o]ur prior dealings" in your February 10, 2023 letter.  Your comments demonstrate that your prejudices in an entirely different matter are affecting your decision-making in this matter.  Your prejudices in this matter have already caused significant harm to our client in this case in light of your patently unreasonable refusal to delay our client's response to the Complaint and the discovery while the parties are engaged in active and meaningful settlement discussions.

-3-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

7.  Also on February 14, 2023, I sent a letter to Andrew Packard, counsel for Plaintiff Californians For Alternatives To Toxics (a true and correct copy of which is attached as **Exhibit D**), in which I stated the following:

> **Defendants' Settlement Correspondence**
>
> On December 14, 2022, we sent to you Reichardt's thorough technical and factual responses to your October 21, 2022 60-Day Notice Letter ("Response"). That Response included a 22-page letter from myself, as well as a technical letter with exhibits from our late expert, Wesley Greenwood, completed just days before his unexpected death on December 9, 2022. There was a combined 307 pages of material for you and your clients to consider. Shortly thereafter I requested a call with the parties' attorneys and experts to discuss the Response in furtherance of settlement, but you refused to participate in any such call. You have yet to respond to our analysis in that exhaustive correspondence. In spite of this significant and material effort on the part of the Reichardts, you ignored the Response and our efforts to discuss settlement, and instead chose to file and serve the above lawsuit commencing on December 22, 2022.
>
> Since the beginning of this case, we have repeatedly emphasized that the parties should spend their efforts and costs on settlement, and not on pleadings and discovery, none of which will result in protecting water quality, the purported focus of your 60-Day Notice Letter and your rapidly filed lawsuit.
>
> **Site Inspection and Settlement Timing**
>
> To facilitate settlement and to accommodate the unexpected death of our expert, we agreed to a site inspection at the Defendants' facility ("Facility"). You are referring to that as a "settlement-protected site meeting." We had also agreed that after such site visit, you would provide us with a draft Consent Decree containing the terms of settlement requested by your client to enable the settlement process to conclude before any more attorneys' time is spent on litigation. Indeed, your letter of February 10 recommends a settlement process for this case which appears entirely reasonable insofar as "the Defendants expect to provide a comprehensive settlement proposal, including all the injunctive and monetary terms to settle the case, within a few weeks after the February 22 Site inspection." Also reasonable is the expectation that Defendants shall "… respond to our settlement proposal comprehensively and in writing within twenty-one (21) days."
>
> Unreasonable however, is your concurrent demand for (a) an Answer to the Complaint; (b) an additional wet weather inspection under the FRCP; (c) an additional dry weather inspection under the FRCP; (d) responses to a staggering 96 different Requests for Admission; (e) responses to numerous Document Production Demands; (f) responses to Interrogatories; and (g) a response to a deposition of our client's Person Most Knowledgeable. Most of these are due before the "settlement-protected site meeting" even takes place. Contrary to your statement in the January 25 letter, such discovery is certainly not necessary to engaging

-4-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

> in "meaningful settlement discussions." Rather, such discovery demands at this point in the settlement process are unreasonable and unnecessary.
>
> **Conclusion**
>
> As noted, we agree to the settlement process restated hereinabove from your letter of February 10, 2023, and due to your blunt denial of an extension, we are proceeding with the answer and discovery responses. The details of your admitted bias resulting in that denial are addressed in separate correspondence to you. The costs of responding to the pleadings and discovery at this time are not reasonable. Such unnecessary efforts will certainly become an issue when attorneys' fees are discussed in our settlement process or in any post-settlement attorneys' fees motion.

8. After the site visit at which the parties agreed our consultant experts should communicate on questions or concerns about the facility as part of settlement negotiations, I requested of CAT's counsel on numerous occasions that CAT's expert(s) contact Reichardt's expert, Travis Peterson, in order to discuss the facility and the water quality measures that CAT wanted the facility to take in order to settle the case. CAT refused and did not have its expert(s) make that contact.

9. RDF's facility has been under visual scrutiny by CAT's drones, photography from open fields where there is ample visual access and visual access of the facility when standing on the side of the country road. There was nothing to be gleaned from a site visit that CAT did had not already seen to prevent CAT from informing RDF that total CAFO compliance was the settlement lynchpin.

10. In the initial draft Consent Decree that Mr. Packard provided to our office on March 14, 2023, CAT did not include injunctive provisions but instead contained a heading that stated "ADD MORE AS NEEDED" with no text below that heading.

11. On May 19, 2023, Mr. Packard sent a revised draft Consent Decree attached to an email to me that described the document as "CAT's comprehensive, proposed draft Consent Decree" that included "all of the injunctive and monetary terms under which CAT has authorized me to settle this case." That revised draft Consent Decree again did not include injunctive provisions but instead contained a heading that stated "ADD MORE AS NEEDED" with no text below that heading.

-5-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

12. On August 4, 2023, Mr. Packard sent a newly revised draft Consent Decree attached to an email to me that stated that the document was "for discussion at the settlement conference on Tuesday, August 9th [sic]." That newly revised draft Consent Decree again did not include injunctive provisions but instead contained a heading that stated "ADD MORE AS NEEDED" with no text below that heading.

13. Reichardt presented to CAT a *complete* settlement proposal at the Settlement Conference on August 8, 2023, as Magistrate Judge Hixson required of both parties. However, throughout that Settlement Conference, CAT continued to withhold its key injunctive demands, and continued to retain the "ADD MORE AS NEEDED" language in the Consent Decree discussed by the parties.

14. On August 10, 2023, Mr. Packard sent another revised Consent Decree attached to an email to me. In that version of the Consent Decree, CAT finally deleted the "ADD MORE AS NEEDED" language and replaced it with multiple pages of "Groundwater Monitoring", "Flow Metering" and "Soil Testing" injunctive provisions. That email included the threat: "CAT's demand for mitigation is increasing by $1,000 every day." Recognizing the obvious need for Reichardt's experts to analyze the massive new injunctive demands that CAT dumped on Reichardt for the first time on August 10, Judge Hixson conducted a phone conference with all of the parties' counsel and postponed the next Settlement Conference for an additional 4 weeks, to September 13, 2023. Counsel for CAT never removed the financial threat in that August 10 email during that delay ordered by Judge Hixson.

15. Early on, Reichardt insisted on reasonable biosecurity conditions on the parties' site inspections of the biosecurity areas of the duck farm. CAT vigorously and unreasonably refused to accept those conditions. Reichart incurred in excess of 95 hours of attorney work, costing Reichardt in excess of $50,000, to overcome CAT's opposition and to eventually secure a protective order from this Court on May 1, 2023, imposing those conditions. (Docket no. 37)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except as to those matters alleged on information and belief and, as

-6-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

to those matters, I believe them to be true.  Executed on January 25, 2024, at Sacramento, California.

                                                 */s/ Diane G. Kindermann*
                                                 DIANE G. KINDERMANN

-7-
**DECLARATION OF DIANE G. KINDERMANN IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

# EXHIBIT C



**ABBOTT & KINDERMANN, INC.**
ATTORNEYS AT LAW

February 14, 2023

**Via Email Only**

Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
andrew@packardlawoffices.com

Re:   *Californians for Alternatives to Toxics v. Reichardt Duck Farm, Inc., et al.*
      USDC Northern Case No.  3:22-CV-09065-AGT

Dear Mr. Packard:

This correspondence responds to your specific comments made to me in our phone call on Friday, February 10, 2023.

In your comments to me over the phone on February 10, 2023, you engaged in a lengthy diatribe of what you perceived to be the processes and outcomes on recently failed settlement discussions in an *entirely separate matter* in which you are representing another client, and we are counsel on the other side of that matter for a separate client.  Indeed, you similarly cited "[o]ur prior dealings" in your February 10, 2023 letter.  Your comments demonstrate that your prejudices in an entirely different matter are affecting your decision-making in this matter.  Your prejudices in this matter have already caused significant harm to our client in this case in light of your patently unreasonable refusal to delay our client's response to the Complaint and the discovery while the parties are engaged in active and meaningful settlement discussions.

As a result of your comments, I have unequivocally fulfilled my ethical duties to my client regarding your prejudices and outlined their options regarding alternative representation. We can only expect that you are doing the same to inform your client of the prejudices you have exhibited in the phone call and memorialized in writing, and how new counsel may be warranted if your clients so choose in order to avoid the interference of your prejudices and bias.

Very truly yours,

Diane Kindermann

DK/lh
cc:   William Carlon
      wncarlon@packardlawoffices.com

# EXHIBIT D



February 14, 2023

**Via Email Only**

Andrew L. Packard
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
andrew@packardlawoffices.com

> Re: *Californians for Alternatives to Toxics v. Reichardt Duck Farm, Inc., et al.*
> USDC Northern Case No. 3:22-CV-09065-AGT

Dear Mr. Packard:

This correspondence responds to your correspondence of January 25 and February 10, 2023.

**Defendants' Settlement Correspondence**

On December 14, 2022, we sent to you Reichardt's thorough technical and factual responses to your October 21, 2022 60-Day Notice Letter ("**Response**"). That Response included a 22-page letter from myself, as well as a technical letter with exhibits from our late expert, Wesley Greenwood, completed just days before his unexpected death on December 9, 2022. There was a combined 307 pages of material for you and your clients to consider. Shortly thereafter I requested a call with the parties' attorneys and experts to discuss the Response in furtherance of settlement, but you refused to participate in any such call. You have yet to respond to our analysis in that exhaustive correspondence. In spite of this significant and material effort on the part of the Reichardts, you ignored the Response and our efforts to discuss settlement, and instead chose to file and serve the above lawsuit commencing on December 22, 2022.

Since the beginning of this case, we have repeatedly emphasized that the parties should spend their efforts and costs on settlement, and not on pleadings and discovery, none of which will result in protecting water quality, the purported focus of your 60-Day Notice Letter and your rapidly filed lawsuit.

**Site Inspection and Settlement Timing**

To facilitate settlement and to accommodate the unexpected death of our expert, we agreed to a site inspection at the Defendants' facility ("**Facility**"). You are referring to that as a "settlement-protected site meeting." We had also agreed that after such site visit, you would

Andrew L. Packard
February 14, 2023
Page 2 of 2

provide us with a draft Consent Decree containing the terms of settlement requested by your client to enable the settlement process to conclude before any more attorneys' time is spent on litigation. Indeed, your letter of February 10 recommends a settlement process for this case which appears entirely reasonable insofar as "the Defendants expect to provide a comprehensive settlement proposal, including all the injunctive and monetary terms to settle the case, within a few weeks after the February 22 Site inspection." Also reasonable is the expectation that Defendants shall "… respond to our settlement proposal comprehensively and in writing within twenty-one (21) days."

Unreasonable however, is your concurrent demand for (a) an Answer to the Complaint; (b) an additional wet weather inspection under the FRCP; (c) an additional dry weather inspection under the FRCP; (d) responses to a staggering 96 different Requests for Admission; (e) responses to numerous Document Production Demands; (f) responses to Interrogatories; and (g) a response to a deposition of our client's Person Most Knowledgeable. Most of these are due *before* the "settlement-protected site meeting" even takes place. Contrary to your statement in the January 25 letter, such discovery is certainly not necessary to engaging in "meaningful settlement discussions." Rather, such discovery demands at this point in the settlement process are unreasonable and unnecessary.

**Conclusion**

As noted, we agree to the settlement process restated hereinabove from your letter of February 10, 2023, and due to your blunt denial of an extension, we are proceeding with the answer and discovery responses. The details of your admitted bias resulting in that denial are addressed in separate correspondence to you. The costs of responding to the pleadings and discovery at this time are not reasonable. Such unnecessary efforts will certainly become an issue when attorneys' fees are discussed in our settlement process or in any post-settlement attorneys' fees motion.

Very truly yours,

Diane Kindermann
Glen Hansen

DK/GH/lh
cc:   William Carlon
      wncarlon@packardlawoffices.com