Diane G. Kindermann Henderson (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:   (916) 456-9595
Facsimile:    (916) 456-9599

Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
JOHN REICHARDT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> REICHARDT DUCK FARM, INC., and JOHN REICHARDT, <br><br> Defendants. | Case No: 3:22-CV-09065-AGT <br><br> **DECLARATION OF TRAVIS PETERSON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> **Date:      February 16, 2024** <br> **Time:      10:00 a.m.** <br> **Location: Courtroom A – 15th Fl.** <br> **Judge:     Alex G. Tse** |

I, Travis Peterson, declare,

1.  If called as a witness, I could and would competently testify to the following facts of which I have personal knowledge, except those matters alleged upon information and belief, and as to those, I believe them to be true.

2.  I am an experienced environmental scientist, Principal Environmental Consultant and a California Qualified Industrial Storm Water Practitioner (QISP) with 25 years of industry experience specializing in California environmental regulatory compliance and water quality protection. My clientele includes industrial, commercial, manufacturing, utility, and municipal

-1-
**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1  operations. I have significant experience working on compliance matters for the Industrial General
2  Permit, Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ & Order 20XX-
3  XXXX-DWQ ("General Permit").  I have served as a regulator responsible for creating storm water
4  compliance and enforcement programs followed by others that add valuable industry insight. I have
5  significant program management experience in water resources at industrial operations, municipal
6  and private utilities, where I developed expertise and knowledge of operations and infrastructure
7  projects for wastewater, recycled water, drinking water, and storm water programs in many
8  industrial and commercial applications. A detailed CV is attached as **Exhibit A**.
9  I have provided Environmental compliance consulting and QISP services to defendant Reichardt
10 Duck Farm, Inc. ("RDF") since December 1, 2019.  As RDF's technical and strategic
11 environmental subject matter expert, I provided necessary services to support their compliance
12 program related to industrial storm water management, including preparing storm water pollution
13 prevention planning (SWPPP) documents, facility and site maps, compliance calendars, Level 1 and
14 2 Exceedance Response Action plans and reports. I performed many site inspections to advise RDF
15 on the selection and implementation of Best Management Practices to reduce pollutants from the
16 operation and evaluate effectiveness. I have provided training to facility personnel, coordinated
17 with analytical laboratories and other technical service providers, and served as a liaison with
18 environmental regulators.  In addition, I supported the facility in depicting RDF's industrial
19 wastewater system for the Meat and Poultry Products Effluent Limitation Guidelines extended
20 questionnaire requested by the United States Environmental Protection Agency.
21            3.      In October 2022, I was also retained by RDF to provide technical litigation support
22 in this lawsuit by plaintiff Californians For Alternatives To Toxics ("CAT").  In that capacity I have
23 assessed CAT's allegations, beginning with the 60-Day Notice of Intent to Sue from CAT, through
24 the legal and settlement process and provided technical responses and opinions to those allegations
25 based on my extensive knowledge of the RDF operation and compliance records, experience with
26 other industrial operations, and broad expertise navigating the implementation of the statutes and
27 regulations related to environmental and water quality matters in the State of California. I have
28

**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

performed visual inspections and water quality sampling related to this lawsuit and for ongoing regulatory compliance. I have provided declarations and addressed the court and plaintiffs in this matter when asked to do so.

4. I am the "Facility's expert QISP" who "has satisfied the biosecurity measures and precautions for the Facility" that this Court gave instructions to in its Discovery Order issued on May 1, 2023 (Docket no. 37) (attached as **Exhibit B**).

5. I have read and reviewed both the Notice of Violations letter sent by CAT to RDF, dated October 21, 2022, as well as the Complaint filed by CAT in this case. I have reviewed State and Federal statutes, regulations, and permits related to the case, SWPPP documents from 2015 to present, SMARTS compliance database filings and data, site inspection records and site photographs (by myself and others), available historical records, site storm water analytical data collected by myself and others, wastewater and recycled water analytical data, exceedance response plans, confidential business information for RDF, including chemicals and materials records and biosecurity measures, and photographs and split-sample analytical data collected at the same time and location as Plaintiff during the Plaintiff's site inspection of the RDF facility. In light of that evidence, and contrary to CAT's allegations in this lawsuit:

- Defendants RDF and John Reichardt ("Defendants") did not (and do not) discharge pollutant-contaminated storm water, liquid manure, and wastewater from the Facility into an unnamed Creek that runs through the Facility, or into any "Water of the United States."
- There is no evidence: (1) that there is any seepage of any water from the ponds on the Facility into the groundwater; (2) that there is seepage of any water from any spraying into the groundwater; or (3) that the groundwater in the vicinity of the Creek is hydrologically connected to the Creek.
- There is no evidence: (1) that there is seepage of any water from any spraying into the unnamed Creek; or (2) that "manure wastewater" is discharged into the unnamed Creek.

-3-
**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

- There is no evidence that, during significant rain events, storm water laden with pollutants discharges from the Facility's storm water conveyances into the unnamed Creek.
- There is no evidence that storm water containing pollutants harmful to fish, plant and bird life, and human health are being discharged from the Facility directly or indirectly to the unnamed Creek during each significant rain event.
- There is no evidence whatsoever that Defendants discharge water containing liquid or solid animal wastes into the unnamed Creek or groundwater.
- The storage ponds at the Facility are not undersized, and the operational duck houses at the Facility are not in disrepair.
- Because Defendants do not discharge liquid manure to any Impacted Waters, they do not require an individual National Pollutant Discharge Elimination System ("NPDES") Permit, and so they do not violate section 301(a) of the Act, 33 U.S.C. § 1311(a).
- There is no evidence that Defendants discharge pollutant-contaminated storm water from the Facility. Therefore, Defendants do not violate the Act or the State of California's General Industrial Permit for storm water discharges, State Water Resources Control Board ("State Board") Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ, Water Quality Order No. 97-03-DWQ, and Water Quality Order No. 2014-0057-DWQ, NPDES General Permit No. CAS000001 (hereinafter "General Permit" or "Permit").
- Defendants have not engaged in, and presently do not engage in, any violation of the filing, monitoring, reporting, discharge and management practice requirements, and other procedural and substantive requirements of the General Permit and the Act.
- Although Defendants do not have written protocols for the management of duck mortalities at the Facility, for the use of water in production areas at the Facility, or for the testing of manure, litter, process wastewater, or soil at the Facility, such written protocols are not required at the Facility, as a matter of law.

**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Although Defendants did not have a nutrient management plan for the Facility, that is not required of the Facility, as a matter of law.
- Defendants' storm water controls at the Facility achieve both Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.
- Contrary to Plaintiff's allegations, the Facility does not discharge storm water associated with its industrial activities from eight (8) discharge points into the unnamed Creek that runs through the Facility.
- The Facility regularly sampled storm water. While the pollutants that were measured have exceeded EPA Benchmarks, the EPA Benchmarks are not the legal measure for this General Permit. Also, Defendants have measured discharges containing levels of total suspended solids and phosphorus in excess of the EPA Benchmark values. However, EPA benchmarks are not the same as Numeric Action Levels ("NALs"), and what actions are required in response to an EPA Benchmark exceedance has been identified as a problem by the Water Boards, industry, and environmental stakeholders. Furthermore, exceedances of EPA Benchmarks do not indicate that Defendants have not implemented BAT and BCT at the Facility for its discharges of pH, total suspended solids, nitrate plus nitrite nitrogen, and phosphorus. Therefore, Defendants have not violated the CWA or the General Permit.
- While Plaintiff complains about the format of the 2015 SWPPP, the format of the SWPPP is not prescribed in the General Permit, and that multi-part documents are commonly submitted by the regulated industries, so there is no violation of the CWA or the General Permit.
- While the 2015 SWPPP contains significant amounts of information, but not all of the information, that is required by General Permit Section X, the Facility cured any such defects by making modifications to relevant SWPPP elements that were

-5-

**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

certified on June 13, 2018, July 15, 2020, and March 11, 2021, and were uploaded to SMARTS.  For example, a Monitoring Implementation Plan was uploaded to SMARTS on July 15, 2020.

- The 2015 SWPPP contains substantial representations of the items that Plaintiff incorrectly alleges are missing from the 2015 SWPPP; and a 2018 Assessment with additional SWPPP elements was uploaded to SMARTS as additional information was made available that reflected the Defendants' developing understanding of the pollutants on-site.

- While the Facility did not analyze storm water samples for pathogens, the Facility is not explicitly required to do so under the General Permit (nor Basin Plan).

- While on only a few occasions all required data was not submitted to the RWQCB via SMARTS within the thirty (30)-day time frame, on most occasions it was submitted within that thirty (30)-day time frame.

- The General Permit lays out the specific testing methods and NALs for potential pollutants in storm water, including those that are being analyzed by the Facility.  If NALs are exceeded, the General Permit also lays out the response requirements referred to as Level 1 or Level 2 status for each pollutant. Specific documents are produced to discuss the Facility's actions and include Level 1 Exceedance Response Action Report, Level 2 Exceedance Response Action Plan, and Level 2 Exceedance Response Action Technical Report.  The Facility has filed its Level 1 ERA Report for Total Suspended Solids and as a result of Facility actions, now qualifies to return to Baseline status (no further action).  The Facility has filed its Level 1 ERA Report for total phosphorus and a subsequent Level 2 ERA Action Plan for total phosphorus, which is currently being carried out.  The results of this Level 2 Action Plan were documented in the Level 2 Technical Report and have been submitted in the SMARTS compliance system.  Results from analytical testing from the 2022/2023 storm season just concluding has resulted in Level 1 status for nitrate

**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

        plus nitrite as N and a Level 1 ERA report is underway and has been submitted in the SMARTS compliance system.

- A NAL exceedance level is not a violation of an EPA Benchmark value. The General Permit may base NAL levels on the EPA 2008 Multisector General Permit.
- NAL Exceedances are not violations of the General Permit or the CWA. The General Permit, Attachment C, Glossary, defines a NAL as follows: "Pollutant concentration levels used to evaluate if best management practices are effective and if additional measures are necessary to control pollutants. NALs are not effluent limits. The exceedance of a NAL is not a permit violation."

Most specifically, there is no evidence to support CAT's contention that RDF's activity "has caused unpermitted discharges of manure-laden wastes to the creek bisecting the Facility." Plaintiff's Motion For Attorneys' Fees and Costs, 1:10-13. 5.

     6.    CAT also alleged in this litigation that the RDF facility was required to comply with regulations for Concentrate Animal Feeding Operations ("CAFO") regulations. That is not correct. On July 25, 2023 I contacted Margaret Monahan, Laurie Taul, and Morgan Williams with the San Francisco Bay Regional Water Quality Control Board, and was informed that the RDF facility lies within the San Francisco Bay Region and the applicable permit that implements the CAFO regulations in the San Francisco Bay Region is California Regional Water Quality Control Board, San Francisco Bay Region Order No. R2-2016-0031 General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region. It was confirmed that none of the conditions in Scope of Coverage items 4 (a – e) apply to this facility, and no additional requirements are necessary at this time.

     7.    I am informed that counsel for RDF requested of CAT that CAT's expert contact me to discuss the facility and the water quality measures that CAT wanted the facility to take. But at no time during this litigation was I ever contacted by Ian Wren or Dave Erickson or any other expert retained by CAT to discuss the RDF facility or the facility's processes related to this lawsuit.

**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 25, 2024, at Napa, California.

_____
TRAVIS PETERSON

# EXHIBIT A

# TRAVIS PETERSON

- 139 Old Vine Way, Napa, CA 94558
- 707.738.8788
- travis.peterson.solutions@gmail.com

---

**EXPERIENCE & OBJECTIVE**

Experienced environmental scientist with over 25 years of practice specializing in California regulatory strategy for water, soil, and air quality protection for facilities including industrial, commercial, manufacturing, and utility operations. Travis has significant program management experience in water resources at industrial operations, municipal and private utilities, where he developed expertise and knowledge of operations and infrastructure projects for wastewater, recycled water, drinking water, and storm water programs in many industrial and commercial applications. He is well-versed at creating and implementing environmental compliance programs aimed at reducing operational risk and liability for a variety of industry operations and public and private water and environmental utilities.

**EDUCATION**

**Master of Science, Chemistry,** San Francisco State University
**Bachelor of Science, Chemistry**, Mathematics Minor, University of Miami

**CERTIFICATIONS**

California Storm Water QISP
Water Treatment Certification Grade 2
Water Distribution Certification Grade 2

**EMPLOYMENT AND BUSINESS EXPERIENCE**

**Peterson Environmental Solutions LLC**, Napa, CA
**PRINCIPAL ENVIRONMENTAL COMPLIANCE STRATEGY CONSULTANT**
- Independent consultant specializing in California environmental compliance strategy;
- Industrial, MS4, and construction stormwater projects; Special enforcement cases;
- Water, wastewater permitting and compliance programs;
- Hazardous materials management, remediation, and waste characterization.

**ERM West, Inc.** Walnut Creek, CA
**PRINCIPAL ENVIRONMENTAL COMPLIANCE CONSULTANT**
- SME for the West Coast for environmental compliance strategy and water resources;
- Serving global clients in the Ag, Chemical, Tech, Energy, and manufacturing industries;
- Lead complex programmatic facility and organizational audits;
- Permitting, compliance, and enforcement case management.

**Broadbent & Associates, Inc.**, Vacaville, CA
**SENIOR SCIENTIST/BUSINESS MANAGER**
- Environmental consulting Senior Scientist and Bay Area business leader for start-up office of 5 FTEs; Tripled revenue over 2-years of growth;
- Responsible for project management, business development, & office operations expanding client base & market sector reach to water/wastewater, storm water, oil & gas, air quality; municipal & local agencies;
- California Marketing lead; Proposal manager for state operations; contract manager.

**California American Water**, Sacramento, CA; Pacific Grove, CA
**WATER QUALITY & ENVIRONMENTAL COMPLIANCE MANAGER**
- Responsible for utility water quality program for water and wastewater systems, including monitoring, reporting, and compliance strategy for 20 California public water systems, 10 wastewater systems, and 4 recycled water systems;
- Responsible for utility environmental compliance performance, including water, land, and air protection programs;
- Act as company liaison to regulatory agencies on district and statewide issues; build effective, professional relationships based on trust and common goals of protecting public health and the environment;
- Regularly Collaborate with operations & CIP engineering functional groups to efficiently accomplish district goals & improve operational & environmental processes;
- Assess new regulations for impact to business and operations; create, train, and implement compliance programs;
- Assess district practices to minimize environmental impact and incorporate environmental stewardship principles into current and future projects;
- Responsible for providing a good customer experience related to water quality,

Travis Peterson

**EMPLOYMENT AND BUSINESS EXPERIENCE (cont.)**

- environmental concerns, and general industry education;
- Responsible for waste management program including generator waste determination, management, and compliance with California and RCRA requirements;
- Direct and manage district staff (5-8 FTE) and consultants to successfully execute projects, contracts, and associated work products.

**City of Vacaville**, Vacaville, CA
**WATER QUALITY PERMITTING ADMINISTRATOR**
- Responsible for planning and implementing programs to establish, maintain, & document environmental compliance with regulatory permits & policies for the City's Utilities Department including 15 MGD wastewater operations, large public drinking water system, & stormwater program. Regulator oversight: EPA, SWRCB, RWQCB, DDW (CDPH).
- Project Manager for City's ROWD permit development, including priority pollutant and expanded water quality monitoring and fate and transport study of receiving waters.
- Act as department liaison with regulatory agencies during the development of regulations, orders, and policies that may affect department business.
- Represent the City and Central Valley wastewater dischargers (POTW) group in stakeholder workgroups seeking collaborative solutions and providing direct input to regulators on a variety of policy, technical, economic, and social-impact issues.
- Project Manager for the City's MS4 Phase II permit stormwater management program including education and outreach, construction, enforcement, and low-impact development components.
- Direct and manage City staff from multiple departments and consultants.

**MWH Global, Inc.,** Walnut Creek, CA
**ENVIRONMENTAL PROJECT MANAGER/ SR. PROJECT CHEMIST**
- Project Manager for industrial clients; responsible for business development, budgets/costs, project execution, and regulatory reporting and compliance.
- Environmental consulting as a Project Chemist for a variety of oil & gas, industrial, and commercial clients involving site investigation, remediation, monitoring, compliance, and closure involving CEQA, CWA, CWC, NPDES, CERCLA, RCRA, Brownfields requirements.
- Project chemistry program development including sampling design and methods, QAPP development, sample preservation, selection of preparation and analytical methods from USEPA and other standardized methods; laboratory compliance audits; data validation, verification, and assessment.
- Direct supervisor to environmental staff.

**REGULATORY STAKEHOLDER GROUP LEADERSHIP AND INVOLVEMENT:**

**Central Valley Clean Water Association,** Water Committee Chair
A collection of wastewater agencies with a common mission to effectively represent the interests of the industry in regulatory matters and to support the exchange of information so members can best meet their business challenges. I served as the chair for a committee that focused on regulatory issues of discharges to state waterbodies. Through this group, I effectively represented municipalities, seeking solutions that were technically and economically sound and politically acceptable to stakeholders including environmental regulators and NGOs.

**Central Valley Salinity Alternatives for Long-Term Sustainability**
CV-SALTS organizational focus is on a long-term, comprehensive solution for the increasing threat to the overall health of California's Central Valley and Delta from salt and nutrients in surface and groundwater. Impacted water supplies threaten drinking water for the majority of California residents and the agriculture industry. I served on the board of directors and technical committee, advocating for appropriate funding, regulation, technological innovation, and economic feasibility.

**Central Valley Drinking Water Policy Workgroup**
The CVDWPWG was a regulator-led effort to develop a policy that protects drinking water sources from further degradation by constituents such as organic carbon, pathogens, and nutrients. Major represented interests included public health, environmental, and water supply agencies, and wastewater, agriculture, and stormwater industries.

707-738-8788                                                                 travis.peterson.solutions@gmail.com

Travis Peterson

**Key Projects**

**Industrial Materials Recycler Wastewater to Reuse Conversion**
Travis led a team focused on minimizing the discharged wastewater from an industrial plastics recycling plant by adopting water reuse principals and a series of treatment technologies to recapture waste flows and reuse water within the process. The discharged water requirement reduced from 125K gallons per day (GPD) to less than 10K GPD.

**Wastewater Treatment Plant Compliance & Permitting ▢Various**
Travis has managed large wastewater and recycled water programs including 10 wastewater systems and four recycled water systems ranging from very small onsite wastewater treatment systems; passive pond systems; medium sized package wastewater treatment with recycled water production and distribution; and 15 million GPD advanced secondary and tertiary municipal treatment works.

Travis has helped restore the permitting and compliance status for Safe Drinking Water Act, Clean Water Act, Clean Air Act, Resource Conservation and Recovery Act, and Emergency Planning and Right-to-Know Act compliance through gaining operations experience, conducting audits, inspections, research, and record review for several systems throughout central and northern California. Additionally, he developed and implemented programmatic policies and procedures for sustaining environmental compliance and water quality compliance. Travis has trained staff and management to gain understanding and acceptance of water compliance programs, resulting in reduced liability and potential for harm to public health and the environment.

Travis created and implemented detailed programs to establish compliance with a newly issued NPDES permit for a 15MGD secondary treatment plant in preparation for its tertiary upgrade. He negotiated with the Regional Waterboard to establish clear operational parameters based on permit limit interpretation, establishing points of compliance, reasonable receiving water limits, and laboratory methodologies. Following this permit cycle, Travis led the Report of Waste Discharge permit renewal process, including priority pollutant studies, expanded water quality monitoring, and a fate and transport study of receiving waters.

**Water Treatment Facilities, Environmental Impact Assessment**
Implemented changes to water treatment system operations to reduce the toxicity of arsenic residual sludge from California-hazardous to non-hazardous levels, minimizing environmental impact, transportation and disposal costs, and allowing a more appropriate disposal pathway. Evaluated the waste generation process for a water tank rehabilitation, properly characterizing tank blast residue allowing it to be recycled for a permanently non-leachable industrial purpose and creating a new disposal pathway. Analyzed and modified treatment chemical usage to minimize quantity, cost, and environmental impact.

**Power Plant Industrial Discharger NPDES Renewal**
Travis managed the permitting strategy and data analysis for renewal of a major NPDES permit to discharge once-through cooling water by an electrical generator, incorporating new provisions and exemptions from the California Ocean Plan and performing the statistical evaluation of discharge data to predict compliance with water quality standards. The strategy and analysis resulted in the recommended removal of permit limitations for 5 pollutants from the future permit.

**Geothermal Power Generation Water Quality Protection**
Travis established a water quality protection closure plan for a shuttered geothermal facility and wellfield by evaluating the remaining pollutants from the chemical treatment units, cooling towers, wellfield operations, and storm water runoff and creating new strategic discharge pathways for different waters based on the environmental and regulatory constraints.

**Environmental Chemistry Support for Refineries**
Travis served as the Senior Project Chemist for major Bay Area refinery programs, providing remediation sampling, strategy, and environmental forensic services for investigations of petroleum hydrocarbon contamination. He performed studies and expert interpretation using high-resolution analytical chemistry techniques providing clients with scientific evidence of sources and relative aging of surface and

Travis Peterson

subsurface hydrocarbon releases often involving complex mixes of distillation fractions and multiple contamination release dates.

### Former Rocket Manufacturing and Propulsion Test Facility Surface Water Program

Travis served as the lead Project Chemist for the Boeing Company's Santa Susana Field Laboratory NPDES Program, a large, high-profile, politically-charged program. He worked closely with the clients and Los Angeles Waterboard to implement technical and regulatory aspects of the NPDES permit in compliance with the Clean Water Act and the California Water Code. Developed and negotiated the technical arguments for the compliance strategy, which was tangled in a legal debate over the application of point-source regulations to a nonpoint-source consisting of intermittent industrial storm water discharges. Travis planned and led the technical team responsible for complex, weather-driven sample collection, data generation, validation, database management, and for creating and meeting overall technical project quality assurance/quality control requirements.

### Hazardous Materials Program Management

Travis managed the hazardous materials programs for over 140 industrial facilities, including annual audits and reporting, permitting, coordination with the local CUPAs, inspections, and management of the Hazardous Materials Business Planning (HMBP) program and compliance reporting and tracking through California CERS system. Designed and implemented policies and procedures for managing used oil and asbestos containing material for proper accumulation, tracking, and disposal.

### Bulk Oil Facility Compliance Inspections

Travis led the compliance audit program for 30 bulk oil facilities in the Western US, incorporating newly acquired facilities into an existing operation, creating a consistent compliance program. Audits included compliance evaluation for hazardous materials storage and documentation, hazardous waste disposal, federal SPCC and state APSA regulations, and industrial storm water pollution prevention.

### Waste Characterization Protocol and Enforcement Response

Travis led the effort to restore compliance to an operation with a history of poor or improper waste characterization by creating and documenting defensible characterization protocol. Travis also represented the business in negotiations with the CUPA enforcement agency to correct misinterpretations of analytical data. Travis reduced the noncompliance penalty liability from $1.2M to $435K solely on regulatory interpretation and technical data arguments.

707-738-8788                                                                                          travis.peterson.solutions@gmail.com

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, <br><br> Plaintiff, <br><br> v. <br><br> REICHARDT DUCK FARM, INC, et al., <br><br> Defendants. | Case No. 22-cv-09065-AGT <br><br> **DISCOVERY ORDER** <br><br> Re: Dkt. No. 35 |

To balance plaintiff's need to inspect the biosecure areas of defendants' duck farm against defendants' concern that inspection could expose defendants' ducks to Avian Influenza, the Court will require plaintiff to adhere to the following additional[1] conditions during plaintiff's three wet-weather inspections of the biosecure areas.

1. Any inspection of a biosecure areas must be made from inside the Facility's van.

2. If plaintiff requests sampling within the biosecure areas, then during the site inspection of the biosecure areas the Facility's expert QISP, Travis Peterson, who has satisfied the biosecurity measures and precautions for the Facility, will take the samples and immediately provide them to plaintiff's representatives.

3. When Travis Peterson takes samples, he must use the sampling equipment provided by plaintiff's representatives.

4. Inspections of the biosecure areas shall be videotaped. Of particular importance, any time Travis Peterson exits the van to take a sample, he must be videotaped from when he exits the van through to when he returns to the van to give plaintiff's representatives the sample. A chain of custody for the sample must be established.

---

[1] Previously imposed conditions (*see* dkt. 26) must also be adhered to.

2

After any wet-weather inspection, if plaintiff believes the inspection wasn't complete because certain biosecure areas couldn't adequately be observed from the van, plaintiff shall meet and confer with defendants to discuss those areas. If the parties can't agree on whether, or how, those areas should be inspected, the parties may bring their dispute to the Court.

**IT IS SO ORDERED.**

Dated: May 1, 2023

_____
Alex G. Tse
United States Magistrate Judge