ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REICHARDT DUCK FARM, INC., et al,<br><br>Defendants. | Case No. 3:22-cv-09065-AGT<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:       February 16, 2024<br>Time:       10:00 a.m.<br>Location:   Courtroom A – 15th Floor<br>Honorable Magistrate Judge Alex G. Tse |

Defendants oppose the motion on the grounds that this case is all about an "extortionate" conspiracy of "upset" bioterrorists bent on circumventing state and federal regulators who "refuse to apply" the CAFO regulations to poultry producers, and have "repeatedly stated" that the CAFO regulations "do not apply." Opposition Brief, Dkt. 92 ("Opp.") at 4:2-10.  Defense counsel has "repeatedly explained" this position to CAT "throughout the litigation" and now to the Court, citing only calls and email correspondence with a jumble of regulatory bodies.  Dkt. 92-3 ("Kindermann Dec.") at ¶5.  If CAT would just "accept the governments' position" everything would be fine.  Opp. at 4:9.

In truth, it's not fine.  The Reichardt duck farm sits at the headwaters of Walker Creek, a water body designated by the Environmental Protection Agency as "impaired" for the very same pollutants that have been discharged in high concentrations by Defendants at this location for the last sixty-five years (Fecal Coliforms, *E. coli*, nitrogen, phosphorous).  The Walker Creek Watershed comprises a 76-square mile drainage to Tomales Bay:

> ….one of California's richest and most diverse coastal habitats.  The watershed is 95% privately owned, consisting predominantly of livestock and dairy ranches.  The Walker watershed is also home to steelhead trout and coho salmon, the endangered freshwater shrimp, red-legged frogs, and many other aquatic species.  According to the California Regional Water Quality Control Board, San Francisco Bay Region (RWQCB), beneficial uses in the watershed are threatened by sedimentation and nutrients.  Tomales Bay is listed as a category 1 watershed according to the State Water Resources Control Board's California Unified Watershed Assessment.

*Geomorphology of the Walker Creek Watershed: Prospects for Habitat Enhancement and Sediment Management*, Lauren Hammack; Prunuske Chatham, Inc., Marin Resource Conservation District (2005).  Tomales Bay is also home to a nationally-renowned oyster fishery, and borders much of the Point Reyes National Seashore, a 71,000-acre recreation area (nearly half of which is designated wilderness), visited annually by more than 2 million people.  Here, for whatever reasons, the Regional Board failed to enforce its own regulations.  Citizen suits under the Clean Water Act were authorized by Congress to address exactly this kind of agency failure.  For the reasons set forth below, CAT is a prevailing party entitled to the reasonably incurred fees and costs requested herein.

I.  **CAT Is A Prevailing Party Because The Judicially Enforceable Consent Decree Entered Herein Materially Altered The Parties' Legal Relationship, and Expressly Provides Many Forms of "Actual Relief on the Merits" of CAT's Claims for Injunctive Relief**

Defendants argue that CAT is not the prevailing party because it did not obtain "at least some of the relief on the merits of his claim." Opp. at 5:4-5. In the three cases cited, *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), quoting *Hewitt v. Helms,* 482 U.S. 755, 760 (1987)[1], and *Saint John's Organic Farm v. Gem County Mosquito Abatement District*, 574 F.3d 1054, 1059, 1061 (9th Cir. 2009), the Courts have grappled with potential exceptions to the prevailing party standard arising under Congress' use of the term "appropriate" in 33 U.S.C. Section 1365. In *Saint John's Organic Farm*, the Ninth Circuit applied the reasoning in a prior case (*Richard S. v. Dep't of Dev. Servs. of Cal.*, 317 F.3d 1080, 1086 (9th Cir. 2003)), to enunciate a three-part test to determine when a settlement agreement confers prevailing party status on a party: (1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the applicant's] claim." *Saint John's Organic Farm,* at 1059.

As to the first prong, the Consent Decree is judicially enforceable, and Defendants concede the point. Dkt. 68 ("Decree") at § III.13; Opp. at 4:19, 5:2-3. As to the second prong, the three-year Decree requires Defendants to comply with the law by adopting modern waste management and agronomic practices. Decree, §§ I.2 (l), (m), (n) and (o); Decree, § I.4; Decree, § I.5. To inform this process, and to protect the aquifer and the downstream watershed, they will install flow meters and soil moisture sensors; undertake heightened soil, storm water, and groundwater monitoring; and pay $250,000 to the Rose Foundation for Communities and the Environment "for projects to improve water quality in the impacted watersheds." Decree, § II.10. The Decree also allows CAT to provide input on

---

[1] In *Hewitt*, Justice Scalia found that a fee award was not "appropriate" where the applicant received no damages, no injunction or declaratory judgment, and no "consent decree or settlement." *Hewitt*, at 760. *Hewitt* is therefore inapposite, in light of the entry of the robust, enforceable consent decree here, addressing the water quality problems raised in CAT's 60-Day Notice and Complaint.

the draft Waste Management and Nutrient Management Plans currently being developed and to undertake compliance inspections for three years.  Decree, § I.2 (d), (e); Decree § I.7.  These terms meaningfully alter the Parties' legal relationship, notwithstanding Defendants' view of the applicable law.  *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) ("[A] settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party to do something it otherwise would not be required to do.")

As to the third prong, the Decree confers many forms of "actual relief on the merits" of CAT's claims.  For example, in Paragraph c. of the Prayer for Relief, CAT sought to "[e]njoin Defendants from discharging pollutants from the Facility and to the surface waters surrounding and downstream from the Facility in violation of the Act and the General Permit." Dkt. 42, at 30: 4-6.  Under the Decree, Defendants are now prohibited[2] from spraying wastewater (duck manure) onto hundreds of acres of their fields during the wet months of January, February and March (Decree, at § I.2 (e)) and required to "comply with all the requirements of the General Permit and the Clean Water Act" (Decree, at § I.1), to "implement all mandatory minimum BMPs set forth in Section X.H of the General Permit" (Decree, § I.2 (a)), and to "develop a Facility site map that complies with all of the requirements of Section X.E.1-3 of the General Permit." (Decree, § I.2 (b)).

Similarly Paragraph d. of the Prayer for Relief seeks to "[e]njoin Defendants from further violating the substantive and procedural requirements of the General Permit."  Dkt. 42, at 30: 9.  Under the Decree, Defendants will now have to develop, for the first time, and with the assistance and oversite of Plaintiff's counsel and experts, "a site-specific Waste Management Plan ("WMP")….that shall comply with the technical standards specified in Attachment C of the *General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region*, including but not limited to California Code of Regulations, Title 27, Sections 22562(a)."  Decree, § I.2 (d).

---

[2] See Supplemental Declaration of Andrew L. Packard in support of this motion (filed herewith), at ¶ 9.

The Decree further requires Defendants to develop, for the first time, and with the assistance and oversite of Plaintiff's counsel and experts, a "Nutrient Management Plan ("NMP")" that "shall comply with the minimum requirements in Attachment D of the *General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region.*" Decree, § I.2 (e). Defendants will also now have to develop, for the first time, and with the assistance and oversite of Plaintiff's counsel and experts, a Monitoring and Reporting Plan ("MRP") that "shall comply with the minimum requirements in Attachment A of the *General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region*"(Decree, § I.2 (f), and will monitor groundwater for Nitrate and Total Coliform Bacteria "consistent with the minimum requirements in Attachment A of the *General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region*." Decree, § I.2 (m).

In Paragraph f. of the Prayer for Relief, CAT asked the Court to "[o]rder Defendants to pay civil penalties…." Dkt. 42, at 30:10-12. Under the Decree, as noted above, Defendants are required to pay $250,000 to the Rose Foundation for Communities and the Environment "as mitigation to address any potential harms from the Clean Water Act violations alleged in the Action." Decree, § II.10. In Paragraph g. of the Prayer for Relief, CAT sought an order requiring Defendants to take appropriate actions to restore the quality of navigable waters impaired by their activities. Dkt. 42, at 30:13-14. Under the Decree, Defendants will now apply the principles of modern hydrology and agronomy to avoid unpermitted discharges, and monitor their permitted discharges to continuously improve management practices. Decree, § I.2 (m), (n), (o); Decree, §§ I.4-6.[3]

---

[3] With respect to the *declaratory relief* sought in the Prayer for Relief at Paragraphs a. and b., no formal judicial determination is required, under the both the legislative history and well-settled law. *Maher v. Gagne*, 448 U.S. 122, 129 (1980) ("The fact that respondent prevailed through a settlement, rather than through litigation, does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that, "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 91011, p. 5 (1976).)

The Decree more than meets the three-part test to determine when a settlement agreement confers prevailing party status on a party under *Saint John's Organic Farm.*

## II. The Hours and Rates Sought, As Well As the Costs Incurred, Are Well-Supported by the Evidence and the Case Law

Plaintiff will not respond here to Defendants' efforts to re-litigate the merits of the case with *ad hominem* attacks concerning purportedly "bad faith" discovery and settlement tactics.[4] The results speak for themselves. Although Defendants' opposition fails to respond to the legal issues at bar, or even to raise plausible arguments as to the hours expended or the rates sought, three points merit response.

First, Defendants confuse the discounted rates offered in an early settlement communication two years ago with a party "admission" (or some kind of "agreement" to seek only those proposed rates at all times in the case). Opp. at 15:20–16:8. CAT is, of course, free to discount its rates to encourage an early settlement -- and also to seek full rates when those enticements are unavailing.

Second, of the $19,689.17 in litigation costs sought in this motion, Defendants have argued that an award of the $18,569 expended on experts and lab analysis should be denied for failure to attach the physical invoices to the sworn declaration of CAT's counsel filed with the moving papers. Opp. at 16:20–17:5. Each of these invoices are now submitted as **Exhibit 15** to the Supplemental Declaration of Andrew L. Packard in support of this motion, filed herewith.

In closing, CAT wishes to acknowledge that the recent avian flu infestation across the

---

[4] Here, Defendants employed a "never settle" mindset from the outset of the case, refusing for the first five months to meet at the Facility, then failing to respond to settlement drafts until ordered to do so by Magistrate Hixson, all the while running up their fees litigating discovery disputes, which Defendants lost. Packard Dec. at ¶ 13, Exhibit 3 (22-page "technical response" letter denying each and every allegation in the 60-day notice letter). Defendants cannot complain now that those tactics were costly to them twice. *Department of Fair Employment & Hous. v Law Sch. Admission Council* (ND Cal, Nov. 5, 2018, No. 12-cv-01830-JCS) 2018 US Dist Lexis 1 89191, * 19 ("deference to the hours a party actually devoted to litigation is particularly appropriate where its adversary adopted a full court-press strategy of vigorously litigating all possible issues in a case"). Nor can Defendants complain about belatedly realizing that, for CAT, "total CAFO compliance was the settlement lynchpin." Dkt. 92-3, Kindermann Dec. at ¶ 9.

poultry industry, together with a cancer diagnosis in the family, are indeed tragic and challenging circumstances for the Reichardt family at this time.  However, Defendants' decades-long failure to follow the law in managing their industrial CAFO operation and the resulting damage to this critical Bay Area watershed should not be exonerated simply because they directed their counsel to fight a meritorious lawsuit.  "The purpose of an award of costs and fees is . . . to encourage the achievement of statutory goals." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 760 (1883).

Dated: February 1, 2024     LAW OFFICES OF ANDREW L. PACKARD

By:   /s/ Andrew L. Packard
Andrew L. Packard
Attorneys for Plaintiff
CALIFORNIANS FOR ALTERNATIVES TO TOXICS