UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS,<br><br>Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC, et al.,<br><br>Defendants. | Case No. 22-cv-09065-AGT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AS MODIFIED, AND GRANTING IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>Re: Dkt. No. 72, 91 |

Following entry of a Consent Decree (dkt. 68), plaintiff Californians for Alternatives to Toxics ("CAT") filed a motion for attorneys' fees and costs. Dkt. 72. For the following reasons, the Court grants CAT's motion, as modified. The Court also grants CAT's request for judicial notice (dkt. 91) in part.

**I.   BACKGROUND**

Reichardt Duck Farm, Inc. is located near Petaluma, California, in Sonoma County. The duck farm site allegedly discharged waste "into an unnamed creek," that ultimately drains into the Pacific Ocean through Laguna Lake, Chileno Creek, Walter Creek, and Tomales Bay. Dkt. 42 ¶ 8. Defendant John Reichardt is the CEO and General Manager of Reichardt Duck Farms, Inc. *Id.* ¶¶ 19–20. CAT is a nonprofit California public benefit corporation based in Arcata, California. *Id.* ¶ 15. CAT's members "live, work, travel, and recreate on or near the Impacted Waters." *Id.* ¶ 16. On December 21, 2022, CAT filed suit against Reichardt Duck Farms, Inc. and John Reichardt alleging violations of the Clean Water Act (CWA). 33 U.S.C. §§ 1251–1387. On May 17, 2023, CAT filed a first amended complaint.

On November 22, 2023, this Court granted CAT's request to enter the Consent Decree. Dkts. 66, 67 & 68. CAT then filed this motion for attorneys' fees and costs, seeking attorneys'

fees for work performed by lead counsel Andrew L. Packard, senior associate William Carlon, and co-counsel William Verick from the Klamath Environmental Law Center. Dkts 72, 73 ¶¶ 48–53.

## II. LEGAL STANDARD

Under the Clean Water Act, courts "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). The Ninth Circuit has stated a "district court may deny attorney's fees to a prevailing plaintiff under § 1365(d) only where there are 'special circumstances.'" *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1063 (9th Cir. 2009). "[F]ee awards 'should be the rule rather than the exception.'" *Id.* at 1062 (quoting *Ackerley Commc'ns, Inc. v. City of Salem*, 752 F.2d 1394, 1396 (9th Cir.1985)).

## III. DISCUSSION

The determination of whether to award attorneys' fees requires two inquiries: whether the party requesting fees is the prevailing or substantially prevailing party, and whether such award is appropriate. Defendants challenge both.

### A. CAT's Request for Judicial Notice

CAT requests the Court take judicial notice of a declaration submitted by Richard M. Pearl in support of the motion for attorneys' fees and costs. Dkt. 91. Under Rule 201, a court may take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This includes "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Defendants oppose the request on the ground that, while the Court may take judicial notice of a court filed pleading, the Court may not take judicial notice of the truth of the statements

2

therein. Dkt. 92-1 at 3. "As a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *see Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006), *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010) ("a court may not take judicial notice of findings of facts from another case"). Depositions and deposition excerpts may be subject to reasonable dispute. *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007). Accordingly, the Court takes judicial notice of the existence of the Pearl declaration but not the truth of the facts contained therein that are subject to reasonable dispute. *See California Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

### B.     CAT is the Prevailing or Substantially Prevailing Party

The Ninth Circuit applies a three-part test to determine whether a party is a prevailing party: "(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [movant's] claim." *Saint John's*, 574 F.3d at 1059. "It long has been the law that obtaining relief through a consent decree does not alter prevailing party status." *Gates v. Deukmejian*, 987 F.2d 1392, 1403 (9th Cir. 1992) (citing *Maher v. Gagne*, 448 U.S. 122 (1980)). "The threshold for sufficient relief to confer prevailing party status is not high." *Saint John's*, 574 F.3d at 1059. Where a consent decree "obligates defendant to commit funds to several projects which directly benefit the public . . . plaintiffs are 'prevailing' for purposes of attorneys['] fees analysis." *Earth Island Inst., Inc. v. S. California Edison Co.*, 838 F. Supp. 458, 465 (S.D. Cal. 1993).

First, it is undisputed that "the Consent Decree is judicially enforceable, and Defendants concede the point." Dkt. 93 at 3. The first prong of the test is satisfied.

3

Second, Defendants accept there has been "material alteration of the legal relationship between the parties." *Saint John's*, 574 F.3d at 1059. Additionally, in the Ninth Circuit, "[a] settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)). The Consent Decree requires, for example, that Defendants implement and incorporation certain best management practices (BMPs) into the facility's storm water pollution prevention plan (SWPP); "pay the sum of $250,000 to the Rose Foundation for Communities and the Environment"; and "pay the sum of $70,000 to a compliance monitoring fund." Dkt. 68 §§ I.2, I.7, II.10, II.11. The second requirement is therefore met.

As for the third requirement, Defendants dispute that CAT has received actual relief on the merits of its claims. Defendants contend that the "Consent Decree does not provide the relief that CAT requested in its Complaint." Dkt. 92 at 5. CAT's arguments focus on the relief under the Consent Decree. Dkt. 93 at 4–5. The Ninth Circuit has recognized that "the relief achieved need not be of precisely the same character as the relief sought in the complaint." *Saint John's*, 574 F.3d at 1059. Even nominal damages may confer prevailing party status. *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 112–13). CAT's amended complaint at dkt. 42 requests relief including to "[e]njoin Defendants from discharging pollutants from the Facility and to the surface waters surrounding and downstream from the Facility in violation of the Act and the General Permit; [e]njoin Defendants from further violating the substantive and procedural requirements of the General Permit; [e]njoin Defendants from discharging pollutants without a NPDES permit; [o]rder Defendants to pay civil penalties of $64,618 per day per violation for all violations occurring after November 2, 2015, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d) and 1365(a) and 40 C.F.R. §§ 19.1–19.4 (2008); [o]rder Defendants to take appropriate actions to

restore the quality of navigable waters impaired by their activities." Dkt. 42 at 30, VII(c)–(g). As CAT describes in its reply, the Consent Decree (dkt. 68) requires that Defendants, for example, "comply with all the requirements of the General Permit and the Clean Water Act" (§ I.1); "implement all mandatory minimum BMPs set forth in Section X.H of the General Permit" (§ I.2(a)); "develop a Facility site map that complies with all of the requirements of Section X.E.1-3 of the General Permit" (§ I.2(b)); "provide to Plaintiff a draft a site-specific Waste Management Plan" (§ I.2(d)); "provide to Plaintiff a draft Nutrient Management Plan ("NMP") for review and comment" and "shall not apply wastewater to land during the months of January, February or March" (§ I.2(e)); "provide to Plaintiff a draft Monitoring and Reporting Plan" and "sample storm water discharges from land application" along with groundwater well monitoring (§ I.2(f)); and "incorporate into the MRP the requirement that Defendants monitor groundwater for Nitrate and Total Coliform Bacteria" (§ I.2(f)).  These forms of relief in the negotiated Consent Decree are sufficient to achieve the aims of the complaint to enjoin Defendants from discharging pollutants and ordering a restoration of water quality.  The relief under the Consent Decree need not be identical to the relief requested in the complaint. *See Saint John's*, 574 F.3d at, 1060; *Fischer*, 214 F.3d at 1119 ("the magnitude of the relief has no effect on [] eligibility for a fee award").

Accordingly, the Court finds that CAT is the prevailing party.

    **C.**    **Reasonable Award**

After finding that CAT is the prevailing party, and in the absence of any special circumstances, the Court then must calculate the reasonable attorneys' fee award.  *Fischer*, 214 F.3d at 1119; *Resurrection Bay Conservation All. v. City of Seward, Alaska*, 640 F.3d 1087, 1094 (9th Cir. 2011).  The lodestar method is used to determine the fee award by multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252

(9th Cir. 1995). The lodestar calculation may then be adjusted using the *Kerr* factors. *See Resurrection Bay*, 640 F.3d at 1095 n.5; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Here, CAT is requesting $411,657.50 in attorneys' fees, for which CAT has described the hours worked for each of three attorneys in terms of five categories based on the type of activity.[1] Dkt. 72 at 8; Dkt. 85, Ex. 12. CAT is also seeking $19,689.17 in costs. Dkt. 72 at 17. The motion seeks a rate of $975 for Packard, $700 for Carlon, and $975 for Verick. Dkt. 73 at ¶¶ 49, 52, 55.

### 1. No Special Circumstances Apply

Defendants generally attack the claims and motives behind the suit, but do not explicitly argue that any special circumstances apply. Dkt. 92. Defendants argue that "this Court should not award fees or costs that are anywhere close to the amount that CAT seeks in this motion." Dkt. 92 at 5. The Court construes these arguments as directed to reasonableness, because they bear on the reasonable amount, not whether a fee award is appropriate at all. "[F]ee awards 'should be the rule rather than the exception.'" *Saint John's*, 574 F.3d at 1062 (quoting *Ackerley*, 752 F.2d at 1396). Accordingly, the Court finds that no special circumstances apply that would render a fee award inappropriate. *See Resurrection Bay*, 640 F.3d at 1091.[2]

---

[1] The $411,657.50 value does not follow from Exhibit 12 to the Packard Declaration. The totals for the three attorneys, when summed, result in $422,187.50 ($294,547.50 + $117,110 + $10,530). Dkt. 85 at 11. It appears that Verick's fees were inadvertently not included in the $411,657.50 amount.

[2] The Ninth Circuit has identified examples of what does not constitute special circumstances: a plaintiff not being "granted the full relief it sought" but rather a nominal award; a "lack of evidence of actual pollution"; a city being "required to obtain a permit for only one of two locations." *Resurrection Bay*, 640 F.3d at 1093. Special circumstances may include, for example, instances where a plaintiff's failure to brief issues requires the Court to perform independent research. *Id.* at 1092. Based on these examples, no special circumstances apply here. Defendants suggest none either.

### 2. Reasonable Hourly Rates

The lodestar method requires that the Court determine a "reasonable hourly rate," which is not necessarily an actual rate that is charged. *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)) (recognizing that the reasonable rate "is not made by reference to rates actually charged the prevailing party"). The reasonable rate is determined based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (quoting *Chalmers*, 796 F.2d at 1210). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Defendants argue that the values stated in the November 17, 2022, letter are less than those requested in the motion and CAT is not entitled to the higher rate. Dkt. 92 at 15–16 (citing dkt. 75, Ex. 2 at 2 n.1). Defendants have no authority that the hourly rate must be consistent with an actual or expected rate, or a rate that was stated by opposing counsel in correspondence that was drafted to resolve the litigation. The lodestar calculation involves only a reasonable hourly rate. *Schwarz*, 73 F.3d at 908.

Although the Court does not take judicial notice of the truth of disputed facts, the Court recognizes that the hourly rates contained in the Pearl declaration are generally in line with requested rates. Defendants do not dispute the substance of the declarations submitted by Daniel Cooper or Christopher Sproul, or offer competing declarations from others regarding a reasonable rate. Instead, Defendants argue that plaintiff's counsel admit the rates in the November 17, 2022, letter are reasonable. Dkt. 92 at 16. The Cooper and Sproul declarations both rely on rates charged

a collection of cases, but none of the listed cases appear to be related to the CWA. Dkt. 88, Cooper Decl.; dkt. 89, Sproul Decl.

Courts also rely on the Laffey Matrix to determine the reasonable attorney rates in complex civil litigation.[3] The date range for services included in Exhibit 12 is February 2, 2022, to January 11, 2024 (the date the motion was filed). The corresponding values from the Laffey Matrix range from $919 to $1057 for an attorney with more than 20 years of experience, $676 to $777 for an attorney with eight years of experience, and $468 to $538 for an attorney 4–7 years out of law school. These values can be adjusted from the District of Columbia to the "San Jose-San Francisco-Oakland" area, the nearest entry in the matrix, using locality pay differentials for federal courts, resulting in an upward correction of about 9%.[4] *See In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 921–22 (N.D. Cal. 2005) (discussing adjustment of amounts from the Laffey Matrix). The requested rates are below the corrected Laffey Matrix values for the applicable time period and for the "San Jose-San Francisco-Oakland" area.

While the evidence in support of CAT's requested rates and the Laffey Matrix generally support the requested rates, the Court is ultimately not persuaded that these rates requested are reasonable for this case for the following reasons.

Here, the relevant community is the Northern District of California — the forum in which

---

[3] Laffey Matrix, available at http://www.laffeymatrix.com/see.html; *see Vasquez v. Libre by Nexus, Inc.*, 2023 WL 360242, at *13 (N.D. Cal. Jan. 23, 2023), *aff'd sub nom. Vasquez v. Donovan*, 2024 WL 2874152 (9th Cir. June 7, 2024); *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010); *S. F. Baykeeper v. W. Bay Sanitary Dist.*, 2011 WL 6012936, at *8 (N.D. Cal. Dec. 1, 2011).

[4] For 2024, the locality pay percentage is 33.26% for D.C. and 45.41% for S.F., resulting in (145.41-133.26)/133.26 = 9.11%. For comparison, the corresponding values for 2023 are 32.49% and 44.14%, resulting in (144.15-132.49)/132.49 = 8.80%. Similarly, for 2022, the corresponding values are 31.53% and 42.74%, resulting in (142.74-131.53)/131.53 = 8.52%. *See* JNET Pay Table Fact Sheets, available at https://jnet.ao.dcn/human-resources/human-resources-management/compensation/pay-tables-united-states-courts/. The Court takes judicial notice of these pay tables available publicly on the JNET website.

the litigation was filed. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). CAT submitted declarations from comparable attorneys who are based in San Francisco. Determining the appropriate reasonable rate should include examination of the hourly rates for attorneys in Sonoma County because the facility at issue, the harm, and CAT's counsel are located in Sonoma County. While there are no supporting declarations from Sonoma County based attorneys, the Court can consider the hourly rates of the current plaintiff's counsel. Those rates are indicated in the November 17, 2022, letter. Packard Decl., Ex. 2 at 1 n.1.

It is puzzling why neither party cited cases relevant and on point to the reasonable rate applicable in this case. This case is factually similar with respect to fees to *California Sportfishing Protection Alliance v. Denbeste Yard & Garden, Inc.*, in which the relevant community was also Sonoma County. 2023 WL 10367397, at *1 (N.D. Cal. Dec. 8, 2023). In *Denbeste*, that court adopted an hourly rate of $660 for Packard and $320 for Carlon for a case involving the CWA, referencing another Northern District case involving CAT as a plaintiff and involving counsel both in Humboldt County and Sonoma County. *Id.* (citing *Californians for Alternatives to Toxics v. Kernen Constr.*, 2023 WL 4991861, at *1 (N.D. Cal. Apr. 21, 2023), *report and recommendation adopted sub nom. Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2023 WL 4995716 (N.D. Cal. June 13, 2023)). In *Kernen*, the district court adopted rates of $700 for Verick, $660 for Packard, and $320 for Carlon. *Californians for Alternatives to Toxics v. Kernen Constr.*, 2023 WL 4991861, at *4 (N.D. Cal. Apr. 21, 2023), *report and recommendation adopted sub nom. Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2023 WL 4995716 (N.D. Cal. June 13, 2023). This Court sees no good reason to deviate from these other cases, especially in the absence of any evidence that the hourly rate of San Francisco should apply for the entire district. The Court finds these analogous cases are sufficiently comparable in time, are similarly directed to environmental litigation, and involve the same counsel. Accordingly, the Court finds the

reasonable hourly rate to be as follows: $725 for Packard, $425 for Carlon, and $700 for Verick.

### 3. Reasonable Number of Hours

The motion seeks reimbursement for 302.1 hours of work by Packard, 167.3 hours of work by Carlon, and 10.8 hours of work by Verick. *See* Dkt. 72 at 49; Dkt. 85 at 11. Defendants challenge several aspects of the number of hours worked. Dkt. 92.

<u>Hours Incurred on Instant Motion and Reply</u>

Defendants dispute the 59.2 hours of attorney time to bring this fees motion. Dkt. 92 at 16. Attorney time spent preparing a fees motion may be reimbursed, Defendants do not cite authority otherwise, and the Court does not find the 59.2 hours unreasonable. *See*, *e.g.*, *Miller v. Vicorp Restaurants, Inc.*, 2006 WL 212021, at *4 (N.D. Cal. Jan. 11, 2006), order clarified, 2006 WL 463544 (N.D. Cal. Feb. 24, 2006), amended, 2006 WL 8443027 (N.D. Cal. Apr. 14, 2006) (approved as reasonable 90.8 hours for attorney work on a fee motion). Additionally, CAT seeks reimbursement for 9.63 hours for Packard and 1.98 hours for Verick in connection with preparing the reply at dkt. 93. The Court finds 59.2 hours for the motion and 11.61 hours for the reply reasonable.

<u>Discovery</u>

Defendants contend that a settlement impasse "led CAT to engage in a flood of discovery." Dkt. 92 at 10. Discovery is a necessary part of litigation, and no stay of discovery was issued in this case. None of the discovery disputes brought to the Court's attention for resolution were unreasonable or frivolous. The Court, therefore, will not discount any hours spent on discovery.

<u>Press Release</u>

Defendants challenge a total of 0.7 hours, incurred on October 25, 2023, and November 28, 2023, directed to press releases. Dkt. 92 at 14. CAT did not address these hours in the reply. This is an enforcement action that resulted in a Consent Decree. Publicity and press releases

related to the litigation are a reasonable component of any enforcement action. The time spent here is not unreasonable and therefore will not be deducted.

### Field Investigations

Defendants dispute the 23 entries for "field investigations" performed by CAT's counsel, totaling 15.5 hours. Dkt. 92 at 14–15. Counsel explained in his declaration that these investigations "allowed me to photographically document the status of the Facility during the critical wet weather months of February, March and April (from the public right-of-way and without trespassing) and to ground truth the representations of Defendants' counsel and experts." Dkt. 94, ¶ 10. This is a reasonable explanation, but the Court does not see the justification for 23 field inspections over a three-month period. The Court will award fees as reasonable for field work (at 0.5 hours) one time per week during the rainy season. As there were 12 full weeks during February–April 2023, the Court finds 6 hours total reasonable, and discounts the other 9.5 hours.

### Drone Activities

CAT does not respond to Defendants' specific challenge to charges related to "droning activities." Dkt. 92 at 15. It is unclear why the field inspections, above, were insufficient, or why the drone inspections were warranted. The Court is unable to determine whether these fees were reasonable. Accordingly, the Court will not award fees for these activities and deducts 5.2 hours.

### Site Inspection

Defendants dispute the need for two experienced attorneys at the February 22, 2023, site inspection. *Id*. Accordingly, the Court will award fees for only one experienced attorney at the site inspection. Presumably, because either attorney could have capably covered the inspection, the Court deducts half of the total time spent — 1.7 hours for Packard and 1.25 hours for Carlon.

### Investigating Facility

CAT does not justify the hours spent and billed to investigate facility. The Court is unable

11

to evaluate the justification for having multiple experienced counsel. Defendants challenge a total of 11.9 hours of work documented by Carlon for investigating the facility. Dkt. 92 at 15. It is not unreasonable that some investigation may be required, but because CAT provided no justification other than the time entry by Carlon, the Court cannot find the time billed reasonable.

### 4. Final Fees Calculation and Adjustments

The following table summarizes the Court's determination of reasonable fees and hours.

|  | Andrew Packard | William Carlon | William Verick |
| --- | --- | --- | --- |
| Requested Hours (Motion) | 302.1 | 167.3 | 10.8 |
| Requested Hours (Reply) | 9.63 |  | 1.98 |
| Deduction – Field Investigations | 9.5 |  |  |
| Deduction – Droning Activities | 5.2 |  |  |
| Deduction – Investigating Facility |  | 11.9 |  |
| Deduction – Site inspection | 1.7 | 1.25 |  |
| Total Reasonable Hours | 295.33 | 154.15 | 12.78 |
| Reasonable Rate | $725 | $425 | $700 |
| **Total Lodestar** | **$214,114.25** | **$65,513.75** | **$8,946.00** |

The total lodestar value for all attorneys is thus **$288,574.00**.

### 5. Litigation Costs

CAT is seeking $19,689.17 in litigation costs. Dkt. 72 at 17 (citing Packard Decl., Ex. 13). Defendants challenge $18,569 of these costs characterized as "expert" costs or "Lab Analysis," because the description only states "Inv." Dkt. 92 at 16. In response, CAT submitted invoices to address Defendants' argument. Dkt. 93 at 6; dkt. 94-1 (Ex. 15). Although the invoices were not submitted with the motion, the Court provided Defendants with an opportunity to challenge the submissions. Dkt. 97; *see* dkt. 98. In their subsequent filing, Defendants challenge (i) costs incurred by Ian Wren listed on three invoices contain block-billing; (ii) duplicative services of Ian Wren and Water & Environmental Technologies ("WET"); and (iii) WET's October 15, 2023,

invoice that Defendants contend shows "Plaintiff is wrongly seeking both fees and costs for Plaintiff's bad faith settlement tactics." Dkt. 98 at 2–3.

First, because the invoices by Ian Wren include block-billing, the Court does not have enough information to evaluate reasonableness. A "blanket discount" may be applied to such block-billing. *See Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (finding a 30% reduction not an abuse of discretion); *Murphy v. Celestron Acquisition, LLC*, 2024 WL 1221963, at *4 (N.D. Cal. Mar. 20, 2024) (applying a downward adjustment of 25%). The Court finds a 25% blanket reduction reasonable and accordingly reduces the invoiced amounts of Wren's April, June, and September 2023 invoices for hourly services by 25%. The invoices state a total value of $12,044, of which the Court discounts $2,526 = 0.25*($5,400+$2,096+$2,608), and awards $9,518.

Second, although Defendants contend Wren's September 2023 invoice includes work that is duplicative of services provided by WET, Defendants do not identify which entries of WET's invoice are duplicative. Accordingly, the Court declines to find the entries duplicative.

Third, the Court does not find any evidence of bad faith negotiations here. Litigation is appropriate up until the parties are able to negotiate a compromise.

Lastly, Defendants challenge another $158.72 arising from four entries of $39.68 each, described as "RT travel" because the description is not sufficient.[5] CAT does not explain this cost; therefore, the Court must deduct $158.72.

The Court thus awards CAT litigation costs in the amount **$17,004.45**.

---

[5] Although Defendants refer to an entry for 3/10/2023, it appears they meant 3/30/2023, as there is no travel entry for 3/10/2023. *See* dkt. 86, Ex. 13.

## IV. CONCLUSION

The Court finds CAT is the prevailing party, grants CAT's motion in part as to attorneys' fees in the amount of **$288,574.00**, and grants CAT's motion in part as to litigation costs in the amount of **$17,004.45**. The Court also grants in part CAT's request for judicial notice.

**IT IS SO ORDERED.**

Dated: August 20, 2024

_____
Alex G. Tse
United States Magistrate Judge