ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REICHARDT DUCK FARM, INC., et al,<br><br>Defendants. | Case No. 3:22-cv-09065-AGT<br><br>**MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 20, 2024 ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS, AS MODIFIED, AND GRANTING IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE (Dkt. 99)** |

**<u>Introduction</u>**

On September 26, 2024, this Court granted Plaintiff's motion for leave to file a motion for reconsideration of the August 20, 2024 ruling on Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 99, hereafter "Fee Order").  Dkt. No. 100.  For the reasons set forth below, Plaintiff hereby moves for reconsideration of the Fee Order.


**Legal Standard**

While a motion for reconsideration is generally considered to be an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources", reconsideration is proper if "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enterprises, Inc. v. Estate of Bishop* (9th Cir. 2000) 229 F.3d 877, 890; *see also Villanueva v. U.S.* (1st Cir. 2011) 662 F.3d 124, 128 ("Reconsideration may be proper where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made an error of apprehension.")  A motion for reconsideration that timely brings a clear error of law to the court's attention makes efficient use of judicial resources. *Santamarina v. Sears, Roebuck & Co.* (7th Cir. 2006) 466 F.3d 570, 572.

As set forth below, Plaintiff believes three clear errors of law permeate this court's August 20, 2024 ruling on Plaintiff's Motion for Attorney's Fees and Costs (Dkt. No. 99, hereafter "Fee Order"), and hereby respectfully brings those errors to the court's attention.

**Argument**

**I.  The Court Erred in Determining the "Relevant Community" was Sonoma County Rather Than San Francisco, Where "the District Court Sits"**

The Court determined that Sonoma County rates were appropriate in this case "because the facility at issue, the harm, and CAT's counsel are located in Sonoma County." Dkt. 99, at 8-9.  However, it is well-settled law in the Ninth Circuit that "the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  As explained more fully below, several Ninth Circuit decisions have interpreted this to mean the location of the court, not the geographic location of where the cause of action arose, or the location of the parties or their counsel.  Since this court "sits" in San Francisco, not Sonoma County, San Francisco rates should have been awarded.

The facts in *Barjon* are very similar to the facts in this case.  In *Barjon*, the district court was located in Sacramento, but the cause of action arose from events that occurred in

Vallejo, which Plaintiffs noted the federal government "considers part of the San Francisco, not Sacramento area, for pay purposes". *Barjon,* 132 F.3d at 500-501. Plaintiffs' attorneys were also located in San Francisco. *Ibid.* Plaintiffs argued that although the case was filed and litigated in the Eastern District court located in Sacramento, that San Francisco rates should apply because that is where the cause of action arose and where the parties and plaintiffs' attorneys were located. *Ibid.* The Court of Appeals disagreed, noting that there was "no legal precedent to support these assertions" and found that Sacramento rates were appropriate because that "is the forum in which the district court sits". *Ibid.* Similarly, here, while the cause of action arose in Sonoma County and Plaintiff's lead counsel resides in that county, the court *sits* in San Francisco, and thus San Francisco rates are appropriate.

Other Ninth Circuit precedent has similarly held that the "relevant community" is the location where the litigation takes place. *Shirrod v. Director, Office of Workers' Compensation Programs* 809 F.3d 1082, 1087 (9th Cir. 2015) (finding that the "relevant community" is "the location where the litigation took place" and applying Portland rates because that was the location where the hearings took place.) In *Shirrod*, the court was required to determine the "relevant community" in a case that did *not* litigate in a district court, and analyzed the issue this way:

> In civil litigation, we typically recognize the forum where the district court sits as the "relevant community" for purposes of fee-shifting statutes. By analogy, a determination of the "relevant community" in Longshore Act cases should focus on the location where the litigation took place. But, because district courts are not involved in cases under the Longshore Act, we must look to other indicia to determine where the litigation took place and, thus, which is the "relevant community."

*Shirrod,* 809 F.3d at 1087 [Citations Omitted.] The court concluded that because the hearings took place in Portland and the attorneys had offices there, Portland rates were appropriate. *Ibid.* Other Ninth Circuit cases similarly have held that the "relevant community" is the location where the court sits and the litigation takes place. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (San Francisco rates

applied because the underlying action was brought in the Northern District of California); *Gates v. Deukmejian* (9th Cir. 1992) 987 F.2d 1392, 1405 ("the general rule is that the rates of attorneys practicing in the forum district, here the Eastern District of California—Sacramento, are used"); *Mancini v. Dan P. Plute, Inc.* (9th Cir. 2009) 358 Fed.Appx. 886, 888 ("In this circuit, the 'relevant legal community' is the litigation forum.").

In fact, there is precedent spanning the course of many decades from other circuits applying this same rule: the "relevant community" is the location where the court sits and the litigation takes place. *Rum Creek Coal Sales, Inc v. Caperton (*4th Cir. 1994) 31 F.3d 169, 179 ("the community in which the court sits is the first place to look to in evaluating the prevailing market rate"); *Donnell v. U.S.* (D.C. Cir. 1982) 682 F.2d 240,251 ("The issue here is whether the relevant community is the District of Columbia, where the suit was brought, or Mississippi, which was the source of the controversy at issue and the place where most of the work was performed . . . We recognize the logic on both sides of the argument, but hold that the proper rule is that the relevant community is the one in which the district court sits. This is a simple rule to follow. It requires the district court normally to determine only the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise."); *Ramos v. Lamm* (10th Cir. 1983) 713 F.2d 546, 555 disapproved on other grounds by *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1987) 483 U.S. 711 ("The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time.")

The Northern District has, with the two exceptions discussed in Section IV below, consistently followed this precedent. *Ctr. for Biological Diversity v. EPA*, No. C 17-00720 WHA, 2017 U.S. Dist. LEXIS 213709 *5 (N.D. Cal. Dec. 4, 2017) ("while the litigation regards issues in the San Joaquin Valley and two of the attorneys are affiliated with law offices outside of the Bay Area, the relevant community for the purposes of analyzing the attorney rates is the San Francisco Bay Area because the litigation is before the United States

District Court for the Northern District of California."); *Marbled Murrelet v. Pacific Lumber Co.* (N.D. Cal. 1995) 163 F.R.D. 308, 317 (rejecting argument that "relevant community" was Humboldt County, where Plaintiff's attorneys resided and practiced (and where cause of action arose), stating: "the Ninth Circuit has repeatedly held that the relevant legal community is considered to be that of the forum district—here the Northern District of California . . . Therefore, the hourly rates that plaintiffs' counsel actually charge in their home communities is not relevant to the court's determination of what constitutes a reasonable hourly rate for attorneys of similar skill and ability in the San Francisco legal community."); *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154 (N.D. Cal. 2012).

Given the above, the Court's application of a "Sonoma County" rate rather than a San Francisco rate for the fee award does not comport with Ninth Circuit decisions regarding the "relevant community" for rate determinations, and merits reconsideration.

**II.    The Court Erred in Determining a Rate Based on Plaintiff's Confidential Offer of Compromise**

The Court erred in determining a Sonoma County rate based exclusively on Plaintiff's November 17, 2022 confidential offer of compromise stating the rates charged by Plaintiff's counsel in 2022. Dkt. 75, Ex. 2 at 2 n.1. As the Court itself notes in the Fee Order, at Dkt. 99 at 7, the determination of a "reasonable hourly rate" under the lodestar method need not align with "an actual rate that is charged" (much less one from two years ago) or with "a rate that was stated by opposing counsel in correspondence that was drafted to resolve the litigation." See *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)) (recognizing that the reasonable rate "is not made by reference to rates actually charged the prevailing party").

This departure from the settled law of Ninth Circuit also warrants reconsideration.

**III.   The Court Erred In Narrowly Construing The "Similar Services" Standard to Require Comparison *Only* to Fee Rates Charged or Awarded Within the Same Practice Area, Here Environmental Law**

In the Fee Order, the Court recognized that "the hourly rates contained in the Pearl declaration are generally in line with requested rates" and that "[t]he requested rates are below the corrected Laffey Matrix values for the applicable time period and for the "San Jose-San Francisco-Oakland" area. Dkt. 99, at 7-8. Notwithstanding its express finding that "the evidence in support of CAT's requested rates and the Laffey Matrix generally support the requested rates," the Court instead decided to apply the rates awarded in two other cases in which counsel in this case were involved: *Californians for Alternatives to Toxics v. Kernen Constr.*, 2023 WL 4991861, at *1 (N.D. Cal. Apr. 21, 2023), *report and recommendation adopted sub nom. Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2023 WL 4995716 (N.D. Cal. June 13, 2023)) and *California Sportfishing Protection Alliance v. Denbeste Yard & Garden, Inc.*, 2023 WL 10367397, at *1 (N.D. Cal. Dec. 8, 2023). *Id.* at 8. This section addresses the Court's error in failing to consider material evidence – fee awards in practice areas *beyond* the CWA or environmental law – in rendering its decision.[1]

Although the Court recognized that the fee motion was supported by "declarations from comparable attorneys who are based in San Francisco" it relied on only CWA cases or "environmental cases" when the legal standard is much broader: "similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)). Dkt. 99 at 8 (noting that "none of the listed cases appear to be related to the CWA").

This means all complex federal litigation, no matter the practice area. See *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 455 ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys

---

[1] For the reasons set forth in Section IV herein, Plaintiff respectfully submits that those decisions were wrongly decided.

in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter."); *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973, 981 (abuse of discretion to limit review of "prevailing market rate" solely to cases brought under the same law or subject matter: "Camacho also argues that the district court erred by relying solely on FDCPA cases in determining the prevailing market rate. Camacho is correct that '[i]n order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases.'" (citations omitted)); see also *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 U.S. Dist. LEXIS 68161, at *58 (N.D. Cal. Apr. 17, 2020) (in case involving the Telephone Consumer Protection Act and Fair Debt Collection Practices Act, Court found that: "To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation. . . Here, the relevant legal community is the San Francisco Bay Area, specializing in complex, high-stakes litigation."*(Citations omitted.)*; *Charlebois v. Angels Baseball LP* (C.D. Cal. 2012) 993 F.Supp.2d 1109, 1119-1120 (Holding that "Defendants are incorrect as matter of law that the relevant market is limited only to attorneys who specialize in the specific disability rights laws at issue here" and finding that instead that the fee award should "be governed by the same standards which prevail in other types of complex Federal litigation").

  Under this unduly narrow framing of the legal standard the Court erred in refusing to consider the supporting (and, as the Court notes, undisputed) expert declarations of Christopher Sproul (Dkt. 89) and Daniel Cooper (Dkt. 88), on the grounds that "none of the listed cases appear to be related appear to be related to the CWA." Dkt. 99, at 7-8.  Plaintiff respectfully submits that it is an abuse of discretion in the Ninth Circuit to limit review of the "prevailing market" solely to CWA cases, and that, on reconsideration, the Court should rely on the Sproul and Cooper declarations and the rates supported therein because they apply to complex federal litigation.

### IV. *Kernen* and *Denbeste* Were Wrongly Decided and Should Not Be Followed Here

Two notable deviations from the *Barjon* rule occurred in *California Sportfishing Protection Alliance v. Denbeste Yard & Garden, Inc.("Denbeste")*, 2023 WL 10367397 at *1 (N.D. Cal. Dec. 8, 2023) and *Californians for Alternatives to Toxics v. Kernen Constr.("Kernen")*, 2023 WL 4991861, at *4 (N.D. Cal. Apr. 21, 2023), *report and recommendation adopted sub nom. Californians for Alternatives to Toxics v. Kernen Constr. Co.*, 2023 WL 4995716 (N.D. Cal. June 13, 2023). Neither of these cases were cited by the parties in their briefing, but the court raised them *sua sponte* because they appeared to be Northern District precedent for awarding Sonoma County rather than San Francisco rates. Dkt. 99, at 9.

In *Denbeste*, an order awarding default judgment and attorneys' fees, the court disregarded evidence of San Francisco rates provided by Plaintiff because it found that the "relevant community" was not San Francisco, where the court sits, but rather Sonoma County, where the cause of action arose and the plaintiff's attorneys had offices. *Denbeste* at *1. However, this holding is directly contrary to the holding in *Barjon,* which found that the rates to be awarded were where the court sits, and not those where the cause of action arose or where Plaintiffs' attorneys had offices. *Barjon,* 132 F.3d at 500; *Shirrod,* 809 F.3d at 1087; See *Also Ramos v. Lamm* (10th Cir. 1983) 713 F.2d 546, 555; *Marbled Murrelet v. Pacific Lumber Co.* (N.D. Cal. 1995) 163 F.R.D. 308, 317.

Similarly, in *Kernen*, the court awarded rates "after reducing the requested rates by twenty percent to reflect 'the prevailing market rates in the far northern parts of this District for cases entirely local to that area.'" *Kernen* at *4, fn.29. Again, this holding directly contradicts the holding in *Barjon*. The district court did not "sit" in the "far northern parts" of the district where the cause of action arose, just as the court in *Barjon* did not "sit" in the far western part of the district in Vallejo where the cause of action arose. While this court was understandably misled by the holdings of these cases regarding the "relevant community", it is clear that their holdings do not comport with established Ninth Circuit

precedent on this issue.

The *Barjon* rule is clear that the "relevant community" in this case is San Francisco, where the district court sits and the litigation took place, not the location where the cause of action arose, or where the parties or attorneys reside. Given the above, the Court's application of a "Sonoma County" rate rather than a San Francisco rate for the fee award merits reconsideration.

## Conclusion

Plaintiff respectfully requests that the Court reconsider the Fee Order in light of the case law and arguments presented above. Plaintiff also requests that if the motion for reconsideration is granted, that it be allowed to submit a declaration supplementing the hours expended on this motion for reconsideration for inclusion in the lodestar calculation of the fee award.

Dated: October 4, 2024     LAW OFFICES OF ANDREW L. PACKARD

By: /s/ Andrew L. Packard
Andrew L. Packard
Attorneys for Plaintiff

CALIFORNIANS FOR ALTERNATIVES TO TOXIC