1  Diane G. Kindermann Henderson (SBN 144426)
   dkindermann@aklandlaw.com
2  Glen C. Hansen (SBN 166923)
   ghansen@aklandlaw.com
3  ABBOTT & KINDERMANN, INC.
   2100 21st Street
4  Sacramento, California 95818
   Telephone:    (916) 456-9595
5  Facsimile:    (916) 456-9599

6  Attorneys for Defendants
   REICHARDT DUCK FARM, INC., and
7  JOHN REICHARDT

8

                    **UNITED STATES DISTRICT COURT**
9
                  **NORTHERN DISTRICT OF CALIFORNIA**
10

11 | CALIFORNIANS FOR              | Case No: 3:22-CV-09065-AGT
   | ALTERNATIVES TO TOXICS, a    |
12 | non-profit corporation,      |

13 |              Plaintiff,       | **DECLARATION OF GLEN C. HANSEN IN
   |                               | OPPOSITION TO PLAINTIFF'S MOTION
14 | v.                            | FOR RECONSIDERATION OF THE
   |                               | COURT'S AUGUST 20, 2024 ORDER
15 | REICHARDT DUCK FARM, INC.,    | GRANTING PLAINTIFF'S MOTION FOR
   | and JOHN REICHARDT,           | ATTORNEYS' FEES AND COSTS, AS
16 |                               | MODIFIED, AND GRANTING IN PART
   |              Defendants.       | PLAINTIFF'S REQUEST FOR JUDICIAL
17 |                               | NOTICE (Dkt. 99)**

18

19 I, Glen Hansen, declare,

20      1.      I am a Senior Counsel with the law firm of Abbott & Kindermann, Inc., counsel of

21 record for Defendants Reichardt Duck Farm, Inc., and John Reichardt ("Defendants"), in

22 this action.  If called as a witness, I could and would competently testify to the following facts of

23 which I have personal knowledge, except those matters alleged upon information and belief, and

24 as to those, I believe them to be true.

25      2.      This law firm is also counsel of record for the Defendants in the matter of

26 *California Open Lands v. Butte County Department of Public Works, et al.*, case no 2:20-cv-

27 00123-DJC-DMC, which was filed in the United States District Court for the Eastern District of

28

                                        -1-

California.  In that case, Plaintiff California Open Lands filed a "Declaration of Andrew L.

Packard In Support Of Expenses Incurred In Bringing Motion To compel Site Inspections" on

November 2, 2021 as ECF No. 32, a true and correct copy of which declaration is attached hereto

as **Exhibit 1**.  In paragraph 10 of that declaration, Mr. Packard stated: "I have practiced for 28

years and my 2021 fee rate for work in the Northern District is $825/hour. My associate, William

Carlon has practiced for 6 years and his 2021 fee rate for work in the Northern District is

$400/hour."

3.     A related lawsuit was filed in the California State Courts in the matter of

*California Open Lands v. Butte County Department of Public Works, et al.*, County of Butte

Superior Court case no 20CV01220.  In that case, Plaintiff California Open Lands filed a

"Declaration of Andrew L. Packard In Support Of Motion For Enforcement Costs" on July 19,

2022, a true and correct copy of which declaration is attached hereto as **Exhibit 2**.  In paragraph

54 of that declaration, Mr. Packard stated:

> I have set my hourly billing rate for purposes of this action at $825 per
> hour.  In my opinion, this rate is well within the reasonable 2022 market
> rate in the San Francisco Bay Attorney [sic] for an attorney with my skill,
> experience and reputation

Then in paragraph 54 of that same declaration, Mr. Packard stated:

> In conjunction with Mr. Carlon, I have set his hourly billing rate for the
> purposes of this action at $400 per hour.  In my opinion, this rate is well
> within the reasonable 2022 market rate in the San Francisco Bay Area for
> an attorney with Mr. Carlon's skill, experience and reputation.

On June 26, 2024, *less than 4 months ago*, the Superior Court for Butte County issued a ruling on

Plaintiff California Open Lands' Motion for Enforcement Costs, by way of a Minute Order, a true

and correct copy of which is attached hereto as **Exhibit 3**.  In that Minute Order, the Superior

Court awarded attorneys' fees for Mr. Packard at his declared San Francisco Bay Area hourly rate

for 2022 of "$825/hour," and for Mr. Carlon at his San Francisco Bay Area hourly rate for 2022

of "$400/hour."

4.     Attached hereto as **Exhibit 4** is a copy of the "Order Awarding Attorneys' Fees,"

ECF No. 90, issued by United States District Court Judge Yvonne Gonzalez Rogers in the matter

of *Californians for Alts. to Toxics v. Kernen Constr. Co.*, NO. 20-cv-01348-YGR (Northern

**DECLARATION OF GLEN C. HANSEN IN OPPOSITION TO MOTION FOR RECONSIDERATION**

District of California ("Order"), which Order this office obtained on October 10, 2024, from the PACER document filing system in the Northern District of California (also found at 2022 U.S. Dist. LEXIS 248070, 2022 WL 22227777).  In that Order, District Judge Rogers stated the following, in relevant part:

> Here, CATS requests attorneys' fees calculated with the following hourly rates:

| Attorney | Years Of Practice | Requested Rate |
| --- | --- | --- |
| William Verick | 33 | $875 |
| … | | |
| Andrew Packard | 28 | $825 |
| … | | |
| William Carlon | 6 | $400 |
| …. | | |

> Dkt. No. 67 at 10; Dkt. No. 67-1 ("Packard Dec.") …. [Order, 4:6-11; 2022 U.S. Dist. LEXIS 248070 at *4.]

I declare under penalty of perjury under the laws of the State of California and the United State of America that the foregoing is true and correct, except as to those matters alleged on information and belief and, as to those matters, I believe them to be true.  Executed on October 11, 2024, at Sacramento, California.

_/s/ Glen C. Hansen_
GLEN HANSEN

# EXHIBIT 1

1  ANDREW L. PACKARD (State Bar No. 168690)
2  WILLIAM N. CARLON (State Bar No. 305739)
   Law Offices of Andrew L. Packard
3  245 Kentucky Street, Suite B3
   Petaluma, CA 94952
4  Tel: (707) 782-4060
   E-mail: andrew@packardlawoffices.com
5           wncarlon@gmail.com

6  Attorneys for Plaintiff
   CALIFORNIA OPEN LANDS
7

8                **UNITED STATES DISTRICT COURT**

9                **EASTERN DISTRICT OF CALIFORNIA**

10

11 CALIFORNIA OPEN LANDS, a non-profit      Case No. 2:20-cv-00123-KJM-DMC
   land trust organization,

12                Plaintiff,                **DECLARATION OF ANDREW L.**
                                            **PACKARD IN SUPPORT OF EXPENSES**
13      vs.                                 **INCURRED IN BRINGING MOTION TO**
                                            **COMPEL SITE INSPECTIONS (Fed. R.**
14 BUTTE COUNTY DEPARTMENT OF               **Civ. P. 37(a)(5)(A))**
   PUBLIC WORKS, a political subdivision of
15 the State of California, DENNIS SCHMIDT,
   an individual, and ERIC MILLER, an
16 individual,

17                Defendants.

18

19      I, ANDREW L. PACKARD, hereby declare under penalty of law that the following facts are

20 true and correct:

21      1.      My firm has served as counsel for Plaintiff California Open Lands ("COL") in the

22 above-captioned action since its inception in 2019.

23      2.      I make this declaration pursuant to this Court's October 27, 2021 Order (ECF No. 31)

24 ordering Plaintiff to submit a declaration in support of reasonable expenses associated with its

25 motion to compel within seven days of the order.

26      3.      I make this declaration based on my personal knowledge, and I am competent to

27 testify to the matters set forth herein.

28      4.      Plaintiff has incurred $10,140 in attorneys' fees associated with its motion to compel.

1    Attached as **EXHIBIT 1** to this declaration is a spreadsheet documenting2 Plaintiff's lawyers'

2    contemporaneously recorded time entries, together with years of practice and hourly rates.  Based on

3    my experience and knowledge of the relevant legal market, and my client's inability to obtain local

4    counsel, I believe these rates to be reasonable.

5            5.      I have been informed by COL's Executive Director, Holly Nielsen that she personally

6    made extensive efforts over a period of many months, to contact and retain local counsel in Butte

7    County but was unable to do so.  Ms. Nielsen has informed me that these efforts included contacting

8    local and regional environmental groups (the Butte Environmental Counsel and the California

9    Sportfishing Protection Alliance), interviewing three local attorneys, and beginning work on the case

10   (twice) with two other local attorneys.  In every instance, the attorneys interviewed by COL (1)

11   lacked experience with the Clean Water Act and federal court litigation, (2) were unwilling to do the

12   case on a contingent basis, or (3) were apprehensive about potential professional or social conflicts

13   arising out of a case against Butte County.  In some cases, all three of these factors played a role in

14   COL's inability to find local counsel.

15           6.      Consequently, were COL's fee rates to be adjudicated in this case, COL would seek

16   out-of-forum attorney fee rates on the basis that it was unable to locate skilled local counsel, despite

17   its considerable efforts.  Specifically, COL would seek to apply prevailing market rates in the

18   Northern District where my firm is located.  *See Edwards v. City of Colfax*, No. CIV S-07-2153

19   GEB EFB, 2011 U.S. Dist. LEXIS 17105, (E.D. Cal. Feb. 15, 2011) (awarding Northern District

20   rates where plaintiffs were unable to obtain local counsel).

21           7.      I am admitted to practice in the State of California and am a member of good

22   standing in the state bar.  I am admitted to practice before the United States District Court of the

23   Eastern, Northern, Central and Southern Districts of California.

24           8.      My firm has been lead counsel in over seventy-five Clean Water Act ("CWA") cases,

25   and has represented eight of the California chapters of the international Waterkeeper Alliance in

26   connection with their enforcement of the CWA.  My firm currently represents the California

27   Sportfishing Protection Alliance and Californians for Alternatives to Toxics in connection with their

28   statewide development and prosecution of Clean Water Act claims.  This work has resulted in

1  several significant published opinions in the United States District Courts of the Northern District of

2  California, the Eastern District of California, and the Central District of California, as well as the

3  Court of Appeals for the Ninth Circuit.

4       9.     Over my 28 years of practicing public interest environmental law on behalf of private

5  clients in California, I have gained considerable experience negotiating, mediating and litigating

6  attorney fee recoveries.  I have performed many hours of legal research into the fee-shifting

7  provisions of the Clean Water Act and prevailing attorney rates in various California legal markets

8  including attorney fee awards by the District Court for the Eastern District of California, the

9  opinions expressed by other attorney fee experts in declarations filed in fee motions, legal

10  periodicals concerning attorney rates, and discussions with other San Francisco Bay Area counsel

11  concerning the rates they charge in the Eastern District.

12       10.    I have practiced for 28 years and my 2021 fee rate for work in the Northern District is

13  $825/hour.  My associate, William Carlon has practiced for 6 years and his 2021 fee rate for work in

14  the Northern District is $400/hour.

15       11.    I have exercised my professional billing judgment to ensure that the fees tallied

16  herein represents only those efficient legal service hours reasonably expended in this litigation,

17  streamlining and eliminating any potential duplication of effort.

18       12.    Counsel is mindful that while the Court has not requested full briefing on a fee

19  motion, it will be called upon to determine an attorney rate for any sanctions it orders.  In the event

20  the Court would like further briefing or evidence concerning the discussion of fee rates above, we

21  can provide it.

22

23       I declare under penalty of perjury that the foregoing is true and correct.  Executed on

24  November 2, 2021 in Petaluma, California.

25

26

27                                       _____

                                     Andrew L. Packard

28

# EXHIBIT 2

1  ANDREW L. PACKARD (State Bar No. 168690)
   WILLIAM N. CARLON (State Bar No. 305739)
2  LAW OFFICES OF ANDREW L. PACKARD
   245 Kentucky Street, Suite B3
3  Petaluma, CA 94952
   Tel: (707) 782-4060
4  Fax: (707) 782-4062
   andrew@packardlawoffices.com
5  wncarlon@packardlawoffices.com

6  BRIAN ACREE (State Bar No. 202505)
   LAW OFFICE OF BRIAN ACREE
7  331 J Street, Suite 200
   Sacramento, CA 95814
8  Tel: (510) 517-5196
   brian@brianacree.com

9  Attorneys for Plaintiff
   CALIFORNIA OPEN LANDS
10

11                SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                            COUNTY OF BUTTE

13  CALIFORNIA OPEN LANDS, a non-profit     )   Case No. 20CV01220
    land trust organization,                )
14                                          )
                                            )
15       Plaintiff and Cross Defendant,     )   DECLARATION OF ANDREW L. PACKARD
         v.                                 )   IN SUPPORT OF MOTION FOR
16                                          )   ENFORCEMENT COSTS
    BUTTE COUNTY DEPARTMENT OF              )
17  PUBLIC WORKS, a political subdivision of the )   Date:      August 10, 2022
    State of California,                     )   Time:      9:00 a.m.
18                                          )   Dept. 6 (Hon. Stephen E. Benson)
         Defendant and Cross Complainant.   )
19                                          )
                                            )
20  _____)

21

22       I, ANDREW L. PACKARD, hereby declare under penalty of law that the following facts are true

23  and correct:

24       1.      I have been a member of the California Bar for 28 years.  My firm, together with the Law

25  Office of Brian Acree, has served as counsel for Plaintiff and Cross-Defendant California Open Lands

26  ("COL") in the above-captioned action since its inception.  I make this declaration in support of

27  Plaintiff's Motion for Enforcement Costs based upon my personal knowledge, unless otherwise stated,

28  and I am competent to testify to the matters set forth herein.

Packard Dec ISO Motion
for Enforcement Costs                                              Case No. 20CV01220

1     2.     I am admitted to practice law in the State of California and before the United States

2 District Court of the Northern District of California, and am a member of good standing in the state bar.

3 **Background and Experience**

4     3.     I earned my Juris Doctorate from the Boston University School of Law in May 1993 and

5 have been a member of the California Bar since December 1993.  Since 1997, my firm has represented

6 dozens of local, regional and statewide environmental non-profit organizations and individuals in over

7 140 public interest cases to advance environmental, consumer protection and "right-to-know" laws.

8 These citizen enforcement actions have been brought under the Clean Water Act ("CWA"), California's

9 Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"), the California Business &

10 Professions Code, California Code of Civil Procedure section 1094.5, and the Resource Conservation

11 and Recovery Act ("RCRA").  In support of these cases, my firm regularly uses the provisions of the

12 federal Freedom of Information Act, the California Public Records Act, and California's Strategic

13 Lawsuits Against Public Participation statute.

14     4.     My firm has served as lead counsel in over ninety CWA cases, and has represented eight

15 of the California chapters of the international Waterkeeper Alliance in connection with their CWA

16 enforcement program.  My firm currently represents the California Sportfishing Protection Alliance in

17 connection with its statewide development and prosecution of Clean Water Act and Proposition 65

18 "Discharge to Drinking Water" claims.  This work has resulted in several significant published opinions

19 in the United States District Courts of the Northern District of California, the Eastern District of

20 California, and the Central District of California, as well as the Court of Appeals for the Ninth Circuit,

21 and California's appellate courts.

22     5.     Over my 28 years of practicing public interest environmental law on behalf of private

23 clients, I have gained considerable experience negotiating, mediating and litigating attorney fee

24 recoveries.  In the course of this work experience, I have performed many hours of research into

25 prevailing attorney rates in various California legal markets and the case law concerning attorney fee

26 awards, including attorney fee awards by the District Court for the Northern District of California, the

27 opinions expressed by other attorney fee experts in declarations filed in fee motions, legal periodicals

28 concerning attorney rates, and discussions with other San Francisco Bay Area counsel concerning the

1  rates they charge.

2      6.      In my annual re-setting of my firm's hourly rates for cases of this type, I have relied

3  primarily on market data and fee awards in cases involving citizen suit environmental litigation across

4  California.

5  **Procedural History of This Action**

6      7.      My firm was contacted by Holly Nielsen, COL's Executive Director, in October of 2019,

7  and retained on a partly-contingent basis to investigate the Butte County Department of Public Works'

8  mismanagement of the Neal Road Landfill to assess potential violations of COL's conservation

9  easement and the County's General Industrial Storm Water Permit, a permit required for discharges

10  subject to the National Pollutant Discharge Elimination System implemented under the Clean Water

11  Act.

12      8.      After reviewing the terms of the easement and the County's storm water compliance

13  issues at Neal Road Landfill, my firm, with input and approval from COL's Board of Directors,

14  developed a strategy for moving forward on two matters: (1) enforcing the terms of COL's easement in

15  state court; and, (2) addressing the County's Clean Water Act permit violations in federal court.

16      9.      From this early stage in the case, all billing hours were meticulously assigned to either

17  the conservation easement enforcement effort, or the Clean Water Act permit enforcement effort.  Any

18  time equally attributable to the furtherance of *both* matters (*e.g.*, COL early development of a settlement

19  demand settling both cases) has been split between the two actions.  The fees sought in this motion are

20  for billings to the conservation easement enforcement matter *only* (the federal matter is still pending).

21      10.      To implement this strategy, COL also formally retained the advisory services of Mark

22  Habib, a local attorney with expertise in real estate law and conservation easements, in January of 2020.

23  (Mr. Habib's declaration in support of this motion is filed herewith.)

24      11.      As an initial step in the state court action, and as required under Section 7 of the

25  Easement, my firm worked with COL staff to collect evidence, confer with experts, and develop a

26  written notice of the County's violations of the Easement.  COL issued this notice, together with

27  proposed remedial actions for the violations to the County on December 13, 2019.  (A true and correct

28  copy of COL's December 13, 2019 letter to the County is attached hereto as **Exhibit A**.)

Packard Dec ISO Motion
for Enforcement Costs                3                    Case No. 20CV01220

1    12.    Nearly two months later, on February 6, 2020, the County responded by letter, dismissing

2    COL's concerns, rejecting nearly all of COL's proposed remedial actions, and promising a more

3    comprehensive response to COL's letter of December 13, 2019 by the end of the month.  A true and

4    correct copy of the County's February 6, 2020 response is attached hereto as **Exhibit B**.

5    13.    After further discussions and emails, COL's counsel emailed the County on March 31,

6    2020 to explain, and provided its legal justification for, its understanding of the boundaries of the

7    Preserve.  A true and correct copy of COL's March 31, 2020 response is attached hereto as **Exhibit C**.

8    14.    On April 10, 2020, the County responded by letter, simultaneously agreeing with COL's

9    understanding that the Preserve consisted of six acres, of which three acres are protected wetland, but

10   also rejecting COL's allegations that the County had violated the terms of the Easement.  A true and

11   correct copy of the County's April 10, 2020 letter is attached hereto as **Exhibit D**.

12   15.    On April 13, 2020, COL responded by email to the County to point out the apparent

13   contradiction in Defendant's position, stating "[I]n your email you confirm that the County

14   acknowledges that there is a 3-acre wetland area ("we agree that the Easement consists of 6 acres total –

15   3 acres of which are protected wetlands"), but can only point to two acres the County believes are

16   wetlands. The area the County contends is the wetland is too small."  A true and correct copy of COL's

17   April 13, 2020 email is attached hereto as **Exhibit E**.

18   16.    Based on the unyielding positions taken by the County in the parties' discussions

19   between COL's formal notice on December 13, 2019 and continuing through June 2020, and additional

20   information obtained by COL in response to a number of Public Records Act and Freedom of

21   Information Act requests, it became clear to COL that the County misunderstood the geographical and

22   prescriptive scope of the Easement, the boundaries of the Preserve, and what measures would need to be

23   undertaken to repair the damage it had caused and prevent future leachate spills to the Preserve.

24   17.    After two months without receiving any response to its April 13, 2020 email[1], COL filed

25   _____

    [1] Settlement discussions in the federal action during this time period were equally unproductive.
26  On May 27, 2020, at COL's request, the parties conducted a settlement-protected facility inspection in
    the federal action filed against the County on January 16, 2020.  This meeting was not productive
27  because the County failed to make available a representative who could answer COL's questions during
    the meeting and declined to engage in a meaningful discussion to resolve the case.   The County did ask
28  COL to prepare a written list of questions, which COL provided to the County on July 29, 2020.  The

1   this action on June 19, 2020.

2       18.     The County filed a demurrer in September of 2020, and a cross-complaint (to which COL

3   demurred) in November of 2020.  During this five-month period, settlement discussions were effectively

4   suspended while the parties engaged in motion practice and COL awaited responses to the settlement

5   questions posed in July.

6       19.     By the end January of 2021, with the procedural motions completed and the County

7   returning to the settlement discussion, COL was able to persuade the County to stipulate, in the federal

8   action, to an order setting a settlement conference with Magistrate Judge Kendall J. Newman "to explore

9   a comprehensive, early resolution" of *both* the federal and state actions.  The stipulated order provided

10  that Plaintiff was to make best efforts to provide Defendants with a written demand, including all

11  injunctive and monetary terms, as well as a draft consent decree on or before January 29, 2021, and that

12  Defendants were to make best efforts to provide a written response to Plaintiff's demand, including a

13  mark-up of the draft consent decree, on or before February 26, 2021.

14      20.     COL provided its demand for injunctive relief by letter dated January 29, 2021 and

15  supplemented this with its monetary demand the following business day, on February 2, 2021.  The

16  County responded to COL's demand belatedly, on March 4, 2021, only days before the settlement

17  conference, falsely asserting that COL's proposed relief measures had already been implemented by the

18  County, had been accepted for future implementation by the County, or were moot.  Notably, the County

19  also announced, for the first time, that it would unilaterally "seek a modification of the underlying

20  mitigation obligations in the 2003 Letter of Permission (200300113) issued by the United States Army

21  Corps of Engineers ("USACE")" resulting in "the elimination of the Conservation Easement Area and

22  will authorize offsite mitigation."  In short, the County hatched a half-baked plan to try to unilaterally

23  terminate the easement through a modification of the Army Corps of Engineers' permit modification

24  process (a theory contrary to California's law of easements).  On this basis, the County further declared

25  that it "will not concur with any settlement demands relevant to the Conservation Easement Area as they

26  will be moot."

27  _____

28  County responded nearly four months later, on November 19, 2020 (see further discussion below).

Packard Dec ISO Motion
for Enforcement Costs                    5                    Case No. 20CV01220

21. Finally, and notable in the context of this motion, the County also refused to negotiate *any* fees or costs in *either* the federal of the state case without COL first providing billing statements, which would need to be redacted to prevent the waiver of any privileges.

22. The March 10, 2021 settlement conference with Magistrate Judge Newman was not successful, despite a follow-up conference call hosted by Magistrate Judge Newman on April 16, 2021 and conversations running through the summer to try to put the settlement process back on track.

23. In December 2021, COL communicated to the County that it was willing to restart negotiations, but the County did not respond.

24. As it became obvious the County was no longer interested in participating in settlement discussions after the March 2021 conference, COL started to shift its focus to discovery and factual investigation. On April 13, 2021, COL propounded Form Interrogatories, Set One. On June 10, 2021, COL propounded additional written discovery, including a second set of form interrogatories, requests for production of documents, and requests for admissions. The written discovery process was made more laborious by the County's objections, responses, and repeatedly-amended responses, which required extensive efforts to resolve through meeting and conferring with County's counsel. The County also propounded written discovery, including document requests that required significant attorney review time.

25. As the case approached trial, counsel expended significant time preparing for expert depositions. Also included in this category of time are efforts COL made to gather information from the Army Corps of Engineers, as well as other regulatory agencies that were making decisions related to the County's violations, and COL's enforcement, of the Easement.

26. By the fall of 2021, eighteen months into the case, with a settlement process that had sputtered to halt and trial deadlines looming, COL elected to complete its discovery and seek summary judgment of the issues raised in its complaint and in the County's cross-complaint. To support this work, COL also retained Brian Acree, an attorney in Sacramento with substantial experience in citizen suit enforcement and state court practice, in late 2021.

27. The County's cross-complaint made three requests for relief. COL believed that the cross-complaint raised purely legal questions, specifically, how the definition of the term "Preserve"

1   should be interpreted in the Easement, and began preparing a motion for summary judgment, or in the

2   alternative, for summary adjudication, on the cross-complaint ("MSJ 1"). COL's motion also focused

3   on narrowing the issues left for trial. In particular, COL moved for summary adjudication on whether

4   the cross-complaint raised a genuine dispute as to whether the easement establishes "wetlands" within

5   the Preserve.

6          28.     COL filed MSJ 1 on November 30, 2021, the County filed its opposition on January 27,

7   2022, and COL filed a reply on February 11, 2022.

8          29.     After COL filed MSJ 1, it began work on another motion for summary judgment, or in

9   the alternative, for summary adjudication, on COL's complaint ("MSJ 2"). MSJ 2 sought adjudication

10  of COL's claims that the County's discharge of leachate, and other activities, were prohibited by the

11  Easement, and also sought to dispose of the County's affirmative defenses for which the County had

12  provided no facts or evidence in support thereof.

13         30.     COL filed MSJ 2 on December 20, 2021, the County filed its opposition on February 22,

14  2022, and COL filed its reply on March 4, 2022.

15         31.     The Court consolidated the two motions into one hearing, held on March 9, 2022. On

16  MSJ1 the court ruled in COL's favor that there was no genuine dispute as to whether the Easement

17  establishes wetlands within the Preserve. In its order, the Court emphasized the importance of particular

18  provisions of the Easement and the Permit, and these provisions became key points of focus for COL's

19  trial preparation.

20         32.     On the second motion, the Court granted COL's motion for summary adjudication as to

21  the County's first six affirmative defenses, and otherwise denied the motion. However, just as with the

22  first motion, the Court highlighted the County's force majeure defense, and that too became a key point

23  of focus for COL's trial preparation.

24         33.     Through its two motions, COL successfully narrowed the issues left for trial by disposing

25  of one of three of the County's claims in its cross-complaint, and by disposing of six out of the County's

26  ten affirmative defenses. Through this briefing, the parties were also able to further focus the issues for

27  trial, as the Court emphasized in its ruling by paying particular attention to the key provisions of the

28  permit, and the County's force majeure defense.

34.     On March 22, 2022, twenty days before trial in the present action, and the morning before the first expert deposition was set to take place, the County finally provided a settlement offer. In its March 22nd settlement communication, the County represented to COL that it would be taking the position in its trial brief that there was no dispute between the parties because the County would be conceding each and every request for declaratory relief made by COL. This was a sharp reversal of the County's initial position where it denied that any of the discharges of leachate, excavation activities, removal of vegetation, or operation of heavy equipment alleged in COL's complaint were violations of the Easement.

35.     Though the County's new position represented a step toward settlement, the Parties still had significant work ahead of them to reach a final resolution. At that point, settlement was an uncertain proposition, so the expert deposition schedule for March 23rd proceeded as planned.

36.     In addition to preparing and conducting the expert deposition, COL immediately began working on a good faith response to the County's March 22nd settlement communication, which it provided the following day. The County responded by letter on March 26th, provided a draft settlement agreement on March 28th, and an amended draft on March 29th. On March 30th, COL responded by letter and provided a redline draft of the settlement agreement.

37.     The second expert deposition was set to take place on April 1st at 10:00 a.m. Approximately 20 minutes before, at 9:39 a.m., the County provided a responsive letter and settlement agreement. Before the deposition began, the parties agreed to continue the deposition to avoid the expense in case a settlement could be reached. In the event a settlement could not be reached, the parties agreed to ask the court at the April 6th trial readiness conference to send the case to a settlement conference to see if any remaining issues could be resolved. The parties further committed to an exchange of drafts over the next two or three days. COL provided its response that same day.

38.     The parties were not able to resolve the remaining issues and continued to exchange letters and drafts up to the trial readiness conference on April 6th. At the conference, the court continued the trail date and ordered the parties to a settlement conference with Judge Candela on April 18th. The parties continued to exchange letters and drafts of the agreement up until the settlement conference.

39.     At the second settlement conference with Judge Candela, on April 22nd, the parties reached an agreement in principle that was finalized and fully executed on April 25th.  As part of the settlement, the parties agreed to negotiate the resolution of attorneys' fees and costs after the substantive issues regarding declaratory and injunctive relief were addressed.  On May 2nd, counsel for COL and the County spoke and agreed that as an initial starting point, COL would provide a summary chart detailing COL's lodestar, including  and the number of hours, the rates, and years of practice for each timekeeper seeking fees.  COL provided this information on May 3, 2022.  At that time, COL's un-modified lodestar was approximately $615,000, and COL proposed settling the issue for $492,000 if the matter could be resolved promptly before the parties had another settlement conference scheduled (avoiding the costs associated with a contested fee motion).  COL informed the County that if the matter went to a fee motion, COL would seek its full lodestar, plus the added costs associated with filing the motion.

40.     The County responded by rejecting COL's offer of a fee settlement and stating its belief that "a fee motion is the appropriate method for resolving the matter."  The County also threatened to share confidential information that was shared with the County in the federal litigation under a stipulated protective order.  This threat, coupled with the County's summary rejection of COL's May 6th offer, made it clear that the County had no intention to comply with the terms of the settlement agreement that it had just signed, which required it to negotiate *in good faith*, and to seek a settlement conference if no agreement could be reached.

41.     COL answered by letter the same day, asking the County if it was willing to use the already-scheduled settlement conference to try and narrow the issues, and see any progress could be made.  The following day, the County agreed to move forward with the settlement conference, but confirmed its position that a fee motion appeared to be the appropriate method for resolving the matter.

42.     This motion is necessary because the County made it clear that it was not willing to negotiate the issue, and that it thought a motion was the "appropriate method for resolving the matter." (this despite COL's informing the County that counsel for COL had recently prevailed on a fee motion, in another case, where the court awarded approximately $72,000 in fees for work done on the fee motion alone).  That did not persuade the County, and the only recourse COL has left is to make this motion.

**Summary of Fees Sought and Method of Tracking Attorney Fees**

43.     By this motion, COL is seeking reimbursement of its reasonable attorneys' fees and costs incurred in bringing this action, as well as consulting and staff costs, and other typical litigation expenses (court filing and remote appearance fees, court reporters' fees, and expert witness fees). This declaration contains a detailed accounting of the $630,677, for 1,047.1, hours of legal services from October 2019 through the present.

44.     Attached as **Exhibit F** to this declaration is a spreadsheet covering the time records of lead counsel and co-counsel: myself, my associate (William Carlon), and my co-counsel (Brian Acree), along with their hourly rates, by year of practice.

45.     In preparing this declaration, I have reviewed all of the over 1,000 individual time entries in this case, from the development of the case strategy and preparation of the December 13, 2019 notice of the County's violations of the Easement through the filing of this motion for attorneys' fees and costs over two and a half years later.

46.     The attorney hours for which recovery is sought in this motion are based on contemporaneous time records, to the tenth of an hour, prepared by the attorneys working on this case. My firm maintains an electronic system for recording and managing time entries using Toggle™ and Time59™ billing programs, and for all costs incurred for individual matters. Pursuant to the firm's regular timekeeping practices, Mr. Carlon and I recorded each task we performed and the time spent on each task on the same date that the task was performed. I am informed by Mr. Acree that he also maintains electronic systems for contemporaneously recording and managing time and cost entries, and that he recorded each task he performed, and the time spent on each task, on the same date that the tasks were performed.

47.     I personally oversaw assignments and ensured the appropriate delegation of tasks based on seniority and billing rate. I leveraged the time of my associate, for example, by assigning him to conduct fact research and issue Public Records Act requests. Similarly, I tasked certain members of the attorney group with discreet parts of the case work to avoid any duplication of effort.

48.     As described more fully below, I also exercised my professional billing judgment to ensure that the attorneys' fees sought in this motion represents only those efficient legal service hours

1   reasonably expended in this litigation, further streamlining and eliminating any potential duplication of

2   efforts by different attorneys.

3         49.    My firm and my co-counsel agreed to litigate this case through trial and appeal at rates as

4   low as one fifth of market rates, knowing that if we prevailed, we would be entitled to seek a multiplier.

5

6   **Biographical Information About the Attorneys Who Worked on this Matter and Their Respective Contributions to the Case**

7

8         50.    I am familiar with the background and qualifications of my associate and co-counsel.  For

9   each of them, I have set forth below their educational background, professional experience and

10  contributions to the prosecution of this case.  Attached as **Exhibit G** to this declaration are each of their

11  declarations confirming these facts and authenticating their time entries as set forth in the spreadsheet

12  attached as **Exhibit F.**

13        51.    **ANDREW L. PACKARD.**  My background and experience are set forth in Paragraphs 3

14  – 6, above.  In this action, I was responsible for the management of all aspects of this case, including

15  client and expert communications, delegating assignments to my associate, and coordinating our work

16  with that of our co-counsel Brian Acree.

17        52.    From the beginning of this case, my associate, William Carlon, and I, led in the

18  development of the factual record and significantly assisted in the development of the overall legal

19  strategy for the case.

20        53.    My firm has performed 757.2 hours of work on this case, which represents nearly three

21  quarters of the total attorney hours for which compensation is sought in this motion.

22        54.    By this motion, I am seeking reimbursement for 259.7 hours of my work on this case.  I

23  have set my hourly billing rate for purposes of this action at $825 per hour.  In my opinion, this rate is

24  well within the reasonable 2022 market rate in the San Francisco Bay Attorney for an attorney with my

25  skill, experience and reputation.  To calculate our hourly rates, my associate, co-counsel and I performed

26  an extensive review of fee awards in cases involving citizen suit environmental enforcement actions in

27  the Northern District of California.  This rate is also informed by discussions about prevailing market

28  rates that I have had with other public interest environmental litigators who practice in the Northern

1  District.

2       55.    **WILLIAM CARLON.**   My associate, Mr. Carlon, has practiced law in California for

3  nearly six and half years.  He was admitted to the California bar on December 3, 2015.  In February

4  2016, he joined my firm and began litigating various environmental enforcement cases, including cases

5  under the Clean Water Act and Proposition 65.  Before joining the California bar, Mr. Carlon earned a

6  Bachelor of Arts degree in Communications from the University of California, Davis in 2010.  After

7  working for a year and a half at the Butte County District Attorney's Office, he earned his law degree at

8  the University of Oregon School of Law in 2015.  During law school, he worked as a summer associate

9  at the Crag Law Center in Portland, OR, and externed at the United States Federal District Court for the

10 District of Oregon, in Eugene, OR.

11      56.    Mr. Carlon has represented Californians for Alternatives to Toxics, the Mateel

12 Environmental Justice Foundation, and the California Sportfishing Protection Alliance in a number of

13 Clean Water Act enforcement actions against industrial facilities found to be discharging storm water in

14 violation of their permit requirements, and a groundbreaking Proposition 65 "discharge to drinking

15 water" case.  In 2019, he was the lead attorney in *Californians for Alternatives to Toxics v. Schneider*

16 *Dock & Intermodal Facility, et al.*, USDC, NDCA Case No. 3:17-cv-05287-JST (Cal. N.D. Mar. 19,

17 2019) in which he argued and won significant portions of a summary judgment motion.  In 2021, he was

18 a critical member of a team of attorneys who succeeded in obtaining a $2,087,750 civil penalty award in

19 another Clean Water Act case.  See *Californians for Alternatives to Toxics v. Kernen Construction Co.,*

20 *et al.,* USDC, NDCA Case No. 4:20-cv-01348, ECF No. 58.  In addition to discovery, motion practice,

21 depositions and oral argument, Mr. Carlon has also gained experience in client development, settlement

22 negotiations and appellate practice during his tenure at my firm.

23      57.    In this case, Mr. Carlon was tasked with developing the evidentiary record, obtaining

24 documents through the California Public Records Act, drafting the December 13, 2019 notice of

25 violation, propounding discovery, briefing the motions for summary judgment and trial preparation.

26 With nearly 500 hours worked on this case, Mr. Carlon has contributed to its success more than any

27 other attorney, billing nearly half of the total attorney hours in the case.

28      58.    In conjunction with Mr. Carlon, I have set his hourly billing rate for the purposes of this

Packard Dec ISO Motion
for Enforcement Costs                          12                          Case No. 20CV01220

1   action at $400 per hour.  In my opinion, this rate is well within the reasonable 2022 market rate in the

2   San Francisco Bay Area for an attorney with Mr. Carlon's skill, experience, and reputation.  To calculate

3   his hourly rate, I performed an extensive review of fee awards in cases involving citizen suit

4   environmental enforcement actions in the Northern District of California.  This rate is also informed by

5   discussions about prevailing market rates that I have had with other public interest environmental

6   litigators who practice in the San Francisco Bay Area.

7         59.    **BRIAN ACREE.**  Mr. Acree graduated with highest honors from Golden Gate

8   University School of Law in San Francisco and has been a member of the California State Bar for over

9   twenty-two years.  He was an editor of the Golden Gate University Law Review and earned

10   specialization certificates in environmental and public interest law.  He also worked as a student attorney

11   for the Golden Gate University School of Law Environmental Law and Justice Clinic, where he

12   represented non-profit organizations and in Clean Water Act, CERCLA, and RCRA litigation.  He also

13   worked as a law clerk for Lead Safe California where he assisted in drafting model lead hazard

14   abatement legislation.  In May 2003, he was awarded Golden Gate University School of Law's "Judith

15   G. McKelvey Award for Outstanding Achievement as an Alumnus."

16         60.    Since joining the bar, Mr. Acree has worked as a sole practitioner, and has served as

17   either lead trial counsel or co-counsel in environmental matters involving the Clean Water Act, RCRA,

18   the California Environmental Quality Act, and various government transparency statutes, including the

19   Brown Act and the California Public Records Act.  He has appeared and argued before the California

20   Court of Appeals for the Second Appellate District and has litigated cases in both federal and state

21   courts throughout California.  He has also been retained numerous times as a motion practice and brief

22   writing consultant in both federal and state cases, including cases argued before the California Supreme

23   Court.  The majority of Mr. Acree's law practice takes place in the San Francisco Bay Area and the Los

24   Angeles area, where he continues to maintain an office address.  In 2018, Mr. Acree relocated his

25   residence to the Sacramento area to care for an ailing family member, and while he has an office in

26   Sacramento, his practice areas remain in San Francisco and Los Angeles area courts.

27         61.    Although Mr. Acree contributed to all aspects of the case strategy, his primary focus was

28   on the motions for summary judgment and trial preparation.  Mr. Acree has billed 289 hours to this

1    case.

2          62.     In conjunction with Mr. Acree, I have set his hourly billing rate for the purposes of this

3    action at $750 per hour.  In my opinion, this rate is well within the reasonable 2022 market rate in the

4    San Francisco Bay Area for an attorney with Mr. Acree's skill, experience, and reputation.  To calculate

5    his hourly rate, I performed extensive review of fee awards in cases involving citizen suit environmental

6    enforcement actions in the Northern District of California.  This rate is also informed by discussions

7    about prevailing market rates that I have had with other public interest environmental litigators who

8    practice in the San Francisco Bay Area.

9          **The Fee Rates Sought in This Motion Are Reasonable**

10         63.     The rates applied to the attorneys billing in this matter and included in this request are

11   reasonable in light of prevailing community standards for comparable legal work, and are the same rates

12   that would be charged to paying clients for comparable legal work.  These billing rates are based

13   primarily on years of legal experience, and are consistent with rates this courts in the San Francisco Bay

14   Area haves approved for comparable legal work.

15         64.     In setting rates in this case, my co-counsel and I have looked to other fee awards from the

16   relevant legal community involving similar claims.  There are only a handful of lawyers who provide

17   "similar services" to Plaintiff's counsel, and citizen suit enforcement of the Clean Water Act is a

18   relatively small practice area, consisting mostly of boutique smaller firms who specialize in

19   environmental law.

20         65.     Based on my review of CWA fee award cases from the Northern District in the last

21   decade, the Laffey Matrix is an appropriate starting point in determining what appropriate rates should

22   be.  *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093 (N.D. Cal. Dec 1, 2011);

23   *Our Children's Earth Found. v. U.S. EPA*, 2016 U.S. Dist. LEXIS 40558 (N.D. Cal. Jan. 21, 2016).  A

24   true and correct copy of the Laffey Matrix is attached hereto as **Exhibit H**.

25         66.     Upon closer analysis of the supporting declarations used in fee awards for *S.F.*

26   *Baykeeper, Our Children's Earth*, and three other fee awards in citizen suit environmental litigation in

27   the Northern District, it appears that reasonable rates have been derived using multiple sources, in

28   addition to the Laffey Matrix.  These sources include other fee awards from complex civil litigation in

1    the Northern District, and prior fee awards from other districts for the attorneys seeking fees and for

2    their supporting declarants.  A true and correct copy of the Declaration of Christopher Sproul in Support

3    of Plaintiffs' Motion for Attorneys' Fees and Costs, filed in *Our Children's Earth Found. v. U.S. EPA*,

4    Case No.: 4:13-cv-2857-JSW, ECF No. 59-1, at ¶¶ 16 -- 21 (describing Laffey rates, prior fee awards

5    and fee awards from complex civil litigation), is attached hereto as **Exhibit I.**

6           67.    Here, Plaintiff relies on the knowledge and experience of some of the same declarants the

7    other courts in the Northern District found to be persuasive -- for example, Messrs. Sproul, Verick and

8    Williams.  Plaintiff further relies on the Northern District's application of the Laffey Matrix in *S.F.*

9    *Baykeeper*, and the consistency of those fee awards with those in *Our Children's Earth.*

10          68.    In light of the fee awards from citizen suit environmental litigation in the Northern

11   District, and the courts' rationales for awarding those fees, COL's requested rates here are reasonable.

12          **The Hours Expended on This Case Are Reasonable**

13          69.    Plaintiff's counsel expended a reasonable number of hours litigating this case, and the

14   contingent nature of this litigation gave Plaintiff's counsel a reason to put into this case only those hours

15   that were prudent and necessary for advancing success.

16          70.    The hours billed to this case can be divided roughly into six categories, each of which is

17   described in detail below.

18          Category 1: Early Investigation, Notice and Complaint

19          71.    This category includes Plaintiff's pre-suit investigative efforts to collect evidence of the

20   easement's violations by the County; the drafting of the notice of violation ("Notice"); the drafting of

21   the Complaint and related filings; and retaining a process server to serve the Summons and Complaint.

22          72.    Category 1 also includes time spent in communications with County Counsel regarding

23   the Notice, conferencing with advisory local counsel and easement specialist Mark Habib; advising the

24   client's board of directors with regard to COL's enforcement rights and possible case strategy; issuing

25   FOIA requests to the USACE and the Regional Board; and two inspections of the land protected by the

26   Easement, one in February with the client, and one in May for a settlement-protected site meeting.

27          73.    The work in this category ends in July 2020, with the service of the complaint filed on

28   June 19, 2020.

74.     As shown on **Exhibit F**, Column E (Investigation, Notice and Complaint) required 94.3 hours of attorney time to complete.

Category 2: Demurrers and Cross-Complaint

75.     This category dominates the period from July 2020 to January 2021 and includes time spent addressing two demurrers filed by the County, and the County's cross-complaint.

76.     As shown on **Exhibit F**, Column F (Demurrers and Cross-Complaint) required 88.8 hours of attorney time to complete.

Category 3: Discovery and Continuing Investigation

77.     This category spans from July 2020 through preparation for the April 11, 2022 trial date, and includes the time spent in formal discovery, ongoing communications with the County, the USACE and the Regional Board, advanced research regarding the termination of easements, trial witness interviews and an expert deposition.

78.     As shown on **Exhibit F**, Column G (Discovery and Continuing Investigation) required 176 hours of attorney time to complete.

Category 4: First Motion for Summary Judgment (on Cross-Complaint)

79.     This category begins in the spring and summer of 2021, in the aftermath of the parties' unsuccessful settlement conference in the federal court action, dominates the efforts of counsel in the fall of 2021 (the opening brief was filed November 30, 2021) and includes the time spent on the reply brief and at the oral argument on March 9, 2022.

80.     As shown on **Exhibit F**, Column H (First Motion for Summary Judgment, Cross-Complaint) required 210.5 hours of attorney time to complete.

Category 5: Second First Motion for Summary Judgment (on COL Complaint)

81.     This smaller category of time begins in December of 2021 and includes the time spent on the reply brief and at the oral argument on March 9, 2022.

82.     As shown on **Exhibit F**, Column I (Second Motion for Summary Judgment, COL Complaint) required 159.7 hours of attorney time to complete.

Category 6: Trial Preparation

83.     This category of time dominated counsel's efforts in March and April of 2022 and

1   includes the time spent drafting the Trial Readiness Conference Statement, the Trial Memorandum,

2   subpoenas, and motions in limine, as well as attending the Trial Readiness Conference and meeting and

3   conferring with the County regarding the preparation of trial exhibits.

4        84.    As shown on **Exhibit F**, Column J (Trial Preparation) required 53.6 hours of attorney

5   time to complete.

6       <u>Category 7: Settlement</u>

7        85.    This category begins in December of 2020, runs through the parties' unsuccessful federal

8   court settlement conference in March of 2021 and the five months thereafter, and picks up on the eve of

9   trial and the ensuing settlement conference with Judge Candella on April 22, 2022.  This category also

10  includes time spent seeking to negotiate a settlement of the Enforcement Costs sought herein.  As part of

11  that effort, COL on May 3, 2022 made a significantly discounted demand, which the County rejected,

12  stating that "the County believes that a fee motion is the appropriate method for resolving the matter"

13  and failing to even make a counter-offer.

14       86.    As shown on **Exhibit F**, Column K (Settlement) required 148.2 hours of attorney time to

15  complete.

16      <u>Category 8: Motion for Enforcement Costs</u>

17       87.    This category of time spans May through July of this year and reflects all time spent in

18  the preparation of this motion.  I tasked Mr. Acree with the preparation of the outline and legal

19  arguments for the memorandum of points and authority.  I tasked Mr. Carlon with drafting portions of

20  the factual and procedural background for the memorandum, as well as the notice of motion, proposed

21  order and proofs of service.  I tasked myself with preparing the declaration of COL's Executive

22  Director, Holly Nielsen, and my own declaration.

23       88.    I reviewed all the attorney time records for accuracy and to better explain the work done

24  in each of the categories of work described above.  During this time, I also contacted several highly

25  skilled litigators with extensive knowledge of the Clean Water Act and fee motions. This work resulted

26  in the declarations of Christopher Sproul, David Williams and William Verick filed herewith.

27       89.    From my conversations with other attorneys who practice public interest environmental

28  law and defense counsel who represent defendants in environmental citizen suit cases, I have personal

1   knowledge that Messrs. Sproul, Williams and Verick enjoy a reputation for environmental citizen suit

2   expertise. I also believe that each of these attorneys are member of the relevant legal community for

3   determining fees in this case.

4   90.   As shown on **Exhibit F**, Column L (Motion for Enforcement Costs) required

5   approximately 120 hours of attorney time to complete.

6   91.   COL has incurred expenses in bringing this action that are of the type ordinarily and

7   necessarily incurred in litigation and typically billed to clients by their counsel: the Court's filing fee to

8   initiate this case, expert witness invoices, copy costs, postage or other delivery charges, and travel

9   expenses. These include $16,225 incurred in connection with work performed by Wood Watershed

10  Sciences (Nielsen Decl. at ¶ 26, Exhibit E) and ordinary litigation expenses (Nielsen Decl., Exhibit C).

11  The work done by Wood Watershed Sciences was necessary to the litigation because of the various

12  technical and legal arguments that arose regarding the character and quality of wetlands within the

13  Preserve.

14  92.   Attached as **Exhibit J** to this declaration is a true and correct copy of the settlement

15  agreement reached in this case.

16
17      I declare under penalty of perjury that the foregoing is true and correct. Executed on July 19,

18  2022.

19
20      _____

21          Andrew L. Packard

22
23
24
25
26
27
28

# EXHIBIT 3



# Superior Court of California, County of Butte
## Minute Order

California Open Lands  vs Butte County Department of Public Works                    20CV01220

| | | | |
|---|---|---|---|
| Hearing Type: | Review Hearing<br>*Review of Order Vacating August 24, 2022 Order* | | |
| Hearing Date: | June 26, 2024 at 9:00 AM | Location: | NC-3; Department 1 -<br>Tamara L. Mosbarger |
| Heard by: | Hon. Tamara L. Mosbarger, Judge | Courtroom Clerk: | Vivian M. Strang |
| Court Reporter: | N/A | Court Interpreter: | N/A |

**Appearances:**
3rd District Court of Appeal, Agency, not present
Butte County Department of Public Works, Defendant,     David Norton, Retained Counsel, not present
Cross Complainant, not present
California Open Lands, Plaintiff, Cross Defendant, not     William Carlon, Attorney, not present
present

**Proceedings:**
- The Court finds there are no appearances.

The tentative ruling is adopted, as follows:

This matter came on regularly for hearing on August 24, 2022, before the Honorable Stephen E. Benson, Judge Presiding, and an Order was thereafter entered that same date. The August 24, 2022 Order After Hearing, having been stricken, and this Court having considered the Third District Court's Decision of May 4, 2024, including fully considering the applicability of out-of-area market rates by determining whether qualified local counsel was unavailable to represent Plaintiff, rules as follows:

Plaintiff's Motion for Enforcement of Costs is granted as provided herein.

Plaintiff is awarded its full attorneys' fees for the proceedings in the trial court, minus the prior reduction by Judge Benson of 170 hours for time incurred litigating summary judgment motions, but including reasonable hours for work on the reply to the fee motion:

| | |
|---|---|
| Mr. Carlon: 425.5 hours x $400/hour = | $170,200.00 |
| Mr. Acree: 237.3 hours x $750/hour = | $177,975.00 |
| Mr. Packard: 242.7 hours x $825/hour = | $200,227.50 |
| Total Attorneys' Fees | $548,420.50 |
| Consulting Attorneys' Fees | $9,265.00 |
| Total Attorneys' Fees | $557,667.50 |
| Litigation Costs | $3,590.56 |

Total Attorneys' Fees and Costs          $561,258.06

Counsel for the Plaintiff shall submit a form of order within two weeks.

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CALIFORNIANS FOR ALTERNATIVES TO TOXICS,**<br><br>　　　　Plaintiff,<br><br>vs.<br><br>**KERNEN CONSTRUCTION CO., ET AL.,**<br><br>　　　　Defendants. | CASE NO. 20-cv-01348-YGR<br><br>**ORDER AWARDING ATTORNEYS' FEES**<br>Re: Dkt. Nos. 67, 88 |

In February 2020, plaintiff Californians for Alternatives to Toxics ("CATS") brought this action against defendants Kernen Construction Co., Bedrock Investments LLC, Scott Farley, and Kurt Kernen, alleging violations of the Clean Water Act and California's General Industrial Permit for storm water discharge. Although defendants answered CATS's pleading by admitting all of the allegations, the parties have continued to fight tooth and nail at each and every step of this incredibly litigious saga. In the latest chapter, CATS moves for $381,883.00 in attorneys' fees and $10,297.39 in costs. Dkt. No. 67. Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court **AWARDS** CATS $281,678.60 in attorneys' fees and $10,297.39 in costs.

## I.　LEGAL STANDARD

To determine reasonable attorneys' fees, the Court determines the lodestar figure by considering: (1) hourly rates; and (2) hours spent. *Halbrecht v. Jacobson*, No. 13-CV-3492 YGR, 2015 WL 5675881, at *1 (N.D. Cal. Sept. 28, 2015) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987)); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.

1   1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party

2   reasonably expended on the litigation by a reasonable hourly rate.").  In awarding reasonable

3   attorneys' fees, the Court must balance granting sufficient fees to attract qualified counsel and

4   avoiding a windfall to counsel.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

5   2008).  The Court may also determine reasonable rates by comparing the requested rate with the

6   prevailing rate in the community for similar work performed by attorneys of comparable skill,

7   experience, and reputation.  *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, No. 09-CV-5676-

8   EMC, 2011 WL 6012936, at *7 (N.D. Cal. Dec. 1, 2011) (citation omitted); *Chalmers v. City of*

9   *Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir. 1986).

10  **II.    DISCUSSION**

11       Defendants do not challenge CATS's prevailing party status. Dkt. No. 70 at 1

12  ("Defendants have never contested that Plaintiffs are [] entitled to fees.").  Thus, the only issue the

13  Court must resolve is what award is appropriate.  CATS's motion requests $381,883 in attorneys'

14  fees and $10,297.39 in costs.  Dkt. No. 67 at 24; Dkt. No. 73 at 7.  Based on a review of the total

15  hours worked for each attorney and paralegal set out in the attorney declaration accompanying

16  CATS's motion, Dkt. Nos. 67-2 ("Packard Decl. I"), 74-1 ("Packard Decl. II"), the Court corrects

17  CATS's math:  CATS seeks attorneys' fees not in the amount of $381,883, but $379,957.50.

| Attorney | Hours Worked | Requested Rate | Total |
|----------|--------------|----------------|-------|
| William Verick | 72.5 | $875 | $63,437.50 |
| David Williams | 29.4 | $875 | $25,725.00 |
| Andrew Packard | 197.0 | $825 | $162,525.00 |
| Brian Acree | 21.9 | $750 | $16,425.00 |
| William Carlon | 270.8 | $400 | $108,320.00 |
| Matt Lang (Paralegal) | 23.5 | $150 | $3,525.00 |
| Total | | | $379,957.50 |

**A.    Calculation of the Lodestar Figure**

To determine reasonable rates, the Court examines market rates in the relevant community,

paying close attention to the fees charged by lawyers of reasonably comparable skill, experience

and reputation.  *Ctr. for Biological Diversity v. Env't Prot. Agency ("EPA")*, No. 17-CV-00720-

WHA, 2017 WL 6761932, at *3 (N.D. Cal. Dec. 4, 2017) (quoting *Blum v. Stenson*, 465 U.S. 886,

895 n.11 (1984)), *report and recommendation adopted*, No. 17-CV-00720-WHA, 2018 WL

*United States District Court*
*Northern District of California*

2

1    264087 (N.D. Cal. Jan. 2, 2018).

2          *1.    Relevant Legal Community*

3          The Court begins its analysis with identifying the "relevant legal community," which is the

4    District in which the lawsuit proceeds. *See Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154,

5    1166 (N.D. Cal. 2012) (citing *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir.1997)).

6          CATS argues that the relevant legal community here is the San Francisco Bay Area in the

7    Northern District of California.  Defendants counter that the relevant community is Humboldt

8    County, where all of the parties and one of plaintiff's counsel and defendants' counsel reside.

9          CATS cites cases finding the relevant legal community to be the San Francisco Bay Area

10    despite containing facts centered outside of the Bay Area because the litigation is before the

11    United States District Court for the Northern District of California. *See Ctr. for Biological*

12    *Diversity*, 2017 WL 6761932, at *5; *Cotton*, 889 F. Supp. 2d at 1171.  Unlike the parties in *Ctr.*

13    *for Biological Diversity*, the current dispute is brought between parties and counsel all based in

14    Humboldt County.  2017 WL 6761932, at *5 (suit brought against EPA where issues centered in

15    the San Joaquin Valley – Kern County – and two of the attorneys were affiliated with law offices

16    outside of the Bay Area).  Moreover, while the court in *Cotton* concluded that the relevant legal

17    community was the San Francisco Bay Area, it ultimately reduced the requested rates given that

18    the case facts occurred in Eureka (county seat for Humboldt county). *See* 889 F. Supp. 2d at 1171

19    (reducing fees as follows: (i) $700 to $525 (25% reduction); (ii) $525 to $475 (9.5%); and (iii)

20    $375 to $280 (25%)).

21          Accordingly, the Court concludes that the relevant legal community is the Northern

22    District of California but considers the fact that the action and its lawyers are based entirely in

23    Humboldt and Sonoma counties.

24          *2.    Reasonableness of Rates Sought*

25          Having identified the relevant legal community as the Northern District of California, the

26    Court next examines market rates in the community. *Ctr. for Biological Diversity*, 2017 WL

27    6761932, at *3 (citation omitted).  Parties may submit affidavits by their counsel and other counsel

28    attesting to prevailing fees in other cases and in the community as evidence of the prevailing

3

market rate.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.

1990).  In fashioning a statutory award, the Court bears in mind that it must strike a balance

between granting sufficient fees to attract qualified counsel and avoiding a windfall to counsel.

*See Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("The way to do so is to

compensate counsel at the prevailing rate in the community for similar work; no more, no less.").

Here, CATS requests attorneys' fees calculated with the following hourly rates:

| Attorney | Years of Practice | Requested Rate |
|---|---|---|
| William Verick | 33 | $875 |
| David Williams | 32 | $875 |
| Andrew Packard | 28 | $825 |
| Brian Acree | 22 | $750 |
| William Carlon | 6 | $400 |
| Matt Lang (Paralegal) | N/A | $150 |

Dkt. No. 67 at 10; Dkt. No. 67-1 ("Packard Decl.") ¶ 35 (supplying rate for paralegal Matt Lang).

CATS bases its determination of reasonable rates on a multitude of evidence, including fee

awards in environmental cases and affidavits of litigators in the field.  Dkt. No. 67 at 10-19.

However, CATS's cited cases are all distinguishable from this dispute, which is entirely local to

the northern part of the District – facts, parties, and counsel included.  *Our Children's Earth

Found. v. EPA*, No. 13-CV-02857-JSW-KAW, 2016 WL 8839428 (N.D. Cal. Jan. 21, 2016),

*report and recommendation adopted in part, rejected in part*, No. 13-CV-02857-JSW, 2016 WL

1165214 (N.D. Cal. Mar. 25, 2016) (case against the EPA); *San Francisco Baykeeper*, 2011 WL

6012936 (challenging, in part, Bay Area ordinances in San Mateo, East Palo Alto, Menlo Park,

Atherton, and Portola); *Ctr. for Biological Diversity*, 2017 WL 6761932 (case against the EPA);

*Pacificans For A Scenic Coast v. Cal. DOT*, 15-CV-02090-VC, Dkt. No. 158 (N.D. Cal. Nov. 22,

2017) (challenging project in San Mateo County and the City of Pacifica); *Californians for

Alternatives to Toxics v. Kernen Construction Co.*, 4:16-CV-04007-YGR, Dkt. No. 125 (N.D. Cal.

Nov. 13, 2017) (the "2016 Case") (prior order by this Court granting CATS's motion to approve a

Proposition 65 Settlement between the parties).  CATS's attempt to compare this entirely local

case favorably to this Court's previous decision in *In re Lithium Ion Batteries Antitrust Litig.* also

fails to persuade because unlike this case, *Lithium Ion* was litigated in the Bay Area by a group of

national lawyers.  No. 13-MD-02420-YGR-DMR, 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10,

United States District Court
Northern District of California

4

1  2020).

2      The Court finds that CATS's requested rates exceed the prevailing market rates in the far

3  northern parts of this District for cases entirely local to that area.  Dkt. No. 70 at 3, 20 (explaining

4  that CATS's rates are twice the hourly rate of the local Humboldt community).  Accordingly, the

5  Court applies a twenty percent reduction to the requested rates on the grounds that this number is

6  less than has been reduced in other cases for that area, accounts for the specialized nature of the

7  practice, and will more appropriately reflect the rate of fees.

8

9
| Attorney | Years of Practice | Requested Rate | Rate less 20% |
|---|---|---|---|
| William Verick | 33 | $875 | $700 |
| David Williams | 32 | $875 | $700 |
| Andrew Packard | 28 | $825 | $660 |
| Brian Acree | 22 | $750 | $600 |
| William Carlon | 6 | $400 | $320 |
| Matt Lang (Paralegal) | N/A | $150 | $120 |

13      *3.*    *Reasonableness of Hours Charged*

14      The Court next determines whether CATS's requested hours are reasonable.  While the

15  Court may reduce the number of hours awarded if the lawyer performed unnecessarily duplicative

16  work, determining what is unnecessary is difficult because a degree of duplication is an inherent

17  part of litigation.  *San Francisco Baykeeper*, 2011 WL 6012936, at *9 (quoting *Moreno*, 534 F.3d

18  at 1112).  Defendants dispute the reasonableness of CATS's lodestar hours for a litany of reasons.

19  The Court addresses each argument below.

20      *a.*    *Pre-Filing Activities*

21      Defendants argue that the Court should reduce CATS's requested hours because they

22  include hours expended for activities contemplated by the parties' 2017 settlement agreement,

23  which include monitoring obligations, data analysis, and site visits.  Dkt. No. 70 at 10.  CATS

24  counters that while the settlement agreement included funding for tasks through February 2020,

25  the parties extended the agreement period for another year to avoid a second lawsuit.  Dkt. No. 73

26  at 4.  When it appeared to CATS that efforts to avoid a second lawsuit would be unsuccessful, it

27  "created a new billing matter for this action to reflect the commencement of a new and separate

28  action against Defendants."  *Id.*  CATS now requests fees for actions billed to this new matter.

*United States District Court*
*Northern District of California*

5

1    The 2017 settlement agreement, which the parties entered into to resolve the 2016 Case's

2    claims and require defendants to take steps to prevent further federal and state law violations, did

3    not contemplate or preclude CATS from initiating a second action after the settlement agreement

4    ended. Dkt. No. 58 at 3-4. The fact that the parties had previously arranged to fund obligations

5    incurred under the previous lawsuit does not preclude CATS's recovery for actions taken after the

6    settlement fund was exhausted, the settlement period ended, and the parties began this new and

7    separate second lawsuit.

8    Accordingly, the Court declines to reduce CATS's request for including hours expended

9    before and aside from the filing of the complaint in this case.

10    b.    *Duplicate Representation*

11    Defendants argue that the Court should reduce CATS's hours because they include hours

12    expended for "multiple counsel preparing for an attending hearings when they were not the

13    speaking counsel for Plaintiff at that hearing." Dkt. No. 70 at 11. The Court agrees that a party

14    should generally not have to pay for unnecessarily duplicative work; however, the Court should

15    not speculate as to how other firms might have staffed the case or impose its own judgment

16    regarding the best way to operate a law firm, but should instead look at the difficulty and skill

17    level of the work performed. *See San Francisco Baykeeper*, 2011 WL 6012936, at *9.

18    In its review of CATS's submission, the Court identifies two instances where three or more

19    counsel participated in case management conferences and internal discussions that, in the context

20    of this case, constitute unnecessarily duplicative work. For one, CATS claims 5.6 hours for three

21    attorneys to prepare for and attend the 35-minute June 1, 2020 initial scheduling conference in this

22    case. *See* Dkt. No. 29. This is the first step in a case in which defendants answered by conceding

23    liability and one that did not require a high level of skill and difficult preparation. For another,

24    CATS claims another 3.8 hours across three attorneys for a 28-minute discovery hearing that

25    similarly did not require a high level of skill and difficult preparation. *See* Dkt. No. 46.

26    Thus, the Court concludes that the following time entries are unnecessarily duplicative and

27    not appropriately compensable: 8 entries, in part or in whole, submitted by Andrew Packard for a

28    total of 4.2 hours and 6 entries submitted by William Carlon for a total of 4.1 hours that request

United States District Court
Northern District of California

unnecessarily duplicative work.  Accordingly, the Court will deduct $4,084.00 from CATS's

request.

| Attorney | Hours | Deduction | Total |
|----------|-------|-----------|-------|
| Andrew Packard | 4.2 | ($660) | ($2,772.00) |
| William Carlon | 4.1 | ($320) | ($1,312.00) |
| Total | | | ($4,084.00) |

        c.     *Requesting Fees for Activities that "Could Never Be Billed to Any Client"*

      Defendants argue that the Court should reduce CATS's requested hours because they

include "many hours [that] could never be billed to any client." Dkt. No. 70 at 12.  The Court

agrees that administrative tasks are not compensable.  *See Hydros Bottle LLC v. Stephen Gould*

*Corp.*, No. 16-CV-04077-JST, 2017 WL 3453350, at *7 (N.D. Cal. Aug. 10, 2017) ("tasks clerical

in nature should be subsumed in firm overhead rather than billed and . . . when clerical tasks are

billed at hourly rates, the court should reduce the hours requested to account for the billing errors"

(citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)) (simplified)).  Further, the

statutory award should not be a windfall to plaintiff's counsel and that the Court should review fee

bills with a measure of reality.  However, defendants do not explain why the Court should

categorically reduce CATS's request for hours attorneys expended reading emails or at site visits,

co-counsel discussions, and strategy sessions.[1]  Nor do defendants identify any particular

problems with any of the issues cited, except to the extent that perhaps it involves duplicative

work.  Thus, the Court declines to reduce CATS's requested hours for on the generic basis that

"hours [that] could never be billed to any client."[2]

        d.     *Non-Contemporaneous Billing Records*

      Defendants argue that the Court should reduce CATS's requested hours because the hours

are allegedly not created contemporaneously. Dkt. No. 70 at 13.  In support, defendants point to

differences between a spreadsheet CATS sent to defendants on September 21, 2021 before the

---

[1] The Court addresses defendants' protests concerning travel time and vague entries below. *See infra* Sections II.A.3.f, g.

[2] The Court addresses defendants' protests concerning accounting, billing, and administrative tasks below.  *See infra* Section II.A.3.i.

United States District Court
Northern District of California

1   instant motion was filed and the spreadsheet presented to the Court with the instant motion.  *Id.*

2   (citing differences in submitted Exhibit C, Dkt. No. 70 at 69).  CATS responds that the differences

3   are "minor, reasonable under the circumstances, and most importantly, irrelevant" because

4   defendants have not "identif[ied] a single instance of billing that defendant considers vague,

5   duplicative, or excessive."  Dkt. No. 73 at 3.

6        Review of defendants' prepared Exhibit C reveals twenty-one entry changes between the

7   two spreadsheets.  These changes include both additions and subtractions of CATS's requested

8   hours for a net difference of an additional 4.1 hours.[3]  The Court notes that the spreadsheet

9   incorrectly identifies certain entries in the spreadsheet submitted to the Court as missing in the

10   initial spreadsheet CATS sent to defendants on September 21, 2021.  By way of example, Exhibit

11   C identifies a December 3, 2019 time entry for CATS's Andrew Packard as "not present" in the

12   September 21, 2021 spreadsheet.  This is contradicted by a review of the original September 21,

13   2021 spreadsheet, which lists the same December 3, 2019 time entry.  *See* Dkt. No. 70 at 44.

14   Inconsistencies aside, the Court concludes that the 4.1 net hour difference indicates that the

15   changes CATS made to its lodestar entries after sending the spreadsheet to defendants and before

16   submitting it to the Court are minor in nature and do not raise the suspicion that CATS's billing

17   records were created non-contemporaneously.

18        Accordingly, the Court declines to reduce CATS's requested hours because the hours are

19   allegedly not created contemporaneously.

20               e.    *Expending "Vastly" More Hours than Defendants*

21        Defendants argue that the Court should reduce CATS's requested hours because

22   "[d]efendants' hours expended are vastly less than [p]laintiff's."  Dkt. No. 70 at 14.  In support,

23   defendants confusingly cite this Court's order in *Congdon v. Uber Techs., Inc.*, No. 16-CV-02499-

24   YGR, 2019 WL 2327922 (N.D. Cal. May 31, 2019).  In *Congdon*, the Court rejected the very

25   argument that defendants advance – that "[t]he amount of time spent by defendants' attorneys on a

26   particular matter may have significant bearing on the question [of] whether plaintiff's attorney

27    

28        [3] The Court acknowledges that this is not the most accurate measure of the lodestar total hourly difference because CATS seeks different hourly rates for each attorney.

United States District Court
Northern District of California

1    expended a reasonable time on the same matter." *Id.* at *4 (stating that it would not interpret case

2    precedent as requiring a comparison of time spent by each party's counsel to determine whether a

3    lodestar amount was reasonable).

4         Accordingly, the Court declines to reduce CATS's requested hours on the generic ground

5    that defendants' hours expended are "vastly less" than CATS's.

*f.    Travel Time*

7         Defendants argue that the Court should reduce CATS's requested hours because CATS

8    "has presented no evidence that it performed work for this case during all travel billed." Dkt. No.

9    70 at 14.  Moreover, defendants contest CATS's requests for travel time because (1) they could

10   never be billed to a client, (2) the parties' 2017 settlement agreement capped and negotiated the

11   parties' travel time, and (3) travel should be limited to local counsel who resided in the county.

12        While it may be customary practice in the San Francisco Bay Area to bill for time spent

13   traveling, *see Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), this

14   Court does not recall having approved compensating travel time at normal rates.  The Court thus

15   "exercise[s] its discretion to adjust the lodestar amount attributed to travel time, to account for the

16   fact that the traveling does not require the intensive labor, and skill to perform the legal services as

17   for other billing entries submitted to the Court." *See Garcia v. Stanley*, No. 14-CV-01806-BLF,

18   2017 WL 897429, at *7 (N.D. Cal. Mar. 7, 2017) (reducing 8 hours of travel time to 4 hours;

19   collecting cases).

20        In its review of CATS's request, the Court identifies 2 entries submitted by Andrew

21   Packard for a total of 9.6 hours and 16 entries submitted by Matt Lang for a total of 23.5 hours

22   that request compensation for travel time.  Accordingly, the Court reduces the hours of travel time

23   from 9.6 and 23.5 hours to 4.8 and 11.75 hours, respectively.

| *Attorney* | *Hours* | *Deduction* | *Total* |
|---|---|---|---|
| Andrew Packard | 4.8 | ($660) | ($3,168.00) |
| Matt Lang (Paralegal) | 11.75 | ($120) | ($1,410.00) |
| *Total* | | | ($4,578.00) |

9

United States District Court
Northern District of California

g.   _Block Billing_

Defendants argue that the Court should apply a percentage reduction to CATS's requested hours because its hours were submitted in a block billing format. Dkt. No. 70 at 15.  In support, defendants point to their Exhibit C, which they argue indicates "after the fact reconstruction." _Id._

"[B]lock billing makes it more difficult to determine how much time was spent on particular activities." _Welch v. Metro. Life Ins. Co._, 480 F.3d 942, 948 (9th Cir. 2007) (citing _Role Models Am., Inc. v. Brownlee_, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")).  "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." _Id._ (citation omitted).  In imposing a reduction for block billing, the Court should explain how or why the reduction fairly balances those hours that were actually billed in block format.  _Id._ (quoting _Sorenson v. Mink_, 239 F.3d 1140, 1146 (9th Cir. 2001)) (vacating lower court's 20 percent reduction to all requested hours because since "barely more than half of all hours submitted . . . were block billed" reduction "effectively served as a 40 percent penalty").

In its review of CATS's request, the Court identifies 9 entries submitted by William Carlon for a total of 20.6 hours, 14 entries submitted by Matt Lang for a total of 23.5 hours, and 2 entries submitted by David Williams for a total of 2.5 hours that "lump together multiple tasks, making it impossible to evaluate their reasonableness." _Role Models_, 353 F.3d at 971.  Finding that CATS has failed to carry its burden of documenting the appropriate hours expended in the litigation for these hours, the Court applies a 20 percent reduction to these hours and will deduct $2,373.40 from CATS's request.

| Attorney | Hours | Deduction | Total |
|---|---|---|---|
| David Williams | 2.5 | ($140.00) | ($   350.00) |
| William Carlon | 20.6 | ($  64.00) | ($1,318.40) |
| Matt Lang (Paralegal) | 23.5 | ($  30.00) | ($   705.00) |
| _Total_ | | | ($2,373.40) |

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

      h.     *"Excessive, Redundant, Duplicative or Otherwise Unnecessary"*
*Hours*

Defendants argue that the Court should reduce CATS's requested hours because they include "excessive, redundant, or otherwise unnecessary" billing. Dkt. No. 70 at 15-16. This argument is largely duplicative of defendants' earlier argument that the Court rejected on the grounds that defendants did not explain why the Court should categorically reduce all hours that are "duplicatively billed." *See supra* Section II.B.2. The Court sees no reason why it should review that decision here. As CATS points out, and the Court agrees, defendants do not identify a single entry to which defendants object. Instead, defendants make only generalized arguments requesting reduction that the Court does not find persuasive. *Moreno*, 534 F.3d at 1116,

Accordingly, the Court declines to reduce CATS's requested hours for "excessive, redundant, or otherwise unnecessary" hours.

      i.     *Accounting, Budget, or Billing Communications*

Defendants argue that the Court should reduce CATS's requested hours because they include "accounting, budget, or billing communications" that are not tasks properly billed to the client. Dkt. No. 70 at 17. As stated above, the Court agrees that administrative tasks that are not compensable. *See Hydros Bottle LLC*, 2017 WL 3453350, at *7. In its review of CATS's request, the Court identifies submitted time entries that fall under this category. By way of example, a September 20, 2021 time entry submitted by Andrew Packard bills 0.4 hours for "update timesheets." This is a task subsumed in firm overhead rather than billed; the Court accordingly rejects this time entry and similar time entries submitted by CATS.

In its review of CATS's request, the Court identifies 1 entry submitted by Brian Acree for a total of 0.2 hours, 1 entry submitted by David Williams for a total of 0.2 hours, 5 entries submitted by William Carlon for a total of 2.4 hours, and 3 entries submitted by Andrew Packard (including the aforementioned time entry) for a total of 3.0 hours that refer to tasks administrative in nature not compensable for attorneys' fees.

Accordingly, the Court will deduct $3,008.00 from CATS's request.

| Attorney | Hours | Deduction | Total |
|---|---|---|---|
| Brian Acree | 0.2 | ($600) | ($   120.00) |
| David Williams | 0.2 | ($700) | ($   140.00) |

11

| William Carlon | 0.8 | ($320) | ($    768.00) |
| Andrew Packard | 0.4 | ($660) | ($1,980.00) |
| *Total* | | | ($3,008.00) |

   *j.*  <u>Email Communications Lacking Any Description</u>

   Defendants argue that the Court should reduce CATS's requested hours because they include time entries for email communications that do not specify the email's contents or exact recipients. Dkt. No. 70 at 17-18.  Here, defendants' protests fail again for a lack of specificity and supporting case law.  Indeed, defendants do not cite any case law for the proposition that the Court should reduce attorneys' fees because the claimed hours do not specify the exact contents or recipients of each email communication.  Moreover, there is no indication from defendants that the parties were not engaged in email communications during the relevant time frame.  Thus, after review of CATS's time entries involving email communications, the Court sees no reason to reduce CATS's requested hours for a lack of detail.

   Accordingly, the Court denies defendants' request.

   *k.*  <u>Vaguely Documented Tasks</u>

   Defendants argue that the Court should reduce CATS's requested hours because "references to discussions, drones, research, NOV assertions, 'legal research' are too vague to impose the excessive fees claimed by plaintiff." Dkt. No. 70 at 18.

   CATS's time entries referencing discussions or "legal research" each specify what topic was researched or discussed.  Moreover, the Court concludes that time entries regarding drones do not fail for vagueness because CATS's attorney declaration adequately explains CATS's use of drones "to photograph events and locations that are relevant to environmental enforcement actions," and "to take still photographs and video of water discharging from the site." Dkt. No. 67-1 (Packard Decl.) ¶ 33.  As for CATS's references to "NOV" issues – 17 times entries in total – the Court concludes that these time entries are too vague for the Court to determine whether such hours were reasonably expended.  In light of this, and the fact that CATS's reply does not address defendants' protests, the Court denies fees for the following time entries from CATS's request that reference "NOV:"  4 entries submitted by William Carlon for a total of 2.6 hours, 6 entries submitted by Andrew Packard for a total of 3.7 hours, and 7 entries submitted by William Verick

United States District Court
Northern District of California

for a total of 4.0 hours.

Accordingly, the Court will deduct $6,074.00 from CATS's request.

| Attorney | Hours | Deduction | Deduction |
|----------|-------|-----------|-----------|
| Andrew Packard | 3.7 | ($660) | ($2,442.00) |
| William Carlon | 2.6 | ($320) | ($ 832.00) |
| William Verick | 4.0 | ($700) | ($2,800.00) |
| Total | | | ($6,074.00) |

Further, time entries regarding email review that do not provide any additional substance also fail for vagueness because these references fail to identify whether such hours were reasonably expended. By way of example, the Court identifies at least five time entries submitted by William Verick for anywhere between 0.1-0.3 hours with variations of the description "Read corresp." This is insufficient description for the Court to appraise whether Verick's tasks are appropriately compensable. On this issue, the Court identifies 15 time entries submitted by William Verick for a total of 3.1 hours that do not provide sufficient description. Accordingly, the Court will deduct $2,170.00 from CATS's request.

| Attorney | Hours | Deduction | Deduction |
|----------|-------|-----------|-----------|
| William Verick | 3.1 | ($700) | ($2,170.00) |

### 4. Requested Costs

CATS requests $10,297.39 in litigation costs "for reasonable, typical out-of-pocket expenses normally charged to a paying client." Dkt. No. 67 at 24. Based on the record presented, and absent any objection from defendants, the Court finds CATS's requested costs reasonable.

#         #         #

Having reviewed the detailed records, and after reducing CATS's request for vagueness and block billing, the Court concludes that CATS's request (as totaled below) is within reason for counsel's work.

United States District Court
Northern District of California

13

| Attorney | Hours | Rate | Subtotal | Deductions | Total |
|----------|-------|------|----------|------------|-------|
| William Verick | 72.5 | $700 | $ 50,750.00 | ($ 4,970.00) | $ 45,780.00 |
| David Williams | 29.4 | $700 | $ 20,580.00 | ($ 490.00) | $ 20,090.00 |
| Andrew Packard | 197.0 | $660 | $130,020.00 | ($10,362.00) | $119,658.00 |
| Brian Acree | 21.9 | $600 | $ 13,140.00 | ($ 120.00) | $ 13,020.00 |
| William Carlon | 270.8 | $320 | $ 86,656.00 | ($ 4,230.40) | $ 82,425.60 |
| Matt Lang | 23.5 | $120 | $ 2,820.00 | ($ 2,115.00) | $ 705.00 |
| Total | | | $303,966.00 | ($22,287.40) | $281,678.60 |

**B.    Request for Clarification of Payment Deadline**

On January 18, 2022, CATS submitted a Notice requesting the "Court clarify the payment deadline for defendants' compliance with the Civil Penalty Order." Dkt. No. 88 at 2. The Notice stated that "Plaintiff's counsel was informed by the United States Department of Justice ('DOJ') that defendants had not yet paid the Civil Penalty Order," an order in which the Court granted CATS's request for $2,087,750 in civil penalties. Dkt. No. 89 (Packard Decl.) ¶ 2. The Court orders defendants to pay the civil penalties within 30 days of the date of this order.

**III.    CONCLUSION**

The Court rules as follows:

1.    CATS is **AWARDED** $281,678.60 in attorneys' fees and $10,297.39 in costs;

2.    Defendants are **ORDERED** to pay the Civil Penalties contemplated in its May 2, 2021 Order (Dkt. No. 58) within 30 days of the date of this order.

This order terminates Docket Nos. 67 and 88.

**IT IS SO ORDERED.**

Dated: March 21, 2022

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

14