ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
Email: andrew@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REICHARDT DUCK FARM, INC., et al,<br><br>Defendants. | Case No. 3:22-cv-09065-AGT<br><br>**PLAINTIFF'S REPLY MEMORANDUM ON MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 20, 2024 FEE ORDER (Dkt. 99)** |

    Defendants would have the Court overturn black letter law concerning fee motions in the Ninth Circuit. First, they ask that the "relevant community" be understood to the place where the action arose, rather than the physical location of the district court, contravening the central holding in *Barjon*. Second, they ask that the determination of rates be based on rates actually charged by the prevailing party, when the rule is that the court's determination "is not made by reference to rates actually charged the prevailing party." Third, Defendants

argue that the "similar services" standard apply narrowly, to niche practice areas, such as the Clean Water Act, when the standard is much broader, encompassing *all* complex federal court litigation.  This brief focuses on the first argument because, as demonstrated below, Defendants offer no meaningful support for the second and third propositions.

## Argument

### I. The Court Erred in Determining the "Relevant Community" was Sonoma County Rather Than San Francisco, Where "the District Court Sits"

Defendants argue in opposition that the "relevant community" within a district for determining attorney rates is the location where the cause of action arises, but fail to provide a single binding authority for that proposition.  Instead, the overwhelming weight of authority, including binding authority in this circuit as well as the authority of other circuits, is that the "relevant community" is the location where the court "sits" and where the litigation actually takes place.  Defendants attempt to distinguish the authority presented by Plaintiff for this well-established proposition, but, as set forth below, defendants simply ignore explicit findings from these courts that the "relevant community" is not where the cause of action arises, but rather *where the litigation actually takes place*.

For example, in its motion for reconsideration, Plaintiff cited *Barjon v. Dalton* (9th Cir. 1997) 132 F.3d 496 for the proposition that within a district, it is the *location* where the court sits and the litigation takes place that is the "relevant community", not the location where the cause of action arose or where the attorneys reside.  Dkt. 103, at 2:17-5:12.  In *Barjon*, the cause of action arose in the City of Vallejo, and Plaintiff's attorneys in that case argued the court should award Plaintiff's rates consistent with Vallejo, which is in the Bay Area, rather than Sacramento rates.  Dkt. 103, at 2:17-5:12, *Barjon,* 132 F.3d at 500-501.  The Ninth Circuit disagreed,  finding that Sacramento rates were appropriate because that "is the forum in which the district court sits." *Ibid*.  Plaintiff noted that the facts in *Barjon* are very similar to the facts in this case, and that similarly, while the cause of action in this case arose in Sonoma County, since the court sits in San Francisco and that is where the litigation

actually took place, San Francisco rates are appropriate. Dkt. 103, at 2:17-5:12.

Defendants argue in opposition that *Barjon v. Dalton* is distinguishable from this case, but base their argument on a *bafflingly* incorrect premise. Defendants argue that in *Barjon*, "the Ninth Circuit properly rejected Vallejo attorney rates because Vallejo is not in the Eastern District where the case was venued; Vallejo is in a completely different District." (Opposition Brief, at 3:2-4.) Defendants provide no citation for the assertion that Vallejo is not located in the Eastern District, nor could they, since even a cursory amount of research would have shown that this is not true. The City of Vallejo, where the cause of action in *Barjon* arose, is located in Solano County, and therefore is and always has been very clearly within the boundaries of the Eastern District. 28 U.S.C. § 84, *Collier v. Vallejo Police Dept*. (N.D. Cal., Apr. 30, 2013, No. C 13-755 SI) 2013 WL 1820180; *I.D.C. v. City of Vallejo* (N.D. Cal., Sept. 23, 2013, No. C13-3547 TEH) 2013 WL 5312562, *Wright v. City of Vallejo* (N.D. Cal., Oct. 29, 2012, No. C 12-3473 SI) 2012 WL 5350041.

In fact, the court in *Barjon* itself acknowledge that Vallejo was within "the forum lines drawn for venue purposes" of the Eastern District. *Barjon,* 132 F.3d at 500. How defendants could competently claim otherwise is simply baffling. After all, if the cause of action in *Barjon* did not arise in the Eastern district and none of the parties resided there, the case would not properly have been brought in the Eastern District in the first place. *Ibid*. Accordingly, *Barjon* stands for exactly the premise that Plaintiff cited it for – that within a district, it is where the court is located and the litigation actually takes place that is the "relevant community", not the location where the cause of action arose.

Defendants' analysis of *Marbled Murrelet v. Pacific Lumber Co.* is similarly flawed, and omits critical facts of the case that are relevant to the Court's analysis here. In *Marbled Murrelet*, the Plaintiff was challenging a timber harvest plan for one of Pacific Lumber Co.'s properties located in Humboldt County. *Marbled Murrelet v. Pacific Lumber Co*. (N.D. Cal. 1995) 163 F.R.D. 308, 314-315. The case was originally filed and litigated by Mark Harris, an attorney who practiced law in the city of Arcata, which is also in Humboldt County. *Id.* at

319-320. Mr. Harris prosecuted the heavily litigated case on his own for a year before retaining out-of-area counsel to take over as lead counsel at trial. At the fee motion, Pacific Lumber argued that it was inappropriate to award Plaintiff's counsel San Francisco rates, and that instead the court should award rates consistent with "where plaintiffs' counsel conduct their principal practice of law." *Id.* at 317.

However, the court did not find that Humboldt County rates were appropriate for Mr. Harris, despite the fact that Humbold County is where the case arose and where Mr. Harris practiced. The court instead reasoned as follows: "This case has absolutely no connection to any forum other than the Northern District of California. **The district court sits in San Francisco. All of the key issues were litigated before the court in San Francisco**; the attorneys were required to attend several discovery hearings, the preliminary injunction hearing and the two-week trial. . . . After carefully examining the parties' submissions, the court finds that the San Francisco Bay Area is the relevant legal community in this case." *Id*. at 317 (Emphasis added.). Thus, the court did *not* find that the North District in general was the "relevant community" as Defendants claim, it explicitly found, despite the fact that the case arose in Humboldt County and the Plaintiff's initial counsel had a practice there, that *San Francisco* was the appropriate "relevant community" because that was where the court was located and where the litigation actually took place. Those acts are identical to the facts here. This court sits in San Francisco and it is where the litigation took place, and thus San Francisco rates are appropriate for this case, not Sonoma County rates where the cause of action arose.

Defendants attempts to distinguish other Ninth Circuit cases cited by Plaintiff also tends to prove Plaintiff's point rather than contradict it. For example, Defendants concede that in *Shirrod v. Dir., Office of Workers' Compensation Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015), the Ninth Circuit found that the "location of the litigation" was central to the analysis of where the "relevant community" was located. Opposition Brief, at 3:8-19. That is precisely Plaintiff's point. There is notably no analysis at all in *Shirrod* of where the cause

of action arose, because the inquiry was instead focused on where the hearings occurred and the litigation actually took place. Thus, *Shirrod* stands for the proposition that the relevant community is not where the cause of action arises, but where the litigation is conducted.

Defendants also fail to distinguish *Center for Biological Diversity v. EPA*, No. C 17-00720 WHA, 2017 U.S.Dist, LEXIS 213709 (N.D.Ca.., Dec. 4, 2017). In that case, the court stated that "the relevant community for the purposes of analyzing the attorney rates is the San Francisco Bay Area *because the litigation is before the United States District Court for the Northern District of California*." *Center for Biological Diversity* at *5 (Emphasis added.). Again, the court also explicitly stated that where the cause of action arose and where the attorneys were located was not relevant to the inquiry - the focus of the inquiry is where the litigation took place, and the court determined that the "relevant community" for the Northern District is San Francisco, where the court is located. *Ibid*. Defendants quibble without much explanation that since the cause of action arose out of the district and the attorneys were also located outside of the district, that somehow in-district San Francisco rates were appropriate rather than the presumably lower rates of the San Joaquin valley, implying that, had the attorneys resided within the Northern District or the cause of action arisen there, the court could have found an entirely different "relevant community" to be appropriate. That contention makes absolutely no sense, logically or from a policy perspective, and there is absolutely nothing in the opinion that remotely suggests that the inquiry at any point involved the location of the cause of action at all. The inquiry was simply directed to where the case was actually litigated.

Defendants have failed to distinguish the case law cited by Plaintiff holding that the location of the litigation proceedings is where the "relevant community" is found. That is not surprising, as there are sound policy reasons, as set forth in Section IV below, for basing the rate on the location where the court sits, the hearings and trial are held, and the actual litigation takes place.

## II. The Court Erred in Setting a Rate Based on Plaintiff's Confidential Offer of Compromise -- and Defendants Offer No Argument In Opposition

In its moving papers, Plaintiff argued that the Court erred in determining a "Sonoma County rate" based *exclusively* on Plaintiff's November 17, 2022 confidential offer of compromise stating rates charged in 2022. Dkt. 103, at 5:13-25. Leaving aside the inappropriateness of relying on a confidential and discounted rate offered in settlement two years ago,[1] the longstanding rule in the Ninth Circuit is that the court's determination of reasonable fee rates "is not made by reference to rates actually charged the prevailing party." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

The *Schwarz* and *Chalmers* cases are directly on point and are not mentioned anywhere in Defendants' opposition to the fee motion -- or in Defendants' opposition to this motion. Instead, the opposition brief merely quotes this Court's erroneous reliance on the 2022 rates set forth in the confidential settlement letter and lauds the Court's use of an "alternative source of information" [the confidential and discounted rates offered in settlement two years ago] as a "reasonable approach" because it "actually resulted in a higher rate than would have resulted from the alternative approach adopted by District Judge Rogers in *Kernen*." Opp. Brief, at 8:1-8.[2]

There is no rational basis for this Court to repeat the error of applying the arbitrary 20

---

[1] It is an abuse of discretion to determine prevailing market rates relying on cases decided years ago. *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973, 981 (9th Cir. 2008) ("We also note that in determining the prevailing market rate a district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services. *Bell v. Clackamas County,* 341 F.3d 858, 869 (9th Cir.2003) (holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed).") The *Kernen* rates are three years old and the confidential and discounted rates set forth in the November 12, 2022 settlement letter are two years old.

[2] Defendants' math is wrong because it uses the rates requested three years ago in *Kernen* and not the rates requested in this fee motion ($975/hour for Packard and Verick, and $700 for Carlon). Had the Court applied Judge Rogers' approach, as Defendants suggest, and slashed the requested rates by an arbitrary 20 percent, Packard and Verick's rate would be $975/hour x 0.8, or $780/hour (not $725/hour and $700/hour as awarded in the Fee Order). Similarly, Carlon's rate would be $700/hour x 0.8, or $560/hour (not $400/hour as awarded in the Fee Order).

percent cut for "the far northern parts of this District" made in *Kernen* -- and repeated in *Dembeste* (which was located in Sonoma County). Both of these rulings fly in the face of the longstanding law of the Ninth Circuit, and, for the sound policy reasons discussed more fully in Section IV below, should not be followed here.

> **III.  Defendants Also Offer No Argument Opposing Plaintiff's Contention That The "Similar Services" Standard Applies to *All* Complex Federal Court Litigation, Not Just Environmental or Clean Water Act Cases**

In the moving papers, Plaintiff argued that the Court erred in failing to consider material evidence of "similar services"– *i.e.*, fee awards in practice areas *beyond* the CWA or environmental law – in rendering its decision. However, under *Prison Legal News*, "the proper scope of comparison" for "similar services….extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter." *Prison Legal News v. Schwarzenegger* (9th Cir. 2010) 608 F.3d 446, 455; see also *Camacho v. Bridgeport Financial, Inc.* (9th Cir. 2008) 523 F.3d 973, 981 (abuse of discretion to limit review of "prevailing market rate" solely to cases brought under the same law or subject matter); *Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396-YGR, 2020 U.S. Dist. LEXIS 68161, at *58 (N.D. Cal. Apr. 17, 2020); *Charlebois v. Angels Baseball LP* (C.D. Cal. 2012) 993 F.Supp.2d 1109, 1119-1120.

Again, Defendants' opposition brief fails to address this argument or any of the case law cited above. On reconsideration the Court should broaden its consideration of the material evidence to include the fee awards cited in the undisputed expert declarations of Daniel Cooper (Dkt. 88) and Christopher Sproul (Dkt. 89) because they apply to complex federal litigation in this district. Both Mr. Cooper and Mr. Sproul have practiced in the Northern District for over thirty years. Dkt. 88, at ¶4; Dkt. 89, at ¶6. Mr. Cooper opined that the rates requested herein ($975/hour for Mr. Packard at 30 years, and $700/hour for Mr. Carlon at 8 years) are "within the range of prevailing market rates for attorneys with comparable experience, expertise, and skill practicing during this period in the Northern District." Dkt. 88, at ¶¶28, 29.

Mr. Sproul's declaration provides the Court an extensive survey of recent fee awards in the Northern District. Dkt. 89, at ¶¶19, 20. He concluded that these rates were "commensurate with, even lower than, rates found reasonable in Northern District of California attorneys fee award decisions for attorneys with his level of skill, experience, and reputation working on cases involving complex civil litigation." Dkt. 89, at ¶18.

### IV. *Kernen* and *Denbeste* Reflect A Departure From Ninth Circuit Law As Well As Bad Policy

Defendant's contorted interpretation of the *Barjon* rule is a formula for chaos. Every fee motion brought in the Northern District would require the Court to ascertain the attorney rates (a) of the geographic area in which *each* of the attorneys' offices is located (here this would be Petaluma, Napa and Arcata); or (b) where Plaintiff or Defendant reside (Mckinleyville, California or Sparks, Nevada); or (c) where the cause of action arose (rural Sonoma County, outside Petaluma city limits); or (d) some arbitrary combination of all of the above. This would give rise to an evidentiary free-for-all.

The more sensible approach is to have a *single* rate for the district, based on the geographic location of the Court. *Donnell v. U.S.* (D.C. Cir. 1982) 682 F.2d 240,251 ("We recognize the logic on both sides of the argument, but hold that the proper rule is that the relevant community is the one in which the district court sits. This is a simple rule to follow. It requires the district court normally to determine only the prevailing market rate within its jurisdiction, an inquiry about which it should develop expertise.").

Defendants' misreading of the *Barjon* rule would punish elite attorneys who happen to live in remote locations, by limiting their rates to those found in that location -- without regard to the attorney's and skill and ability. If, for example, David Boies, who charged Google $1,950/hour in this Court two years ago,[3] opened an office in Ukiah, would his new rate be $325/hour?

Setting the "relevant community" where the cause of action arises punishes Plaintiffs

---

[3] As reported and according to Reuters.

who are injured in or reside in remote areas of a judicial district where attorney rates may be lower than the location where the court is located in the district. For example, an injury that occurs in Crescent City, in Humboldt County would be filed in the Northern District Court in San Francisco. Limiting such a plaintiff to Crescent City or Humboldt County rates that are lower than rates in San Francsico would severely disadvantage, if not completely cut off, such a plaintiff from hiring San Francisco counsel to represent them before a San Francsico court.

As a practical matter, they would instead be limited to hiring counsel from where the injury occurred who would have to travel long distances to attend hearings, would not be as familiar with the court as counsel who practice in the city where the court is located, and likely not as experienced in federal trial court as local San Francisco counsel would be. There is no case advancing a policy argument in favor of disadvantage Plaintiffs in fee recovery cases in this manner. In this circuit, courts award rates based on where the litigation takes place, which, in this case, is San Francisco. There simply is no case stating that the rule is to set rates where the cause of action arose.

## Conclusion

Plaintiff respectfully requests that the Court reconsider its determination of the applicable attorneys' fee rates herein, and revise the Fee Order to reflect the requested hourly rates:

| Attorney | Years of Practice[4] | Requested Rate |
|---|---|---|
| William Verick | 35 | $975 |
| Andrew Packard | 30 | $975 |
| William Carlon | 8 | $700 |

Lastly, Plaintiff's counsel has expended 24.8 hours on the motion for leave to file this

---

[4] As of filing of the fee motion on January 11, 2024.

motion for reconsideration, the moving papers on reconsideration, and this reply. If the Court is inclined to grant the motion and award fees for this work, Plaintiff is prepared to submit time records supporting these hours for review by Defendants and the Court.

Dated: October 16, 2024    LAW OFFICES OF ANDREW L. PACKARD

By: /s/ Andrew L. Packard
Andrew L. Packard
Attorneys for Plaintiff

CALIFORNIANS FOR ALTERNATIVES TO TOXICS