ANDREW L. PACKARD (State Bar No. 168690)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA 95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>REICHARDT DUCK FARM, INC., et al,<br><br>Defendants. | Case No. 3:22-cv-09065-AGT<br><br>**NOTICE OF MOTION AND MOTION TO ENFORCE CONSENT DECREE**<br><br>Date:     November 21, 2025<br>Time:     10:00 a.m.<br>Location: Courtroom A – 15th Floor<br>Hon. Magistrate Judge Alex G. Tse |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on November 21, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard by the above-titled court, Plaintiff Californians for Alternatives to Toxics will and hereby does move the Court to enforce Section I.2(m) of the Consent Decree entered herein on November 22, 2023.

This motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in Support of Motion to Enforce Consent Decree hereinbelow; the supporting Declaration of Andrew L. Packard filed herewith; all pleadings and papers on file in this action; and such other evidence and/or argument as the parties may present to this Court at the hearing on this motion.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................. ii

INTRODUCTION ................................................................................................................... 1

CASE BACKGROUND .......................................................................................................... 2

CONSENT DECREE ............................................................................................................... 2

MEET AND CONFER PROCESSES ..................................................................................... 3

ARGUMENT ........................................................................................................................... 4

    I.    **Defendants Have Violated and Continue to Violate Section I.2(m) of the Consent Decree By Failing to Install Eight (8) Groundwater Monitoring Wells by November 15, 2023** .............................................................................. 4

    II.    **Defendants' Ongoing Violation of Section I.2(m) of the Consent Decree Has Deprived Plaintiff of A Key Settlement Benefit: Two Years of Groundwater Monitoring Data Concerning the Health of the Aquifer** ...... 5

    III.    **Plaintiff Requests that Defendants Be Ordered to Provide Status Updates to the Court and Plaintiff on the Installation of The Wells at Issue Until Completed, and to Continue Monitoring Groundwater for A Period of Time Beyond the Term of the Agreement** ....................................................... 5

CONCLUSION ........................................................................................................................ 5

## INTRODUCTION

Californians for Alternatives to Toxics ("CAT" or "Plaintiff") brings this motion to enforce one of the key injunctive terms to which the parties agreed in their Consent Decree two years ago: the installation of eight (8) groundwater monitoring wells. The wells were supposed to have been installed no later than November 15, 2023 -- two full years ago.

This citizen enforcement action was brought under the Clean Water Act and settled to resolve Plaintiff's concerns about Defendants' mismanagement of waste water at an industrial-scale duck farm located in Sonoma County ("Facility"). Broadly speaking, Plaintiff alleged that Facility was causing high concentrations of nitrogen and phosphorous to be discharged to a federally-designated "impaired" water body (Walker Creek). More specifically, Plaintiff alleged that Defendants' failure to implement adequate structural Best Management Practices ("BMP"s) was causing the commingling of storm water and waste water and resulted in the overapplication of wastewater to highly saturated lands. Moreover, the generation, storage and spraying of these wastes onto land without any planning or understanding of the hydrologic and agronomic processes involved raises the specter of further unpermitted discharges of manure-laden wastes to impaired creek.

Among the injunctive terms devised by the Parties to address these issues was the installation of eight (8) groundwater monitoring wells. Dkt. 68, Consent Decree, Section I.2(m).[1] Defendants readily concede that the wells have not been installed and Plaintiff seeks an order compelling Defendants to install the wells immediately, and to provide monthly status updates to the Court and Plaintiff until Section I.2(m) of the Consent Decree has been satisfied. Plaintiff also seeks a remedy for the two years of lost groundwater monitoring data, and reimbursement of its reasonable fees and costs in bringing this motion.

## CASE BACKGROUND

The Reichardt Duck Farm is a 373-acre, "large concentrated animal feeding

---

[1] For the convenience of the Court, a copy of the Consent Decree is attached as **Exhibit A** to counsel's declaration filed in support of this motion, Declaration of Andrew L. Packard in Support of Motion to Enforce Consent Decree ("Packard Dec."), at ¶ 3.

operation" (or "CAFO") located five miles west of Petaluma, in southern Sonoma County. The Facility lies at the top of a watershed and is bisected by an unnamed creek that runs through the duck housing and processing area before draining to Lake Laguna, which discharges to Chileno Creek, a tributary to Walker Creek, and which ultimately discharges to Tomales Bay and the Pacific Ocean. When the case was initiated in October of 2022, the Facility was one of the largest duck farms in California, housing approximately 250,000 ducks at any given time, and slaughtering over 2,000,000 ducks each year. The Facility's operations included duck egg production, breeding, raising and slaughter; these activities generated approximately 25,000 gallons of waste water every day, and approximately 5.2 million gallons annually, by Defendant's estimates.

After a year of litigation (and four settlement conferences with Magistrate Hixson totaling over 27 hours), the case was settled under the terms of a consent decree approved by the USEPA and entered herein on November 22, 2023. Dkt. 68 ("Consent Decree"). However, that same month, the duck farm was identified as infested with the Avian flu, and the Facility's operations were scaled back after the Facility's then-existing 170,000 ducks were euthanized (culled). While the Facility has since been re-purposed to house between 10,000 and 20,000 ducks for egg production only, The Facility's storm water results continue to show concentrations of Fecal Coliform, E. Coli, Ammonia, TKN, N+N, and Phosphorous chronically exceeding the evaluation levels set forth in the Industrial General Permit and the Consent Decree.

## CONSENT DECREE

The Consent Decree requires Defendants to, *inter alia*, install eight (8) groundwater monitoring wells in order to better understand the Facility's potential impacts to ground water.[2] Section I.2(m). This section reads:

**Groundwater Monitoring.** The Parties disagree about whether Defendants' land

---

[2] The Consent Decree also requires installing flow meters for the land-applied wastes; the installation of moisture monitoring sensor stations at soil depths of 1-foot, 2-foot and 3-foot; heightened monitoring and reporting of specified sampling parameters; and soil testing. Consent Decree, at 11:1-13:3.

application of wastewater over the past sixty-five years has been conducted at agronomic rates, and whether these practices have impacted groundwater at or downstream of the Facility. For the purposes of compromise, Defendants agree to incorporate into the MRP [Monitoring and Reporting Plan for Land Application Areas required under Section I.2(f) of the Consent Decree] **the requirement that Defendants monitor groundwater for Nitrate and Total Coliform Bacteria consistent with the minimum requirements in Attachment A of the *General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region*. To that end, Defendants shall install eight (8) individual boreholes for the purposes of groundwater monitoring of the first water table encountered, which boreholes shall be permitted by the County of Sonoma, shall comply with the requirements for monitoring wells provided in California Department of Water Resources Standard Bulletin 74-90, and shall be drilled by a California C-57 licensed contractor.** Four will be placed immediately down-gradient of the wastewater treatment storage Ponds A, B, and C; four farther down-gradient; or at other locations to be mutually determined by the parties, to sample for the constituents above. The parties understand that, for a variety of reasons, boreholes may not always function as intended, and that in such event, if any borehole location fails to serve the purposes of this Consent Decree, a replacement location will be mutually determined by the parties, promptly. **These eight boreholes shall remain fully operative for the full Term of this Consent Decree.**

(Emphasis added.) The deadline for implementing Section I.2(m) is set forth at the top of Section I.2, which states, "[u]nless otherwise indicated below, on or before **November 15, 2023**, Defendants shall complete the implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan ("SWPPP") of the following storm water source control measures and Best Management Practices ("BMPs") at the Facility:....."

Notably, Defendants do not dispute the fact that none of the wells have been installed, or the fact that the Consent Decree required them to be installed by November 15, 2023.

## MEET AND CONFER PROCESS

The Consent Decree affords Plaintiff a robust compliance oversight role, by reviewing drafts of the Facility's first waste and nutrient management plans, by inspecting the Facility, and by meeting and conferring to resolve any perceived breaches of the Consent Decree before invoking the Court's assistance. Consent Decree, Section III.13.

The Consent Decree is a judicially-enforceable settlement agreement, provided that the enforcing party follows the dispute resolution processes set forth at Section III.13 of the Decree, which states:

>..... if a dispute under this Decree arises, or either Party believes that a breach of this Decree has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute, which meet and confer process may include, if the parties agree, participation of the Magistrate Judge in a conference between the parties.  If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the United States District Court of California, Northern District, which shall retain jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the terms of this Decree.  The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law interpreting such provisions.

For the purposes of this motion, the failure to install the eight (8) monitoring wells discussed herein is a violation of Section I.2(m) and subject to the above process.

The meet and confer process leading to this motion was lengthy and exhaustive. Packard Dec., at ¶¶ 4 – 10.  After three and half months of letters, emails and Zoom calls with experts, Plaintiff has learned that:

(a) Defendants did not initiate the well installation process by contacting a drilling contractor until July of 2024, eight months after the wells were to be installed;

(b) Defendants subsequently submitted an application for a drilling permit, which was denied in 2024, for failure to include required information and documents;

(c) Defendants then waited until May of 2025 to contact the Sonoma County permitting agency to "confirm that the application was open," and the County confirmed that it was not, and would need to be re-submitted; and,

(d) Defendants did not re-submit their application for a drilling permit until September 26, 2025.

Packard Dec., at ¶ 11.

# ARGUMENT

### I. Defendants Have Violated and Continue to Violate Section I.2(m) of the Consent Decree By Failing to Install Eight (8) Groundwater Monitoring Wells by November 15, 2023

Defendants have conceded that this installation has not been completed, despite making belated contacts with drillers and having their first application -- filed more than eight months after the Consent Decree deadline -- denied for failure to include required information and documents. It remains unclear whether Defendants have properly re-submitted the application, and if so, when the County can be expected to provided their response.  Defendants should be ordered to explain why the wells have not been installed, to do so immediately, and to report to the Court and Plaintiff, on a monthly basis, its progress in satisfying this critical obligation under the Decree.

### II. Defendants' Ongoing Violations of Section I.2(m) of the Decree Has Deprived Plaintiff of A Key Settlement Benefit: Two Years of Groundwater Monitoring Data Concerning the Health of the Aquifer

Defendants' failure to install these groundwater monitoring wells has delayed the collection of data intended to better understand proper wastewater application rates at the Facility, and ultimately, to prevent damage to the aquifer and downstream surface waters. Specifically, the breach has frustrated the central purposes of the Consent Decree: to comprehensively assess the Facility's wastewater generation and storage capacities, including but not limited to the Facility's three (3) main storage ponds (Ponds A, B and C), as well as the six (6) ponds within the Facility north of Middle Two Rock Road, and to use that data to inform the monitoring of flow rates, the installation of soil moisture sensors -- and most importantly here – the collection of groundwater sampling data.

### III. Plaintiff Requests that Defendants Be Ordered to Provide Status Updates to the Court and Plaintiff on the Installation of The Wells at Issue Until Completed, and to Continue Monitoring Groundwater for A Period of Time Beyond the Term of the Agreement

To remedy the breach, Plaintiff requests that the Court order Defendants to provide written monthly status reports to the Court and Plaintiff concerning its efforts to obtain the

requisite permits, engage with a drilling contractor to do the work, and to undertake the complete installation of the eight monitoring wells to the point where they are collecting data.

The Consent Decree will terminate on November 1, 2026. In the very likely event that the wells are not installed until some point in 2026, Plaintiff will have been deprived of between two and three years of data concerning the aquifer when the Consent Decree expires. Therefore, Plaintiff further requests that the Court, in the interests of fairness, order Defendants to conduct the groundwater monitoring (and share with Plaintiff the data) for a like period beyond the November 1, 2026 termination of the Consent Decree.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court order immediate compliance with the Consent Decree as described above, and that the Court order Defendants to reimburse Plaintiff's fees and costs incurred in connection with this motion, consistent with Section III.13 of the Consent Decree, and subject to further application to the Court.

Dated: October 17, 2025                LAW OFFICES OF ANDREW L. PACKARD

                                       By: /s/ Andrew L. Packard
                                       Andrew L. Packard
                                       Attorneys for Plaintiff
                                       CALIFORNIANS FOR ALTERNATIVES TO TOXICS