Diane G. Kindermann Henderson (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:     (916) 456-9595
Facsimile:     (916) 456-9599

Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
JOHN REICHARDT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**DECLARATION OF TRAVIS PETERSON IN SUPPORT OF DEFENDANTS REICHARDT DUCK FARM, INC., and JOHN REICHARDT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE CONSENT DECREE**<br><br>Date:        November 21, 2025<br>Time:        10:00 a.m.<br>Location:     Courtroom A – 15th Floor<br>Judge: Hon. Magistrate Judge Alex G. Tse |

I, Travis Peterson, declare,

1.      If called as a witness, I could and would competently testify to the following facts of which I have personal knowledge, except those matters alleged upon information and belief, and as to those, I believe them to be true.

2.      I am an experienced environmental scientist, Principal Environmental Consultant, and a California Qualified Industrial Storm Water Practitioner (QISP) with 25 years of industry experience specializing in California environmental regulatory compliance and water quality protection. My clientele includes industrial, commercial, manufacturing, utility, and municipal operations. I have significant experience working on compliance matters for the Industrial

**DECLARATION OF TRAVIS PETERSON ISO OPPO TO MOTION TO ENFORCE**

General Permit, Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ & Order 20XX-XXXX-DWQ ("General Permit").

3.    I have served as a regulator responsible for creating storm water compliance and enforcement programs followed by others that add valuable industry insight. I have significant program management experience in water resources at industrial operations, municipal and private utilities, where I developed expertise and knowledge of operations and infrastructure projects for wastewater, recycled water, drinking water, and storm water programs in many industrial and commercial applications. My detailed CV is attached.

4.    I have been working for Reichardt Duck Farm since 2019, as an Environmental Consultant and certified California Qualified Industrial Stormwater Practitioner to drive improvements to water quality through stormwater pollution prevention and wastewater management and treatment programs.

5.    Reichardt Duck Farm and John Reichardt ("Defendants" or "RDF") are in compliance with the language and intent of the groundwater monitoring provision of the consent Decree and have made good-faith efforts to obtain permits and drill to provide the data sought by Californians For Alternatives To Toxics ("CAT").

6.    In general, saturated field conditions, difficulty securing an available and qualified drilling and geology consultant, and unclear permitting protocols and requirements from the permitting agency delayed the project despite RDF's good-faith efforts.

7.    Specifically , Section 2(f) lines 21-25 of the Consent Decree state: " On or before January 1, 2024, Defendants shall provide to Plaintiff a draft Monitoring and Reporting Plan ("MRP") for review and comment. The MRP shall comply with the minimum requirements in Attachment A of the General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region. Plaintiff shall provide its comments and responses to the draft MRP to Defendants."

/ / /

/ / /

**DECLARATION OF TRAVIS PETERSON ISO OPPO TO MOTION TO ENFORCE**

8.      Section 2(m) lines 4-7 of the Consent Decree state:  "…Defendants agree to incorporate into the MRP the requirement that Defendants monitor groundwater for Nitrate and Total Coliform Bacteria consistent with the minimum requirements in Attachment A of the General Waste Discharge Requirements for Confined Animal Facilities within the San Francisco Bay Region."  "…To that end, Defendants shall install eight (8) individual boreholes for the purposes of groundwater monitoring of the first water table…Four will be placed immediately down-gradient of the wastewater treatment storage Ponds A, B, and C; four farther down gradient; or at other locations to be mutually determined by the parties…"  (See Section 2(m) lines 7-14)

9.      Therefore, the Consent Decree required that RDF install the boreholes following incorporation into the MRP, after the receipt of CAT's  comments on the MRP, and when the borehole locations were mutually determined by the parties.

10.      The MRP draft was timely submitted to the Plaintiff on or about January 1, 2024, with the proposed location of the groundwater wells shown on the included map MRP 3.

11.      I received no comments to the draft MRP, verbal or otherwise, until CAT's letter dated July 11, 2025.

12.      RDF's team believed that CAT's ongoing Meet and Confer process, the most recent meeting being September 18, 2025, was consistent with the Consent Decree provisions at Section 2 (f) lines 13-18 and reflected delays due to "Necessary third-party generated information" that includes Sonoma County, soil engineers, and geologists.

13.      RDF has been forthcoming  with CAT regarding  the drilling schedule and permit status as soon as RDF received MRP comments from Plaintiff in accordance with the language in the Consent Decree.

14.      The drilling project has remained consistent with the  schedule provided to CAT in that Meet & Confer call on September 18, 2025.

/ / /

/ / /

/ / /

**DECLARATION OF TRAVIS PETERSON ISO OPPO TO MOTION TO ENFORCE**

15.    During preliminary discussions with drilling contractors shortly after the effective date of the Consent Decree during the rainy season 2023/2024, I was advised that field  conditions are unfavorable for heavy drilling equipment during the rainy season,  and it had to wait until after the rainy season and in the Spring.

16.    By Spring 2024, after the rainy season and despite receiving no comments from CAT on the MRP and or  placement of boreholes, I was directed by RDF to commence the project to install boreholes consistent with the Consent Decree under the assumption that CAT had reasonable time to review and comment if they were going to, and in good-faith, RDF desired to fulfill its obligations.

17.    In July 2024 RDF contacted a local drilling company, Clear Heart Drilling, from Santa Rosa, California, who is knowledgeable in the local groundwater conditions with the County well drilling  specifications and permitting processes.

18.    The Application for the Drilling Permit was submitted on or about July 12, 2024 to the County of Sonoma Environmental Health and Safety Section along with a map and licensed driller's signature.

19.    The application was evaluated by the County, and the County requested more information from the licensed driller, Clear Heart.

20.    Approximately mid-September 2024,  RDF requested that I contact  the driller to determine the status of the submittal with the additional  information requested by the County, plus the timing for receipt of the permits, plus the  costs and drilling schedule before the fields became too saturated for drilling  equipment at RDF's proposed well locations. After multiple emails and phone calls, Clear Heart still did not provide the requested information (plans, schedule, and costs).

21.    In May 2025 after the 2024-2025 rainy season, Sonoma County was contacted to ensure the permit application was still open. The County notified RDF that due to staffing changes the application, map, and full work plan were lost and would need to be completed and resubmitted for consideration. RDF contacted the driller requesting a current cost estimate and

**DECLARATION OF TRAVIS PETERSON ISO OPPO TO MOTION TO ENFORCE**

1    availability to schedule the work, but the geologist/soil engineer required for this work was still

2    not able to provide adequate and timely services.

3         22.    In August 2025, a new qualified drilling subcontractor was selected and on

4    September 2, 2025, RDF entered into an agreement with Cornerstone Environmental to perform

5    the drilling project. Preparation of the permit application and supporting documents commenced.

6    On September 10, 2025, a site visit was completed and the required utility and subsurface

7    clearances were initiated.

8         23.    On September 18, 2025, during a Meet & Confer phone conference with CAT

9    and its expert and counsel for RDF, I verbally reported that the drilling project was underway, a

10   qualified contractor was under contract, and the schedule was as follows: "Permit application

11   will be submitted by September 29, Permitting review and issuance anticipated by October 20,

12   pre-drilling activities and subsurface clearances are scheduled to be completed by October 21,

13   Drilling and well installation to commence between October 22 – 24, Well development and

14   sampling scheduled for between October 27 – 31." CAT did not comment on this schedule and

15   certainly did not object to it.

16        24.    I was notified that the permit package was submitted to the County before

17   September 29, 2025, earlier than planned.

18        25.    I was notified that the permit was approved on October 14. 2025.

19        26.    Drilling commenced on October 21, 2025, as scheduled; I was on-site to observe

20   the activities.

21        27.    The drilling project is active and experts are evaluating new and significant data

22   gathered during the irrigation seasons and during the October 21, 2025 subsurface investigation.

23

24        I declare under penalty of perjury that the foregoing is true and correct.  Executed on

25   October 31, 2025, at Napa, California.

26   _____

27   TRAVIS PETERSON

28

DECLARATION OF TRAVIS PETERSON ISO OPPO TO MOTION TO ENFORCE