# EXHIBIT 1

Law Offices Of
## ANDREW L. PACKARD

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782-4060   Fax (707) 782-4062
Info@PackardLawOffices.com

July 11, 2025

*Via Electronic Mail Only*
Diane G. Kindermann
Glen C. Hansen
Abbott & Kindermann, Inc
2100 21st Street
Sacramento, California 95818
DKindermann@aklandlaw.com
ghansen@aklandlaw.com

      Re:    *Californians for Alternatives to Toxics v. Reichardt Duck Farm, Inc., John Reichardt;* United Stated District Court, Northern District of California, Case No. 3:22-cv-09065-AGT; Further Meet and Confer Regarding Compliance with Consent Decree Entered November 22, 2023 ("Decree") (Dkt. 68)

Dear Diane,

CAT's counsel and experts have now had an opportunity to complete their review of the Facility's Waste Management Plan, Nutrient Management Plan, and Monitoring and Reporting Plan for Land Application Areas (collectively, the "Planning Documents"). This letter serves to formally identify the deficiencies we have identified in the Planning Documents and to initiate the resolution process as spelled-out in the Consent Decree entered on November 22, 2023 ("Decree").

Nutrient Management Plan (NMP)

The NMP is intended to demonstrate how nutrients in Defendants' storm water will be managed to protect surface water and groundwater consistent with Attachment B of the General WDRs and the Decree. The current NMP (6th draft, confirmed June 6, 2025) lacks clear groundwater protection integration, does not provide a field-specific nutrient budget linked to realistic crop yields, and fails to document a robust contingency plan for repeated exceedances of soil action thresholds. Moreover, there is confusion about which draft is final, and the plan does not provide a reliable framework for adjusting application practices in response to repeated benchmark exceedances or changing site conditions. Additionally, required data from spring 2025 sampling is incomplete, and the mechanisms for sharing real-time soil moisture data and lab results with CAT are inadequately described.

For your ease of reference, these deficiencies in the NMP are itemized below with references to the Decree or other document containing the requirement at issue:

Diane Kindermann
Glen C. Hansen
July 11, 2025
Page 2

- Failure to integrate groundwater protection (Consent Decree § I.2(e); General WDRs, Attachment B § II.A.5)
- Lack of field-specific nutrient budgets (General WDRs, Attachment B § II.A.4)
- Missing contingency plan for repeated exceedances (Consent Decree § I.2(e); General WDRs, Attachment B § II.A.6)
- Unclear corrective action framework (Consent Decree § I.6)
- Continued "draft" status (Consent Decree § I.2(e))
- Incomplete sampling data (General WDRs, Attachment B § II.A.3)
- No protocol for sharing soil moisture data (Consent Decree § I.9)
- No 10-day lab result sharing procedure (Consent Decree § I.9)

Waste Management Plan (WMP)

The WMP is meant to ensure that all process wastewater, manure, and associated waste are contained and managed in compliance with the General WDRs. The current WMP does not fully commit to an impervious surface under the manure/litter pile, lacks a detailed contingency plan for pond overflows, and fails to integrate wastewater generated from cleaning and sanitization processes. There is also no cohesive demonstration of how waste volumes, pond capacities, and irrigation demands will be coordinated with the NMP and MRP. These gaps could result in failure to contain waste during extreme precipitation or high pond loading periods, contrary to the Consent Decree's retention requirements.

For your ease of reference, these deficiencies in the WMP are itemized below with references to the Decree or other document containing the requirement at issue:

- No commitment to concrete pad for litter pile (General WDRs, Attachment C § II.A.1)
- Failure to fully consider the catchment areas contributing to runoff to the ponds (likely~35 acres rather than the 10.48 identified in the WMP and no overflow contingency plan (General WDRs, Attachment C § II.A.5; Consent Decree § I.2(d))
- Sanitization/washdown waste tracking incomplete (General WDRs, Attachment C § II.B.2)
- Weak integration with NMP and MRP (Consent Decree § I.2(d))
- Confusion over "final" status of WMP (Consent Decree § I.2(d))
- No CAT record-sharing schedule (Consent Decree § I.9)

Monitoring and Reporting Plan (MRP)

The MRP is critical to documenting the Facility's effectiveness in protecting groundwater and surface water quality. The MRP remains deficient because no groundwater wells have been installed to date, preventing Defendants from undertaking the required groundwater sampling. The plan does not contain sufficient detail on exceedance response procedures or describe how sampling results will be promptly provided to CAT. In addition, the MRP fails to clearly identify how monitoring will resume when production scales back up,

Diane Kindermann
Glen C. Hansen
July 11, 2025
Page 3

and it does not show linkages to data from the NMP and WMP. These gaps leave the facility without a credible compliance pathway to protect groundwater and surface water quality.

For your ease of reference, these deficiencies in the MRP are itemized below with references to the Decree or other document containing the requirement at issue:

- Groundwater wells not installed (Consent Decree § I.2(m); General WDRs, Attachment A § II.B)[1]
- Quarterly sampling missing (Consent Decree § I.2(m); General WDRs, Attachment A § III.B)
- Missing exceedance response plan (Consent Decree § I.6)
- No resumption triggers for surface water sampling (Consent Decree § I.2(f))
- No procedure for 10-day data sharing (Consent Decree § I.9)
- Poor integration with NMP/WMP (Consent Decree § I.2(f))

Stormwater Pollution Prevention Plan (SWPPP)

The SWPPP must document all stormwater BMPs, including responses to exceedances, consistent with the Industrial General Permit. The current SWPPP lacks a formal Action Memorandum framework for implementing new BMPs following exceedances, despite repeated wet-season violations of pH, nutrients, pathogens, and TSS benchmarks. It does not confirm twice-yearly stormwater training with a QISP, fails to document a CAT amendment notification procedure, and provides incomplete site maps for manure/litter areas. Finally, it does not integrate with the NMP and WMP to coordinate waste handling with stormwater practices. These gaps undermine the SWPPP's ability to show ongoing compliance with the Industrial General Permit and the Consent Decree.

For your ease of reference, these deficiencies in the SWPPP are itemized below with references to the Decree or other document containing the requirement at issue:

- No Action Memorandum procedure (Consent Decree § I.6; IGP Section XII)
- Repeated exceedances not addressed with new BMPs (Consent Decree § I.6; IGP Attachment E)
- Missing twice-yearly QISP training commitment (Consent Decree § I.2(k); IGP Section X.H.1.f)
- No CAT amendment notice protocol (Consent Decree § I.9)
- Incomplete site maps (IGP Section X.E)
- Weak integration with NMP/WMP (Consent Decree § I.2(a))

---

[1] Defendants' failure to timely install the eight ground water monitoring wells required under § I.2(m) of the Decree before November 15, 2023 is a separate and independent issue on which CAT wishes to further meet and confer, and if unresolved, will move the Court to enforce the terms of the Decree.

Diane Kindermann
Glen C. Hansen
July 11, 2025
Page 4

Meet & Confer Requirements of the Decree

We understand § I.2 of the Decree to require the parties to meet and confer within thirty days to resolve the issues raise above, and that the meet and confer "shall be completed" within that time period unless the Parties mutually agree otherwise. Please advise as to your availability for this meeting, with our respective experts, between now and August 10th.

Failure to Respond to CAT's June 20, 2025 Meet and Confer Letter

My last letter requested that you please provide:

(a) updates as to when the Work Plan, Health and Safety Plan, and driller's certification are completed and re-submitted to the County;

(b) a draft declaration confirming your statements that "[no] irrigation was done [during the Term of the Consent Decree and] prior to June 2024" and that the moisture sensor system was not ready for use until June 2024;

(c) copies of the real-time readings provided by the Davis Instruments Enviromonitor nodes and reviewed weekly by Advanced Viticulture Consulting (confirmation that the "alarm thresholds" established for these instruments have not been exceeded since data collection started a year ago); and,

(d) the "pond and soil sample results from spring 2025" that are referenced in your June 18th email (to the extent this information has not been provided in the Nutrient Management Plan).

Please advise as to where we stand with respect to these outstanding requests.

We look forward to meeting and conferring with our respective experts in the next thirty days on these revisions to the Planning Documents and to bringing them into full compliance with the Decree, General Waste Discharge Requirements (Order R2-2016-0031), and the Industrial General Permit (Order 2014-0057-DWQ) before the next Wet Season.

Thank you for your continuing courtesy and cooperation.

Sincerely,

Andrew L. Packard

cc: Patricia Clary (Executive Director, CAT)