Diane G. Kindermann Henderson (SBN 144426)
dkindermann@aklandlaw.com
Glen C. Hansen (SBN 166923)
ghansen@aklandlaw.com
ABBOTT & KINDERMANN, INC.
2100 21st Street
Sacramento, California 95818
Telephone:   (916) 456-9595
Facsimile:   (916) 456-9599

Attorneys for Defendants
REICHARDT DUCK FARM, INC., and
JOHN REICHARDT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>REICHARDT DUCK FARM, INC., and JOHN REICHARDT,<br><br>Defendants. | Case No: 3:22-CV-09065-AGT<br><br>**DECLARATION OF PETER LANGTRY IN SUPPORT OF DEFENDANTS REICHARDT DUCK FARM, INC., and JOHN REICHARDT'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE CONSENT DECREE**<br><br>Date:   November 21, 2025<br>Time:   10:00 a.m.<br>Location:   Courtroom A – 15th Floor<br>Judge: Hon. Magistrate Judge Alex G. Tse |

I, Peter Langtry, declare,

1.   If called as a witness, I could and would competently testify to the following facts of which I have personal knowledge, except those matters alleged upon information and belief, and as to those, I believe them to be true.

2.   I am an experienced environmental scientist, Senior Principal Geologist, and California Certified Hydrogeologist with 35 years of industry experience specializing in California environmental regulatory compliance and subsurface investigations. My clientele includes industrial, commercial, manufacturing, construction industry and municipal operations.

///

3. I have significant experience conducting groundwater investigations, including groundwater quality, contaminant distribution, and hydrogeologic assessments. I have significant project management experience in subsurface investigations at a wide variety of project types, where I developed expertise and knowledge of potential contamination sources, development of investigation scopes of work, data interpretation, remedial design and implementation, and regulatory agency coordination.

**Investigation Activities**

4. Prior to mobilizing to the Reichardt Duck Farm ("Site"), a permit through the County of Sonoma Department of Environmental Health (DEH) was obtained for the exploratory borings advanced under this scope of work. Cornerstone initiated the permit application process on September 18, 2025, and DEH issued the permit on October 13, 2025.

5. On October 21, 2025, our field engineer directed a subsurface investigation to advance exploratory borings for the purpose of installing groundwater monitoring wells. A track-mounted drill rig equipped with hollow-stem augers advanced three exploratory borings (RDF 02, RDF 04, and RDF 08) to depths ranging between approximately 12 feet and 37 feet below ground surface (bgs).

6. The subsurface materials encountered at exploratory borings RDF 02 and RDF 04 consisted of approximately 1 foot of clayey sand overlain by 1½ feet of silty sand. A layer of sandy lean clay was observed at a depth of approximately 2½ to 6½ feet in both boring locations.

7. At location RDF 08, the upper 7½ feet consisted of a sandy lean clay overlain by silty sand. Underlying the sandy lean clay at all three locations, a moderately hard to hard sandy shale bedrock was encountered to the maximum depths drilled.

8. No groundwater was observed during the advancement of the three exploratory borings. As such, monitoring wells were not installed, and the borings were backfilled with grout to the existing grade prior to departure from Site.

///

-2-   3:22-CV-09065-AGT
**DECLARATION OF PETER LANGTRY ISO OPPO TO MOTION TO ENFORCE**

9. The remainder of the exploratory borings were not advanced pending discussions with Client's Technical Project Manager.

10. The Consent Decree at Section 2 (m) <u>Groundwater Monitoring</u>, lines 8 and 9 states that eight (8) individual boreholes shall be advanced "…for the purposes of groundwater monitoring of the first water table encountered."

11. A water table--or unconfined--aquifer is an aquifer whose upper water surface (water table) is at atmospheric pressure, and thus is able to rise and fall. Water table aquifers are usually closer to the ground surface than confined aquifers are (https://www.usgs.gov/faqs/what-difference-between-a-confined-and-unconfined-water-table-aquifer).

12. Shale bedrock was encountered at approximate depths of 6½ and 7½ feet bgs. The shale bedrock appears to have a low permeability that likely restricts the lateral and downward migration of groundwater. As such, the lateral and vertical migration of coliform and nitrates in groundwater is likely attenuated by the low permeability bedrock.

13. No groundwater was encountered in the exploratory borings at the Site.

14. Shallow, unconfined groundwater may be intermittently perched within soil on the soil/bedrock interface following significant rain events. Such intermittently perched groundwater, if present, may not be significantly present during the dry season.

15. Therefore, we recommend installation of only three (3) groundwater monitoring wells nearest the ponds (RDF 01, RDF 02 and RDF 03) with screen intervals that extend above the top of the soil/bedrock interface. These wells could then be monitored for the presence of groundwater during the wet season (November through March).

16. If groundwater is observed in wells RDF 01, RDF 02 and RDF 03 in a sufficient quantity to allow the collection of samples and testing does not detect the presence of significant nitrate and total coliform impacts, then the additional wells, located further from the ponds, would not be necessary for documenting potential impacts from the ponds. This is because

/ / /

-3-                                                                3:22-CV-09065-AGT
**DECLARATION OF PETER LANGTRY ISO OPPO TO MOTION TO ENFORCE**

groundwater impacts, if any, associated with the irrigation would be expected to be the most significant at the ponds.

17. If groundwater is observed in these three (3) wells in a sufficient quantity to allow the collection of samples, and if laboratory analyses detect significant nitrate and total coliform impacts, then the need for downgradient wells can be evaluated.

18. However, the locations of proposed wells RDF 05, RDF 06, RDF 07 and RDF 08 appear to be down-slope from adjacent properties. As such, detections of coliform or nitrates in these wells could be attributed to off-Site sources and, thus, may not be useful for determining the lateral extent of impacts from the wastewater ponds.

19. We understand that the irrigation management practices have been generally consistent over the past 60 years. Therefore, any effects to groundwater quality associated with the irrigation would be expected to be stable and not significantly change over time

20. Therefore, after installation of wells RDF 01, RDF 02 and RDF 03 and the first monitoring event, continued groundwater monitoring of these wells is not needed to document and manage groundwater quality.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 31, 2025, at  Alameda , California.

PETER LANGTRY

-4-   3:22-CV-09065-AGT
**DECLARATION OF PETER LANGTRY ISO OPPO TO MOTION TO ENFORCE**